IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

RAHEEM FORD,

                        Plaintiff,                    Civ. Action No.
            v.                                        9:14-cv-01566 (DNH/DEP)

DANIEL MARTUSCELLO, JR, *et al.*,

                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

FOR PLAINTIFF:

RAHEEM FORD, *Pro Se*
Inmate No. 98-A-3051
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN                             RYAN E. MANLEY
New York State Attorney General                      Assistant Attorney General
The Capital
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro Se* plaintiff Raheem Ford, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 1983, alleging that various employees of the DOCCS deprived him of his civil rights at different times. Generally speaking, plaintiff's complaint alleges that his First, Eighth, and Fourteenth Amendment rights were violated as a result of being subjected to an excessive use of force on two occasions, once in retaliation for filing grievances concerning the conditions of his confinement, and being denied his due process rights during a disciplinary hearing.

Defendants have now moved to dismiss plaintiff's retaliation claim against three of the named defendants, arguing that plaintiff's complaint fails to "show a causal connection between the alleged excessive use of force, and his general filing of grievances over a four month period of time, against unnamed corrections officers." For the reasons set forth below, I recommend that defendants' motion be denied.

## I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS at the Fishkill Correctional Facility ("Fishkill"), located in Beacon, New York. Dkt. No. 1. Between August and November of 2011, while he was confined at the Coxsackie Correctional Facility ("Coxsackie") in West Coxsackie, New York, plaintiff filed grievances against several correctional officers employed at Coxsackie who, he alleges, are members of "The Order of Brotherhood."[2] *Id.* at 3-4, 10.

On the morning of December 1, 2011, plaintiff was placed in a "kennel type cage" in the southeast yard with another prisoner, where the two performed "callisthenic type exercises." *Id.* at 4. Plaintiff chanted a "verbal cadence" during the exercises, in a normal tone of voice, to keep himself in rhythm. *Id.* During that time, Corrections Officer Sean King, a named

_____

1    In light of the procedural posture of the case, the following recitation is drawn principally from the plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Because defendants have only moved to dismiss plaintiff's retaliation claim, I will recount only the pertinent facts giving rise to that claim, and specifically not include references to the misbehavior report issued to the plaintiff following the incident and the disciplinary hearing that followed.

2    Plaintiff alleges that these correctional officers were known throughout Coxsackie to target for "beat downs" prisoners that were engaged in writing formal "complaints/grievances against correctional officers/staff." *Id.* at 3.

defendant in the case, was stationed in a security booth and responsible for watching the prisoners in the southeast yard. *Id.*

Defendant King was watching television while observing the yard, but because of the noise level in the yard, he was unable to hear the television. *Id.* at 5. As a result, defendant King entered the yard and made an announcement regarding the noise level and "directed everyone in the yard . . . to be quite [sic]." *Id.* Plaintiff believed that defendant King's announcement was unreasonable, and informed defendant King that it was his and other prisoners' right to have one-hour of recreation time, which includes "time to talk and express themselves." *Id.* Plaintiff then proceeded to disregard the order and "continued his exercise and cadence chant as he worked out." *Id.*

When recreation was over, defendant King instructed plaintiff to enter a stairwell whereupon he told plaintiff, "next time you come out to this yard, you better be quiet, or you will not see this yard for the duration of your stay in F-3[,] [d]o you understand?" *Id.* at 6. Plaintiff proceeded around defendant King and entered a walkway leading to the F-1 Division dayroom. *Id.* As plaintiff was walking through the F-1 Division dayroom, defendant King charged at plaintiff, grabbed his coat, spun him around, and then pushed him backward. *Id.* at 6-7. Corrections Officer D. Williams, another

defendant in the case, was seated at a desk in the F-1 Division dayroom while this was occurring, and Corrections Officer F. Cowan, a third defendant in the case, was standing at the end of the room blocking the doorway leading to a stairwell. *Id.* at 6-7. As defendant King was pushing plaintiff back, defendant Cowen struck plaintiff in the face with a baton. *Id.* at 7. Defendant Williams then "basically ramm[ed] [plaintiff's] face/head onto a wall and then onto the floor" and then "pounced" on plaintiff. *Id.*

During the course of the incident, plaintiff sustained a fractured jaw, broken facial bones, and a fractured or broken eye socket, and required medical attention by the Regional Medical Unit and further diagnosis and treatment from the Albany Medical Center Hospital. *Id.*

II.     PROCEDURAL HISTORY

The plaintiff, who is proceeding *pro se* and *in forma pauperis*, commenced this action in United States District Court for the Southern District of New York on December 23, 2014. Dkt. No. 4 at 1-2. The following day, the case was transferred to the Northern District of New York, based on Coxsackie's location within this district. *Id.* Named as defendants in plaintiff's complaint were Superintendent Daniel Martuscello Jr., Deputy Superintendent of Security Christopher Miller, Captain Shanley, Sergeant J. Baczkowski, Commissioner Hearing Officer Eric Gutwein, Correctional

Officers Sean King, D. Williams, F. Cowan and Bellawa, and First Deputy Superintendent Leclair. [Dkt. No. 1](Dkt. No. 1).

On April 9, 2015, the court issued an order granting plaintiff's request for leave to proceed *in forma pauperis* and *sua sponte* dismissing certain causes of action in his complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A. [Dkt. No. 12 at 2](Dkt. No. 12 at 2). Based on that decision, plaintiff's four remaining claims are as follows: (1) excessive use of force and/or failure to intervene under the Eighth Amendment, asserted against defendants King, Williams, Cowen, Gutwain and Bielawa; (2) retaliation under the First Amendment, asserted against defendants King, Williams and Cowan; (3) violation of due process under the Fourteenth Amendment, asserted against defendants Gutwein and LeClair; and (4) supervisory liability, asserted against defendants Martuscello and Shanley. *Id.* at 11. As relief, plaintiff seeks compensatory damages for his injuries, including for pain and suffering, as well as for his allegedly wrongful disciplinary confinement. [Dkt. No. 1 at 13](Dkt. No. 1 at 13).

On November 2, 2015, defendants filed a partial motion to dismiss directed toward plaintiff's retaliation claim asserted against defendants King, Williams and Cowan. [Dkt. No. 31 at 1](Dkt. No. 31 at 1). Thereafter, plaintiff filed four requests to extend his deadline to respond to defendants' motion, all of

which were granted for good cause.[3] Plaintiff then filed a fifth request to extend the deadline on or about March 14, 2016, which was granted in a text order. *See* Dkt. No. 47. In that order, plaintiff was advised that his new response deadline of April 4, 2016 was "FIRM AND FINAL." *Id.* Despite having been granted the fifth extension, plaintiff failed to respond to defendants' motion. Rather, on April 11, 2016, seven days after the expiration of plaintiff's response deadline, plaintiff filed a letter motion requesting that this case be held in abeyance. Dkt. No. 48 at 1. That request was denied on April 13, 2016. Dkt. No. 49.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial

---

3   Plaintiff filed his first request on or about November 16, 2015; the second request on January 13, 2016; the third request on February 8, 2016; and the fourth request on February 29, 2016, after stating that he had not received a response to his February 8 request. *See* Dkt. Nos. 37, 41, 43, and 45.

sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (*quoting* Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*citing Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd,

J.) ("A *pro se* complaint must be read liberally.").

    B.    <u>Retaliation</u>

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected

activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).[4]

There is no dispute that an assault constitutes adverse action within the meaning of the governing test for determining retaliation claims. *See, e.g.*, *Brooks v. Jackson*, No. 11-CV-6627, 2013 WL 5339151, at *7 (S.D.N.Y. Sept. 23, 2013). Consequently, to decide defendants' motion the court need only evaluate whether plaintiff has alleged facts plausibly suggesting that he engaged in protected activity, and that the activity was a substantial or motivating factor for the assault.

    1.   <u>Protected Activity</u>

Liberally construed, plaintiff has alleged that he was assaulted for one or both of the following reasons: (1) he had previously filed grievances between August and November 2011, referenced above, related to correctional officers that were part of the "Brotherhood", and (2) he verbally

---

4    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

confronted defendant King after the officer "directed everyone in the yard . . . to be quite [sic]."[5] Dkt. No. 1, at 3, 5.

There is no doubt that the filing of lawsuits and administrative grievances is constitutionally protected activity. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right"). A prison inmate's oral speech, however, is subject to certain limitations, and may not necessarily constitute protected activity. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995). While the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate, several courts have made clear that verbally confronting a corrections officer based on a dissatisfaction with that officer's directive is one example of speech that is not constitutionally protected activity. *See Williams v. Smith*, 11-cv-0601, 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) (verbal complaint "about problems with [inmate plaintiff's] braces" was not

_____

5       Plaintiff allegedly filed grievances and formal written complaints with defendant Martuscello Jr. and defendant Shanley regarding "the long standing harassment and retaliation he was receiving from correctional officers/staff in the facility, who were believed to be members of the Brotherhood." Dkt. No. 1 at 10.

protected conduct); *Carl v. Griffin*, 08 Civ. 4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("Plaintiff's 'brief and isolated verbal encounter with Griffin does not constitute protected First Amendment speech [because] [t]o construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.'" (quoting *Oriakhi v. Wood*, No. 05 Civ. 53, 2006 WL 859543, at *5 (M.D. Pa. Mar. 31, 2006)); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (finding plaintiff's "verbal confrontation" with corrections officer was not protected speech or conduct under the First Amendment).

Because I agree with the sound conclusions reached by these courts, I find that plaintiff's cause of action for retaliation can only properly be based on his filing of grievances.

### 2. Causal Connection

In his complaint plaintiff alleges, upon information and belief, that defendants King, Williams and Cowan "targeted" him in retaliation for him "writing out complaints" against Coxsackie corrections officers between August and November 2011. Dkt. No. 1 at 3, 10, 12. Plaintiff has listed seven grievances lodged by him between August and November 2011 "for the harassment by the Brotherhood." *Id.* at 12. Defendants argue that these allegations do not support a plausible claim for retaliation because "[p]laintiff

fails to demonstrate that any of these grievances specifically implicate these three defendants" or "that these defendants were even aware of these alleged grievances against Coxsackie correctional officers in general." Dkt. No. 31-1, at 5.

At this stage of the proceeding, plaintiff need only allege facts that plausibly suggest a causal connection between the grievances that he filed and the adverse action that he experienced. The fact that none of the grievances were alleged to have been filed against defendants King, Williams or Cowan is not dispositive of whether plaintiff has stated a retaliation claim against them. *See Jean-Laurent v. Lane,* 11-CV-0186, 2013 WL 600213, at *9 (N.D.N.Y. Jan. 24, 2013) (Dancks, M.J.) ("Although Lane was not himself the subject of Plaintiff's lawsuit, the temporal proximity between Lane's learning of the lawsuit against other correctional officers and charging Plaintiff with a rule violation makes a facially plausible showing of causation [for purposes of a First Amendment Retaliation claim]."), adopted by 2013 WL 599893 (N.D.N.Y. Feb. 13, 2013) (Mordue, D.J.); *Hernandez v Goord*, 312 F. Supp. 2d 537, 545 (S.D.N.Y. 2004) (denying motion to dismiss retaliation claim where plaintiff did not expressly allege that corrections officers that engaged in adverse action were the subject of the grievances filed by plaintiff); *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir.

2002) ("However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able prove an alleged fact . . . , the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference.").

While it is true that plaintiff's complaint does not specifically allege that defendants King, Williams or Cowan were aware of his grievances, plaintiff has alleged that those defendants were part of the "Brotherhood," which he has defined as a "crew" of corrections staff members, and has further alleged that the seven grievances he filed between August and November 2011 were "for the harassment by the Brotherhood." Dkt. No. 1, at 3-4, 12. Plaintiff has also alleged that he "believes" defendants King, Williams and Cowan assaulted him for the grievances filed by him. *Id.* at 3. The court can reasonably infer from these allegations that defendants were aware that grievances had been filed.

I note, moreover, that there exists a close proximity in time between when those grievances were filed and the alleged assault. The court can infer from this fact, along with the allegation that defendants King, Williams and Cowan were part of the alleged "Brotherhood," that the filing of grievances against other members of the alleged "Brotherhood" was a

15

substantial or motivating factor for the assault. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that a six-month lapse between plaintiff's protected First Amendment activity and the allegedly retaliatory conduct supported an inference of causation); *Lindner v. Int'l Business Machines Corp.*, No. 06 Civ. 4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct"). Accordingly, I recommend that defendants' motion be denied.

V.    <u>SUMMARY AND RECOMMENDATION</u>

In their motion, defendants challenge the retaliation claim brought by plaintiff against defendants King, Williams and Cowan. I conclude that plaintiff's complaint plausibly alleges the three necessary elements of a retaliation claim, and therefore recommend against dismissal of that cause of action.

Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED, that defendants' motion to dismiss (<u>Dkt. No. 31</u>) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with

the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

Dated:  June 23, 2016
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

2013 WL 5339151
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Emanuel M. BROOKS, Plaintiff,

v.

Correction Officer K. JACKSON, et al., Defendants.

No. 11 Civ. 6627(JMF).
|
Sept. 23, 2013.

OPINION AND ORDER

JESSE M. FURMAN, District Judge.

**\*1** Plaintiff Emanuel M. Brooks, a state prisoner proceeding *pro se,* brings this action pursuant to Title 42, United States Code, Section 1983, claiming violations of his constitutional rights during his incarceration at Sing Sing Correctional Facility ("Sing Sing") and Attica Correctional Facility ("Attica"). He also brings a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Brooks sues Correctional Officers K. Jackson, M. Darden (incorrectly identified as "Darken" in the Amended Complaint), D. McCurdy, and B. Carver—all current and former employees of the New York State Department of Correctional Services ("DOCS")—in their individual and official capacities. [1] He also names DOCS as a defendant in his opposition papers. (Opp'n 15 (Docket No. 56)). Defendants move to dismiss the Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Although Brooks is presently incarcerated at Clinton Correctional Facility, his allegations relate to his previous incarceration at Sing Sing and Attica. In particular, most concern an alleged incident with Officer Jackson at Sing Sing on or about April 17, 2009. [2] According to Brooks, Officer Jackson questioned him in the C Gallery of Building 5 as to what he had in his pants. She also told him to lift his pant-legs and open the crotch area of his pants, and conducted two pat-and-frisks on him—at least one of which (and perhaps both of which, as the record is not clear) occurred after he had informed her that he was Muslim and preferred to be searched by a male officer. (Am. Compl. § II.A (Docket No. 24); Opp'n 9). Brooks alleges that Officer Jackson later called him to her office, ordered him against the wall, and sexually and physically abused him. (Opp'n 9–10; Am. Compl. § II.A). Specifically, Brooks alleges that Officer Jackson hit him in his groin, grabbed and pulled his genitals, and put her finger in his anus. (Am.Compl.§ III). After Brooks asked Officer Jackson for her name, Brooks claims that she told him not to tell anyone about the incident and threatened to "get" him if he reported her. (Opp'n 10). Nevertheless, he returned to his cell and filed a grievance against her. (*Id.*)

Brooks claims that, later the same day, in retaliation for the grievance he had filed against Officer Jackson, three officers—Defendant Officers McCurdy and Darden, as well as another unidentified individual—assaulted, threatened, and harassed him. (Am. Compl. § II.C–D; Opp'n 12). Brooks claims that this incident caused him physical and emotional injuries, including two lumps on his back and chronic pain in his upper and lower back and neck. (*Id.* § III). He further alleges that he did not receive adequate medical attention for this incident or for the incident with Officer Jackson. (*Id.* § II.D). He also asserts that he has not received adequate mental health care at Attica. (Am.Compl.§ V).

**\*2** On or about April 23, 2009, Officer Jackson filed a misbehavior report against Brooks, alleging that Brooks stared at Officer Jackson through a mirror, exposed himself, and masturbated. (Opp'n 11, 33–36). Brooks contends that this incident never took place and that the misbehavior report defamed his character. (*Id.* at 11; Am. Compl. § II.D). A disciplinary hearing stemming from the allegations contained in the report was held on May 19, 2009. (Opp'n 33). Brooks alleges that at that hearing, Hearing Officer Carver violated his due process rights. (Opp'n 13, 33–35). In particular, he states that Officer Carver denied him the opportunity to call witnesses, failed to conduct an adequate mental health capacity assessment, and did not hold the hearing within fourteen days of the filing of the misbehavior report as required. (*Id.*). As a result of the hearing, Brooks was placed in keeplock, where he was allegedly held in an unsanitary cell

and denied food and showers. (Am. Compl. § II.D; Opp'n 14). Brooks also claims that on an unspecified date, some of his personal property, including books, family pictures, and letters, was destroyed. (Am.Compl.§ II.D). Finally, Brooks claims that Officers Carver and Jackson conspired to retaliate and discriminate against him. (*Id.* § II.D).

Brooks seeks $5,000,000 in damages to compensate for his physical and emotional injuries. (*Id.* § V). He also seeks to be transferred to Sing Sing to receive certain unspecified mental health treatment. (*Id.*).

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b) (6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Plaintiff here is proceeding *pro se.* Accordingly, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (stating that a court must "construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (internal

quotation marks and alteration omitted). In other words, the " 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.' " *Id.* (alteration in original) (internal quotation marks omitted).

**\*3** Generally, in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts are limited to the facts alleged in the complaint and are required to accept these facts as true. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir.2009); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g., Kleinman v. Elan Corp., plc,* 706 F.3d 145, 152 (2d Cir.2013); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (applying rule to district courts). In addition, because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint. *See, e.g., Braxton v. Nichols,* No. 08 Civ. 08568(PGG), 2010 WL 1010001, at \*1 (S.D.N.Y. Mar.18, 2010); *cf. Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

## DISCUSSION

Liberally construed, Brooks's Amended Complaint includes a veritable potpourri of claims against different combinations of Defendants, including claims under the Eighth Amendment, a claim of First Amendment retaliation, due process claims, defamation and defamation-type claims, conspiracy claims, and religious free exercise claims under both the First Amendment and RLUIPA. The moving Defendants (that is, all Defendants other than Officer Tomson, who has not appeared in this action) contend that each claim fails as a matter of law. [3] The Court will address each set of claims in turn.

## A. Eleventh Amendment Immunity

As an initial matter, Brooks has sued all individual Defendants in both their official and individual capacities, seeking both injunctive relief and monetary damages. (Am.Compl.1, § V). He also names DOCS as a defendant in his opposition papers. (Opp'n 15). It is well established that, absent abrogation by Congress, a state is immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54–56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This sovereign immunity extends to "arms of the state," including agencies such as DOCS. *Morgan v. N.Y.S. Atty. Gen. Office,* No. 11 Civ. 9389(PKC), 2013 WL 491525, at *11 (S.D.N.Y. Feb.8, 2013); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Congress has not abrogated states' sovereign immunity with respect to claims brought under Section 1983, *see Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), nor has it done so with respect to claims brought under RLUIPA, *see Sossamon v. Texas,* —— U.S. ——, ——, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011). Further, a state officer may not be sued for damages in his official capacity under Section 1983 because he is not considered a "person" within the meaning of the statute. *See Reynolds v. Barrett,* 685 F.3d 193, 204 (2d Cir.2012); *see also Koehl v. Dalsheim,* 85 F.3d 86, 88–89 (2d Cir.1996) (holding that a Section 1983 suit for money damages against a state official in his official capacity was barred by sovereign immunity). Thus, Brooks's claims against DOCS and his claims seeking monetary damages against the individual Defendants in their official capacities are dismissed with prejudice.

**B. Eighth Amendment Claims**

**\*4** Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010). Brooks's Amended Complaint, liberally construed, suggests four possible violations by Defendants of the Eighth Amendment's prohibition on cruel and unusual punishment. First, Brooks claims that, on or about April 17, 2009, Officer Jackson sexually and physically abused him during a pat-and-frisk. (Am.Compl.§§ II.A, III). Second, Brooks contends that, shortly thereafter, Officers McCurdy and Darden physically assaulted him. (Am.Compl.§ II.C). Third, Brooks's papers suggest an Eighth Amendment violation based on the alleged conditions of his

confinement while he was in keeplock. (Am. Compl. § II.D; Opp'n 14). Fourth, Brooks alleges that he did not receive adequate medical attention for the injuries he sustained from the assaults by Officers Jackson, McCurdy, and Darden, and that he has failed to receive adequate mental health treatment (Am. Compl. §§ II.D, III; Opp'n 11).

In order to successfully make out any Eighth Amendment claim, a prisoner must satisfy a two-part test, composed of an objective and subjective element. *See, e.g., Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir.2012). Objectively, the conduct at issue, evaluated "in light of contemporary standards of decency," *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009) (internal quotation marks omitted), must be "sufficiently serious ... to reach constitutional dimensions," *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) (internal quotation marks omitted). The subjective element requires the prison official accused of violating the Eighth Amendment to have possessed a "wanton state of mind" in carrying out the conduct at issue. *Branham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996) (internal quotation marks omitted).

**1. The Pat–and–Frisk Incident with Officer Jackson**

Brooks alleges that, on April 17, 2009, Officer Jackson hit him in his groin, grabbed and pulled his genitals, and put her finger in his anus, resulting in severe pain to his groin, as well as emotional injuries. (Am.Compl.§ III). Liberally construed, these allegations raise an Eighth Amendment claim based on excessive force, where the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (internal quotation marks omitted); *accord Wright,* 554 F.3d at 268. Here, there is no indication that Officer Jackson's alleged use of force was for disciplinary purposes; Brooks alleges that she assaulted him for no particular reason. Such claims, if true, could indeed constitute a malicious and sadistic use of force, which would satisfy both the objective and subjective elements of the test. *See, e.g., Wright,* 554 F.3d at 268–69 ("[W]hen prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated." (internal quotation marks omitted)); *Sims v. Artuz,* 230 F.3d 14, 21–22 (2d Cir.2000) ("The malicious use of force to cause harm constitutes an Eighth Amendment violation *per se.*" (brackets omitted)).

Additionally, because Brooks alleges physical as well as emotional injury from this assault, he would be entitled to recover compensatory damages for both types of injury. *See Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir.2002) (holding that 42 U.S.C. § 1997e(e), which, in certain circumstances, bars prisoners from recovering from mental or emotional injuries, does not apply where there is a "showing of actual physical injury"). Defendants' motion to dismiss is therefore denied with regard to Officer Jackson's alleged assault.

## 2. The Assault by Officers McCurdy and Darden

 **\*5** Brooks alleges that, later the same day, Officers McCurdy, Darden, and another unidentified individual assaulted him. (Am. Compl. § II.C; Opp'n 12). In particular, he alleges that Officer Darden first came to his cell and began to verbally harass him. (Opp'n 12.) He states that two more officers, including Officer McCurdy, then came to his cell and joined in the verbal harassment. (*Id.*) Brooks alleges that afterwards, while he was being escorted to the prison's mental health facility, the three officers who had been verbally harassing him approached him and punched him in the back of his head, neck, and back, while the officer who was escorting him walked away. (*Id.*) As a result of this assault, Brooks alleges, he developed permanent lumps on, and severe pain in, his back and neck. (Am.Compl.§ III).

These allegations also state an Eighth Amendment claim for excessive force. As discussed above, Eighth Amendment claims based on the excessive use of force turn on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins,* 559 U.S. at 37 (internal quotation marks omitted). As with the alleged incident with Officer Brooks, there is no indication that Officers Darden and McCurdy were using force for any disciplinary purposes; according to Brooks, they did so in response to Brooks "fucking with C.O. Jackson." (Opp'n 12). Brooks has pleaded sufficient facts to state a claim of use of excessive force by Officers McCurdy and Darden, and Defendants' motion to dismiss this claim is therefore also denied. Again, if proved true, Brooks would be entitled to recover for both his physical and emotional injuries stemming from this incident. *See Thompson,* 284 F.3d at 417.

## 3. Conditions of Confinement

Next, Brooks alleges that, while in keeplock, he was denied food trays, showers, and medical attention (Am.Compl.§ II.D), and was placed in a cell without a mattress, with a clogged toilet and sink, with a light bulb that blinked on and off, and with urine, feces, and blood on the floor. (Opp'n 14). As with any other Eighth Amendment claim, a conditions-of-confinement claim requires the prisoner to satisfy the objective and subjective prongs of the two-part test. In the conditions-of-confinement context, that means that "(1) objectively, the deprivation the inmate suffered [must have been] sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official [must have] acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013) (alteration and internal quotation marks omitted).

The conditions that Brooks alleges are arguably sufficiently serious to satisfy the objective prong of the Eighth Amendment analysis. *See id.* at 127 (noting that "unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment"); *Robles v. Coughlin,* 725 F.3d 12, 15 (2d Cir.1983) ("[U]nder certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension."). Nevertheless, Brooks fails to allege deliberate indifference on the part of any moving Defendant. Deliberate indifference requires the prisoner to allege that the official "knows of and disregards an excessive risk to inmate health or safety." *Phelps v. Kapnolas,* 308 F.3d 180, 185–86 (2d Cir.2002). The only prison official alleged to have known of Brooks's conditions of confinement, however, is Officer Tomson (Am.Compl.§ II.D), and he has not appeared in this action. Accordingly, all of Brooks's Eighth Amendment conditions-of-confinement claims against the moving Defendants are dismissed.

## 4. The Denial of Medical Treatment

 **\*6** Finally, Brooks claims that he did not receive adequate medical attention for the injuries he sustained from the sexual assault by Officer Jackson and the physical assault by Officers McCurdy and Darden. (Am.Compl.§ III). Liberally construed, his papers also suggest a claim that he has been denied adequate mental health care treatment. (Am. Compl. § II.D; Opp'n 11).

To establish an Eighth Amendment violation for inadequate medical care, a prisoner must make a showing of "deliberate indifference to his serious medical needs," *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), which also involves a two-part objective and subjective test. The first, objective prong asks (1) whether the prisoner " 'was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required," and (2) " 'whether the inadequacy in medical care is sufficiently serious' by examining 'how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.' " *Sledge v. Fein,* No. 11 Civ. 7450(PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar.28, 2013) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006)). The second, subjective prong requires the plaintiff to establish that the defendant acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280.

Here, Brooks's complaint lacks the detail necessary to establish a plausible deliberate indifference claim with respect to either his physical or mental health. Brooks alleges that he suffered chronic pain in his groin, neck, and back, and that the "[D]epartment of Correction[s] [was] not giving [him] the adequate medical attention [he] need[ed]." (Am.Comp. § III). Although a prisoner's chronic pain may be sufficiently serious to support an Eighth Amendment claim, *see Brock v. Wright,* 315 F.3d 158, 162–63 (2d Cir.2003), Brooks fails to allege how the treatment he received was inadequate. Brooks admits that he was provided pain medication; he merely asserts, without elaboration, that this treatment was insufficient. (Am.Comp. § III). Such allegations do not give rise to a legal claim. *See Joyner v. Greiner,* 195 F.Supp.2d 500, 504 (S.D.N.Y.2002) ("It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."); *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Brooks does not explain why the pain medication he was provided was not satisfactory, what alternate treatment he would have preferred, or how such alternate treatment was necessary. With respect to the allegedly inadequate mental health care treatment, Brooks's papers are similarly devoid of any details regarding what mental illness afflicts him or

what type of treatment he requires. His claims regarding the denial of medical care are thus dismissed against all Defendants.

## C. First Amendment Retaliation Claim

 *7 As noted, Brooks claims that, as a result of his filing a grievance against Officer Jackson after the alleged sexual assault, Officers McCurdy, Darden, and another unidentified individual retaliated against him by assaulting, threatening, and harassing him. (Am.Compl.§§ II.C–D). He also suggests that Officer Jackson instructed them to do so. (Opp'n 12–13). Construed liberally, these facts are also sufficient to state a First Amendment retaliation claim.

To sustain such a claim, "a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotation marks omitted). "The protected conduct must be 'a substantial or motivating factor for the adverse actions taken by prison officials.' " *Key v. Toussaint,* 660 F.Supp.2d 518, 525 (S.D.N.Y.2009) (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003)). In light of "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," courts must "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Consequently, "the plaintiff bears a heightened burden of proof." *Key,* 660 F.Supp.2d at 525 (internal quotation marks omitted).

Brooks's allegations satisfy all three elements required for a First Amendment retaliation claim. With respect to the first element, it is well established that the filing of a grievance is constitutionally protected behavior. *See, e.g., Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [Section] 1983."). With respect to the second element, physical assault plainly constitutes adverse action, as it is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."

*Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003); *see, e.g., Varela v. Demmon,* 491 F.Supp.2d 442, 445, 450 (S.D.N.Y.2007) (noting the defendants' concession that a prisoner's allegation of assault by correction officers, if true, would meet the adverse action element of a retaliation claim).

Finally, Brooks adequately alleges a nexus between the protected speech and the alleged retaliatory action. In particular, Brooks claims that "C.O. Darden ... said she was going to kick my ass threat[en]ing to get me for C.O. K. Jackson" (Opp'n 12), and that "C.O. McC[u]rdy said he was going to fuck me up for fucking with C.O. K. Jackson." (*Id.*). He also alleges that Officer Tomson told him that Officer Jackson "inform[ed] her [co]workers to ret[al]iate against me." (*Id.*). These allegations (which are consistent with, even if slightly more detailed than, the allegations in the Amended Complaint) are sufficiently specific to survive even the heightened pleading standards for retaliation claims. Defendants' motion to dismiss the First Amendment retaliation claim against Officers McCurdy, Darden, and Jackson is therefore denied.

**D. Due Process Claims**

 **\*8** Next, Brooks's papers raise two separate claims arising from the Due Process Clause of the Fourteenth Amendment. First, Brooks claims various procedural defects in his disciplinary hearing of May 19, 2009, including a denial of his right to call witnesses at the hearing, the failure of Officer Carver to conduct an adequate mental health capacity assessment, and the failure of Officer Carver to secure proper authorization to hold the hearing more than fourteen days after the misbehavior report was filed. (Opp'n 33–36). Second, Brooks claims that Officers Carver and Jackson destroyed certain items of his personal property, including books, family pictures, and letters. (Am. Compl § II.D).

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (brackets and internal quotation marks omitted). An inmate's liberty interest may be implicated when prison discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (internal quotation marks omitted); *accord Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

**1. The May 19, 2009 Disciplinary Hearing**
First, Brooks alleges that the procedures at the May 19, 2009 hearing, where he was accused of staring at Officer Jackson through his mirror, exposing himself, and masturbating, were constitutionally deficient. (Opp'n 33– 36). In particular, Brooks contends that Officer Carver denied his request to call a correctional officer who was present at the site of the incident as a witness. (*Id.* 34). Brooks was found guilty at this disciplinary hearing and, as a consequence, was sent to keeplock for three months. (*Id.* 30). In keeplock, Brooks alleges he was denied food trays, showers, and medical attention (Am.Compl.§ II.D), and was placed in a cell without a mattress, with a clogged toilet and sink, with a light bulb that blinked on and off, and with urine, feces, and blood on the floor (Opp'n 14).

This claim is easily dismissed against all Defendants other than Officer Carver. It is a "prerequisite to an award of damages" under Section 1983 that any constitutional violations be tied to the "personal involvement of defendants in [the] alleged constitutional deprivations." *Spavone v. N.Y. State Dept. of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir.2013) (internal quotation marks omitted). "[P]ersonal involvement of a ... defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant ... failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, ... (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).[4] Brooks fails to allege that any Defendant other than Officer Carver was personally involved in the disciplinary hearing in any of these ways.

 **\*9** The Court dismisses the due process claims against Officer Carver as well, but for a different reason: Brooks failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act (the "PLRA"), a prisoner must exhaust his administrative remedies before he can bring an action with respect to prison conditions. *See* 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 93–103, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In New York State, that means taking advantage of a three-tiered grievance procedure. *See, e.g., Bennett v. Wesley,* No. 11 Civ. 8715(JMF), 2013 WL 1798001,

at *4–5 (S.D.N.Y. Apr.29, 2013). In order to exhaust administrative remedies, a prisoner must complete all three tiers, up to and including an appeal to the Central Office Review Committee (the "CORC"). *See* 7 N.Y.C.R.R. § 701.5; *Bennett,* 2013 WL 1798001, at *4–5. The inmate must also comply with the agency's deadlines and other procedural rules. *See Woodford,* 548 U.S. at 93.

Although it may not be clear from the face of Brooks's Amended Complaint that he failed to exhaust his administrative remedies with respect to the due process claims against Officer Carver, the Court exercises its discretion to convert Defendants' motion to dismiss on this limited issue to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and thus considers materials beyond the scope of the pleadings. *See e.g., Williams v. Metro. Det. Ctr.,* 418 F.Supp.2d 96, 101–02 (E.D.N.Y.2005); *Rivera v. Pataki,* No. 01 Civ. 5179(MBM), 2003 WL 21511939, at *5 (S.D.N.Y. July 1, 2003). Conversion is proper because Defendants provided Brooks with notice that the Court might treat Defendants' motion to dismiss as a motion for summary judgment, and informed him that if he did not respond "by filing sworn affidavits and other papers as required by Rule 56(e)," his "COMPLAINT MAY BE DISMISSED." (*See* Docket No. 47). *See, e.g., Hernandez v. Coffey,* 582 F.3d 303, 308 n. 2 (2d Cir.2009) (citing cases finding that a Local Rule 12.1 Notice provides sufficient notice to pro se parties). Further, Brooks himself submitted evidence outside of the pleadings. (Opp'n 21– 75). And converting Defendants' motion in this limited way "is likely to facilitate the disposition of the action" with respect to Officer Carver. *Stephens v. Bayview Nursing & Rehab. Ctr.,* No. 07 Civ. 596(JFB)(AKT), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (internal quotation marks omitted). After all, the record makes clear that Officer Carver is entitled to judgment as a matter of law on the ground that Brooks failed to exhaust his administrative remedies. *See* Fed. R. Civ. P 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). [5]

In particular, the record makes clear that Brooks failed to appeal any grievance relating to his due process claim against Officer Carver to the CORC. The CORC, for example, has no record of any appeal by Brooks. (Hale Decl. ¶¶ 7–8 & Ex.A). And Brooks himself appears to concede in his opposition papers that he failed to appeal his grievances to the highest stage. (Opp'n 18–19). Brooks

does submit a copy of one grievance that appears to reflect an attempt to appeal to the CORC (Opp'n 52–53), but it did not satisfy the exhaustion requirement for several reasons. First, Brooks does not allege, let alone show, that he filed Form # 2133, which is required to properly file an appeal with the CORC. *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i) ("If the grievant or any direct party wishes to appeal to the CORC, he or she must complete and sign Form # 2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance."). Second, the date of the appeal was more than one year after the alleged incident, so it was plainly untimely. *See id; see also* 7 N.Y.C.R.R. § 701.5(a) (1), (c) (setting out time limits in which inmates must file grievances to the lower tiers). Third and in any event, the grievance makes no mention of anything regarding Officer Carver's conduct at the disciplinary hearing.

**\*10** In short, the record shows that Brooks failed to exhaust his administrative remedies with respect to his due process claim against Officer Carver. Additionally, Brooks makes no allegations, and has submitted no evidence, with respect to Officer Carver that could support any exception to the administrative exhaustion requirement. *See supra* n. 3; *Bennett,* 2013 WL 1798001, at *6. Under the PLRA, therefore, Brooks's due process claim against Officer Carver must be dismissed for failure to exhaust. *See Bennett,* 2013 WL 1798001, at *5 (converting a motion to dismiss into a motion for summary judgment and dismissing on the ground that the plaintiff had failed to appeal to the CORC).

**2. The Destruction of Personal Property**
As noted, Brooks also alleges that certain of his personal property was destroyed, including song books, family pictures, letters, books, and legal documents. (Am.Compl.§ II.D). "An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Second Circuit has specifically held that the availability of an action in the New York Court of Claims constitutes such a remedy. *See, e.g., Davis v. New York,* 311 F. App'x 397, 401 (2d Cir.2009); *Love v. Coughlin,* 714 F.3d 207, 209 (2d Cir.2009); *see also Jones v. Harris,* 665 F.Supp.2d 384, 401 (S.D.N.Y.2009). As Brooks does not allege that he

is unable to file such an action, Defendants' motion to dismiss this claim is granted.

## E. Misbehavior Report

Next, Brooks claims that the misbehavior report filed against him by Officer Jackson on April 23, 2009, was fabricated. (Am.Compl.§ II.D). Read liberally, Brooks's papers allege that by filing this allegedly false report, Officer Jackson violated his constitutional rights and defamed his character. Both claims fail as a matter of law.

First, it is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.' " *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Thus, the only way in which the filing of a false misbehavior report can violate a prisoner's constitutional rights is if the report is filed in retaliation for the exercise of some other constitutional right, such as the filing of a grievance. *See Boddie,* 105 F.3d at 862*; see also Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."). Here, however, Brooks makes no claim that the filing of the misbehavior report was done in response to his filing of a grievance; in fact, at the disciplinary hearing, Brooks apparently testified that Jackson fabricated the allegations "for reasons unknown to [him]." (Opp'n 33). Therefore, Brooks's allegation that Officer Jackson filed a false misbehavior report against him is insufficient to state a claim for the violation of his constitutional rights.

**\*11** Brooks's defamation claim also falls short. Generally speaking, state law, not Section 1983, provides the remedy for a defamation claim. *See, e.g., Lauro v. Charles,* 219 F.3d 202, 207 (2d Cir.2000). Federal constitutional relief may be available for defamation under the Due Process Clause—through what is known as a "stigma plus" claim —when a plaintiff can demonstrate that the government has (1) made an "utterance of a statement sufficiently derogatory to injure [the plaintiff's] reputation, that is capable of being proved false, and that [the plaintiff] claims is false," and (2) imposed a "material ... burden or ... alteration of the plaintiff's status or rights." *Vega v. Lantz,* 596 F.3d 77, 81 (2d Cir.2010) (internal quotation marks omitted). Further, the "statement must be sufficiently public to create or threaten a stigma." *Velez*

*v. Levy,* 401 F.3d 75, 87 (2d Cir.2005). Here, Brooks makes no allegations that Defendants (or anyone else) publicized the misbehavior report. It follows that his defamation claim must be dismissed.

## F. Conspiracy

Next, Brooks claims that Officers Carver and Jackson conspired together to unlawfully confine him, violate his mental health patient rights, retaliate against him, and discriminate against him. (Am.Compl.§ II.D). To establish a claim for conspiracy under Section 1983, Brooks must demonstrate "(1) an agreement between two or more state actors ... (2) to act in concert to inflict an unconstitutional injury; [and] (3) an overt act done in furtherance of that goal causing damages." *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 507 (S.D.N.Y.2008) *aff'd sub nom. Jean–Laurent v. Wilkerson,* 461 F. App'x 18 (2d Cir.2012). "Because of the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, federal courts require 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the plaintiff] of his constitutional rights.' " *Nwanze v. Philip Morris Inc.,* 100 F.Supp.2d 215, 219 (S.D.N.Y.2000) (alteration in original) (quoting *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990)). To avoid dismissal, therefore, Brooks "must plead facts that show an agreement or some form of joint or concerted action." *Id.* (internal quotation marks omitted). Brooks must "make an effort to provide some details of time and place and the alleged effect of the conspiracy." *Id.* (internal quotation marks omitted).

Here, Brooks fails to allege any facts that might support an inference that Officers Jackson and Carver conspired to deprive him of his constitutional rights. Brooks makes only the conclusory allegation that "Carver work[ed] with K. Jackson" to unlawfully confine him, violate his mental health patient rights, destroy his personal property, and retaliate against him, but provides no other details to support his allegation of a conspiracy. (Am. Compl. § II . D). As Brooks has not pleaded facts that show an agreement or some form of joint or concerted action, Defendants' motion to dismiss this claim is granted.

## G. Religious Liberty Claims

**\*12** Finally, liberally construed, Brooks's papers also allege a violation of his rights under both the Free Exercise

Clause of the First Amendment and RLUIPA. Brooks's papers suggest that he is a follower of the Muslim faith, and that being subjected to a pat-and-frisk by a member of the opposite sex violates his religious beliefs. (Am. Compl. § II.D; Opp'n 9). He alleges his rights were violated when Officer Jackson conducted two pat-and-frisks on him, at least one of which (and perhaps both of which) occurred after Brooks had informed her that he was Muslim and preferred to be frisked by an officer of the same sex. (Am. Compl. § II.D; Opp'n 9).

Brooks's RLUIPA claim is easily dismissed, as the Second Circuit recently held that the statute does not provide a private cause of action against state officials in their individual capacities (at least where, as here, there is no allegation that the officials' purported restriction on religious rights had an effect on interstate or foreign commerce). *See Washington v. Gonyea,* No. 11–980–cv, ––– F.3d ––––, 2013 WL 4792371, at *2–3 (2d Cir. Sept.10, 2013).

At this stage, however, the Court will not dismiss Brooks's Free Exercise claim. To assess a claim under the Free Exercise Clause, a court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (2) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988). The first and the third elements are non-issues at this stage of the litigation. As to the first element, Brooks has alleged that he is a Muslim and thus prefers to be searched by male officers; the Court has no basis now to question the sincerity of these beliefs. (Am. Compl. § II.D; Opp'n 9). As to the third element, whether there is some legitimate penological objective served by cross-gender pat-and-frisks (or, more precisely, by not honoring an inmate's religious-based request to be frisked by an officer of the same gender) is not something that can be assessed on the current record.

Whether the allegations in the Amended Complaint are sufficient to satisfy the second element—that is, whether Brooks plausibly alleges that the disputed conduct "substantially burden[ed]" his "sincerely held religious beliefs," *Salahuddin,* 467 F.3d at 274–75—is a closer issue. Although the case law on point is limited, there is little question that cross-gender pat-and-frisks *can* substantially

burden a prisoner's Free Exercise rights. *See, e.g., Forde v. Baird,* 720 F.Supp.2d 170, 176 (D.Conn.2009); *Forde v. Zickefoose,* 612 F.Supp.2d 171, 175–78 (D.Conn.2009). But the line between what constitutes a substantial burden and what does not—and on which side of that line Brooks's allegations of two pat-and-frisk incidents would fall—is less clear. Given that lack of clarity, and mindful of Plaintiff's *pro se* status, the Court declines to hold that the allegations in the Amended Complaint fail as a matter of law. It would be more appropriate to address the issue, if ever, based on a more developed record.

## CONCLUSION

**\*13** For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. All of Brooks's claims against the moving Defendants (that is, all Defendants other than Officer Tomson) are dismissed except for (1) his Eighth Amendment claim against Officer Jackson in her individual capacity relating to the April 17, 2009 incident; (2) his Eighth Amendment claim against Officers Darden and McCurdy in their individual capacities relating to the alleged assault around that same date; (3) his First Amendment retaliation claim against Officers Jackson, McCurdy, and Darden in their individual capacities; and (4) his First Amendment Free Exercise claim against Officer Jackson in her individual capacity.

As noted, Officer Tomson has not appeared in this action. Because Officer Tomson was not served within 120 days of the filing of the Complaint, it is hereby ORDERED that Brooks show cause in writing as to why he has failed to serve the summons and Complaint within the 120 days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure or, if Brooks believes that Office Tomson has been served, that he submit a letter to the Court stating when and in what manner such service was made. If the Court does not receive any communication from Brooks within **thirty days,** showing good cause why such service was not timely made, the Court will dismiss the case against Officer Tomson.

**The Clerk of Court is directed to terminate as parties Officer Carver and all other Defendants to the extent they have been sued in their official capacities, to terminate Docket No. 44, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.**

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2013 WL 5339151

Footnotes

1    Brooks also names Correctional Officer Tomson as a Defendant in the Amended Complaint, but there is no record that he has served Tomson.

2    At one point in his original Complaint, Brooks identifies the date as May 17, 2009. (Compl. § III (Docket No. 2)).

3    Defendants also argue that Brooks's claims should be dismissed for failure to exhaust administrative remedies. (Mem. Law Supp. Defs.' Mot. Dismiss Am. Compl. 5–7 (Docket No. 45); Hale Decl. ¶¶ 7–8 & Ex.A (Docket No. 46)). The failure to exhaust is an affirmative defense, however, which may be raised on a motion to dismiss only where the defense "appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998). Because it is not clear from the face of Brooks's Amended Complaint that he failed to exhaust his administrative remedies, and because Brooks plausibly alleges that at least some Defendants—namely, Officers Jackson, McCurdy, and Darden—engaged in conduct that may estop them from raising the defense of nonexhaustion, *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (holding defendants may be estopped from arguing non-exhaustion when "[their] own actions inhibit[ ] the inmate's exhaustion of remedies"), the Court concludes that dismissal on this basis is not warranted at this stage. As discussed below, however, the Court converts Defendants' motion to dismiss for failure to exhaust to a motion for summary judgment with respect to the due process claim asserted against Officer Carver, and dismisses that one claim under the summary judgment standard.

4    Although there is some uncertainty with respect to whether, or to what extent, the *Colon* categories remain good law following the Supreme Court's decision in *Iqbal, see, e.g., Zappulla v. Fischer,* No. 11 Civ. 6733(JMF), 2013 WL 1387033, at *9 (S.D.N.Y. Apr.5, 2013), the Court need not address that issue in this case.

5    The Court notes that, at least in some cases, courts in the Second Circuit have considered administrative records in the exhaustion context on a motion to dismiss without converting the motion to one for summary judgment. *See, e.g., Smart v. Goord,* 441 F.Supp.2d 631, 637–38 (S.D.N.Y.2006), *on reconsideration in part,* 04 CIV. 8850 RWS, 2008 WL 591230 (S.D.N.Y. Mar.3, 2008); *Abney v. McGinnis,* No. 01 Civ. 8444(SAS), 2002 WL 1461491, *3–4, 2002 U.S. Dist. LEXIS 12180, at *6–7 (S.D.N.Y. July 2, 2002), *reversed and vacated on other grounds,* 380 F.3d 663 (2d Cir.2004). Here, however, because Plaintiff was on notice that Defendants' motion might be converted to one for summary judgment, and because Plaintiff himself submitted extrinsic materials with his Opposition Memorandum, the Court finds it appropriate to convert this motion to one for summary judgment, at least for this limited purpose.

**End of Document**                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 723553
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Kim CARL, Plaintiff,

v.

Thomas GRIFFIN, et al., Defendants.

No. 08 Civ. 4981(RMB)(MHD).
|
March 2, 2011.

### DECISION & ORDER

RICHARD M. BERMAN, District Judge.

### I. Background

**\*1** On or about May 30, 2008, *pro se* plaintiff Kim Carl ("Plaintiff" or "Carl") filed a complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Thomas Griffin ("Griffin"), Deputy Superintendent of Security at Mid–Orange Correctional Facility ("Mid–Orange") in Warwick, New York; James Nichols, Superintendent at Mid–Orange; Jackie Ramos ("Ramos"), Nurse at Mid–Orange; Mid–Orange Lieutenants Cestaro ("Cestaro") and Urbanski ("Urbanski"); and Mid–Orange Corrections Officers Mill ("Mill") and Dronke ("Dronke," and collectively, "Defendants"). (See Compl., dated May 12, 2008.) Plaintiff alleges that Defendants denied him due process and retaliated against him for his and his family's exercise of their First Amendment rights when, following a verbal dispute between Plaintiff and Griffin, Defendants, among other things, searched Plaintiff's cell, ordered that he undergo a urinalysis, lodged a "false" disciplinary charge against him, found him guilty on that charge after a "partial and bias[ed] hearing," sentenced him to 30 days of confinement, and failed adequately to respond to freedom of information law ("FOIL") requests filed by Plaintiff relative to these events. (Compl.§ D.)

On September 29, 2009, the Court issued an order adopting United States Magistrate Judge Michael H. Dolinger's report and recommendation ("Report"), dated September 1, 2009, denying Defendants' motion, filed September 8, 2008, to dismiss the Complaint for Plaintiff's failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (*See* Order, dated Sept. 29, 2009; Report, dated Sept. 1, 2009.) The Court determined that exhaustion should be excused because prison officials failed to timely advance Plaintiff's grievance or otherwise prevented him from seeking his administrative remedies. (*See* Order at 2; Report at 15–16.) [1]

On August 30, 2010, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), arguing, among other things, that (1) Plaintiff "was given all the procedural due process protections guaranteed by the Fourteenth Amendment"; (2) "[P]laintiff attempts to turn a series of legitimate and typical penological actions into a constitutional claim by characterizing them all as retaliatory"; and (3) Defendants should be entitled to qualified immunity because it was "objectively reasonable for ... [D]efendants to believe that their ... penological actions did not violate any constitutional rights." (Defs.' Mem. of Law in Supp. of Mot. for Summ. J., dated Aug. 30, 2010 ("Defs.Mem."), at 2, 15, 20–21.) [2]

On December 6, 2010, Plaintiff submitted opposition papers restating the facts from his Complaint and arguing that Defendants should not be granted summary judgment based upon, among other things, Judge Dolinger's Report, Defendants' alleged discovery violations, and Defendants' alleged violations of New York State Corrections Law. (*See* Pl.'s Mem. of Law, dated Dec. 1, 2010 ("Pl.Opp'n")); N.Y. Correct. § 250.2.

**\*2** On December 15, 2010, Defendants filed a two page letter in reply, noting, among other things, that "[P]laintiff has ... failed to address any of the legal arguments asserted in [D]efendants' Memorandum of Law." (Defs.' Ltr. to the Ct., dated Dec. 15, 2010 ("Defs.Reply"), at 1.) The parties waived oral argument. (*See* Admin. Order, dated Jan. 24, 2011.)

The following facts are not in dispute:

(i) Plaintiff, while an inmate at Mid–Orange, was leaving the mess hall at approximately 9:30 a.m. on January 18, 2008 when he became engaged in a brief verbal altercation with Griffin regarding Plaintiff's access through the mess hall's exit doors;

(ii) Griffin immediately reported to Urbanski that Plaintiff was "acting strang[ely] and making unusual comments";

(iii) Urbanski ordered that Plaintiff undergo a cell search and urinalysis "for suspicion due to his unusual behavior";

(iv) at approximately 10:15 a.m., Dronke searched Plaintiff's cell, where—according to Dronke's "Inmate Misbehavior Report," dated January 18, 2008 ("Misbehavior Report")—he "discovered several forms of expired medications";

(v) on that same morning, Plaintiff underwent a urinalysis which came back with "negative results";

(vi) on January 24, 2008, Cestaro held a Tier II disciplinary hearing ("Hearing") (having charged Plaintiff with violating Rule 113.14 of N.Y. Correct. § 270.2 ("Rule 113.14"), which prohibits inmate possession of "outdated" medication), at which Plaintiff stated that the medication was his and affirmed that he was served with a formal copy of the charge against him on January 22, 2008;

(vii) at the end of the Hearing, Cestaro found Plaintiff guilty of violating Rule 113.14 and sentenced him to 30 days in "keeplock"; and

(viii) Plaintiff filed five FOIL requests related to these incidents. (*See* Defs.' Rule 56.1 Statement, dated Aug. 30, 2010 ("Defs.56.1"), ¶¶ 1, 9–11, 15, 17, 18, 20, 21; Tr. of Pl.'s Deposition, dated Dec. 3, 2009 ("Dep.Tr."), at 43:8–44:19; Decl. of Julia H. Lee, dated Aug. 30, 2010 ("Lee Decl."), Ex. B; Urbanski Mem., dated Mar. 4, 2008, Lee Decl., Ex. F; Misbehavior Report, dated Jan. 18, 2008, Lee Decl., Ex. C; Tr. of Hearing, dated Jan. 24, 2008 ("Hr'g Tr."), at 1, 2, 7, Lee Decl., Ex. D; Compl., Ex. A.) [3]

**For the following reasons, Defendants' motion for summary judgment is granted.**

## II. Legal Standard

Summary judgment is appropriate "when, construing all evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 173 (2d Cir.2006) (citing Fed.R.Civ.P. 56(c)) (internal

quotation marks and alterations omitted). "[I]n order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in that party's favor." *Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003).

**\*3** "The same standards apply to a *pro se* litigant, but such a litigant is given special latitude in responding to a summary judgment motion." *Covington v. Westchester Cnty. Dep't of Corr.,* No. 06 Civ. 5369, 2010 **WL** 572125, at \*4 (S.D.N.Y. Jan. 25, 2010) (internal quotation marks omitted). "By the same token, however, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Thompson v. Tracy,* No. 00 Civ. 8360, 2008 **WL** 190449, at \*5 (S.D.N.Y. Jan. 17, 2008) (internal quotation marks omitted).

## III. Analysis

### (1) Due Process Claim

Defendants argue that Plaintiff's claim—that Defendants denied him due process by sentencing him to 30 days of confinement on the basis of "false" charges and testimony (Compl.§ D)—must be dismissed because Plaintiff "had no actual liberty interest since his confinement to keeplock was only 30 days," and because Plaintiff "was afforded sufficient procedural safeguards." (Defs. Mem. at 15–16.) Plaintiff does not appear to respond to this argument. [4]

"[A]n analysis of whether Plaintiff was denied due process turns first, on whether there exists an interest which has been deprived, and second, on whether the procedures implemented to protect that interest afforded due process." *Harris v. Keane,* 962 F.Supp. 397, 403 (S.D.N.Y.1997) (citing *Young v. Hoffman,* 970 F.2d 1154, 1156 (2d Cir.1992); *Hewitt v. Helms,* 459 U.S. 460, 472 (1983)).

Plaintiff's due process claim fails because he cannot establish any "interest which has been deprived." *Id.* "[T]he decisions in the Second Circuit are unanimous that keeplock of 30 days or less in New York prisons is not 'atypical or significant hardship,' " *Smart v. Goord,* 441 F.Supp.2d 631, 640 (S.D.N.Y.2006) (quoting *Sandin v. Connor,* 515 U.S. 472, 484 (1995)), and, therefore, "does not implicate a liberty interest ... of which Plaintiff

would be entitled to due process protections," *Harris,* 962 F.Supp. at 404. [5]

"Even if Plaintiff could establish a cognizable liberty interest, he must still demonstrate that Defendants deprived him of that interest through insufficient process." *Branch v. Goord,* No. 05 Civ. 6495, 2006 **WL** 2807168, at *4 (S.D.N.Y. Sept. 28, 2006). The evidence establishes that Defendants provided Plaintiff with "the minimum procedures to which prison inmates are entitled under the fourteenth amendment." *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *see Wolff v. McDonnell,* 418 U.S. 539, 564–66 (1974). That is, Plaintiff was given "(1) advance written notice of the charges at least 24 hours before the [H]earing." *Freeman,* 808 F.2d at 953; (*see* Hr'g Tr. at 1 (Cestaro: "[T]he record indicates that you were served with a formal copy of the charges on 1/22/08 at 8:15am by Officer Garecky. Is that correct?" Carl: "Yes.").) Plaintiff was afforded "(2) the opportunity to appear at the [H]earing, to call witnesses, and to present rebuttal evidence." *Freeman,* 808 F.2d at 953; (see Hr'g Tr. at 1, 6; Dep. Tr. at 68:24–69:11, 89:18–23 (Def. Counsel: "Did you have an opportunity to talk about what happened during the hearing?" Carl: "Yes, I did." ... Def. Counsel: "[Y]ou could call witnesses but you chose not to call any witnesses at the hearing?" ... Carl: "I didn't want to call any witnesses[.]").) And, Plaintiff was provided with (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's actions." *Freeman,* 808 F.2d at 953; (*see* Lee Decl. Ex E.) "[P]laintiff was afforded all the process due." *Renelique v. Duncan,* No. 03 Civ. 1256, 2007 **WL** 1110913, at * 14 (N.D.N.Y. Apr. 12, 2007).

**\*4** Plaintiff's due process claim would fail even if the Court were to assume, *arguendo,* that the Misbehavior Report and/or Cestaro and Ramos's statements at the Hearing were "false" (Compl.§ D) because "the key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections," *Franco v. Kelly,* 854 F.2d 584, 587 (2d Cir.1988); *see Merced v. Moylan,* 2007 **WL** 3171800, at *10 (N .D.N.Y. Oct. 29, 2007); *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); [6] *see also Excell v. Woods,* No. 07 Civ. 305, 2009 **WL** 3124424, at *22 & n. 49 (N.D.N.Y. Sept. 29, 2009) ("[T]he Fourteenth Amendment does not require any administrative review of disciplinary convictions.")

(collecting cases); *Blount v. Brown,* No. 10 Civ. 1548, 2010 **WL** 1945858, at *2 (E.D.N.Y. May 11, 2010) ("[A] plaintiff has no property interest in obtaining FOIL documents." (internal quotation marks omitted)) (collecting cases); *Freeman v. Goord,* No. 02 Civ. 9033, 2005 **WL** 3333465, at *5 n. 4 (S.D.N.Y. Dec. 7, 2005) ("[D]eprivation of [a] prisoner's property does not violate Due Process" because "New York provides adequate state court post-deprivation remedies for an inmate's loss of property." (citing *Hudson v. Palmer,* 468 U.S. 517, 539–40 (1984))).

And, to the extent that Plaintiff attempts to assert a "substantive due process" claim by arguing that Defendants' actions "violat[ed]" New York law (*see* Compl. § D; Pl. Opp'n at 6 (citing *Jackson v. Lefevre,* 494 N.Y.S.2d 797, 799 (Sup.Ct.1985))), such claim would fail because "[s]ubstantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised," *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations and quotation marks omitted).

### (2) Retaliation Claim

Defendants argue that "[P]laintiff fails to allege any protected speech or conduct as the impetus for the retaliation," and Defendants committed no cognizable "adverse action" against Plaintiff. (Defs. Mem. at 6, 8–11, 17–18.) Plaintiff (again) does not appear to respond. *See Monachino,* 2011 **WL** 349392, at *4.

"[A] plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant[s] took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2001) (internal quotation marks omitted); *see also Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) ("Courts must approach prisoner claims of retaliation with skepticism and particular care."), *overruled on other grounds by Swierkiewicz v. Sorema N.A .,* 534 U.S. 506 (2002).

**\*5** Plaintiff's retaliation claim fails because Plaintiff fails to show that he engaged in any constitutionally protected conduct. *See Davis,* 320 F.3d at 352. He alleges that Defendants retaliated against him for shaking his head and uttering "unbelievable I cant [sic] believe him" when

Griffin blocked Plaintiff's access through the door from the mess hall. (Compl.§ D.) Here, the alleged retaliation arose out of a verbal confrontation. *See Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S .D.N.Y.1989); *see Bell v. Hill,* No. 10 Civ. 850, 2010 WL 4256578, at *2 (E.D.Cal. Oct. 21, 2010) ("Plaintiff fails to allege that he was engaged in any protected conduct" where "Plaintiff simply told [a prison official] he thought his behavior was inappropriate."); *Riggs v. Miller,* 480 F.Supp. 799, 804 (E .D. Va.1979) ("[B]ickering, argumentative conversation" "not intended to reach anyone other than the defendant" is not "constitutionally protected activity."); *Lugo v. Van Orden,* No. 07 Civ. 879, 2008 WL 2884925, at *3 n. 4 (N.D.N.Y. July 23, 2008). Plaintiff's "brief and isolated verbal [encounter with Griffin] does not constitute protected First Amendment speech. To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment." *Oriakhi v. Wood,* No. 05 Civ. 53, 2006 WL 859543, at *5 (M.D.Pa. Mar. 31, 2006). [7]

Plaintiff also cannot establish any "adverse action" by Defendants because "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis,* 320 F.3d at 352 (internal quotation marks omitted). "A cell search is not considered to be an adverse action." *H'Shaka v. Drown,* No. 03 Civ. 937, 2007 WL 1017275, at *19 (N.D.N.Y. Mar. 30, 2007); *see Salahuddin v. Mead,* 2002 WL 1968329, at *5–6 (S.D.N.Y. Aug. 26, 2002) (collecting cases). Nor is "[b]eing forced to give a urine sample on one occasion ... an adverse action [because it is not] sufficient to deter a person of ordinary firmness" from exercising his First Amendment rights. *Burgos v. Canino,* 641 F.Supp.2d 443, 454 (E.D.Pa.2009), *aff'd,* 358 F. App'x 302 (3d Cir.2009); *see Bumpus v. Canfield,* 495 F.Supp.2d 316, 327 (W.D.N.Y.2007).

Defendants' alleged "threat[s]" and/or "harass[ment]"of Plaintiff were also insufficiently direct or specific to deter an ordinary inmate from exercising his first amendment rights. [8] (Compl.§ D); *see Sharpe v. Taylor,* No. 05 Civ. 1003, 2009 WL 1743987, at *9 (N.D.N.Y. June 18, 2009). "[V]erbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." *Rosales v. Kikendall,* 677 F.Supp.2d 643, 648 (W.D.N.Y.2010) (citing *Cabassa*

*v. Smith,* No. 08 Civ. 480, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009)); *see Bartley v. Collins,* No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Kemp v. LeClaire,* No. 03 Civ. 844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005).

**\*6** And, Plaintiff's identification of the Misbehavior Report and his 30 day keeplock sentence as "adverse actions" is unpersuasive because "there is no dispute that ... [P]laintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.' " *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (quoting *Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.1998) (per curiam)); *see Battice v. Phillip,* No. 04 Civ. 669, 2006 WL 2190565, at *8 (E.D.N.Y. Aug. 2, 2006); (*see, e.g.,* Hr'g Tr. at 6; Dep. Tr. at 88:22–89:2 (Def. Counsel: "Just to be clear, the medication that Officer Dronke found in your cell, you had that in your possession, right, that was your medication?" Carl: "Yes.").) "Thus, even assuming retaliatory motive, [Defendants would be] entitled to summary judgment '[because] there were proper, non-retaliatory reasons for [Plaintiff's] punishment.' " *Hynes,* 143 F.3d at 657 (quoting *Graham v. Henderson,* 89 F.3d 75, 81 (2d Cir.1996)); *see Lowrance,* 20 F.3d at 535. [9]

In his opposition papers, Plaintiff cites for the first time to the Fourth Amendment, although he does not (either in his Complaint or in opposition) specify a Fourth Amendment violation by Defendants. "Even given the considerable leeway in pleadings afforded *pro se* litigants, Plaintiff here cannot raise a new claim for the first time ... [at] summary judgment." *Evans–Gadsden v. Bernstein Litowitz Berger & Grossman, LLP,* 491 F.Supp.2d 386, 402 (S.D.N.Y.2007); *see Massie v. Ikon Office Solutions, Inc.,* 381 F.Supp.2d 91, 95 (N.D.N.Y.2005).

### (3) Qualified Immunity

"Since the Court has concluded in this case that no First or Fourteenth Amendment violations occurred, the Court need not address qualified immunity." *Vega v. Lareau,* No. 04 Civ. 750, 2010 WL 2682307, at * 15 (N.D.N.Y. Mar. 16, 2010); *see also Freeman v. Goord,* No. 02 Civ. 9033, 2005 WL 3333465, at *12 (S.D.N.Y. Dec. 7, 2005) ("Conduct that does not violate any constitutional

right certainly does not violate a constitutional right that was 'clearly established' at the time the conduct occurred." (quoting *Mozzochi v. Borde,* 959 F.2d 1174, 1179 (2d Cir.1992))).

## IV. Conclusion and Order

For the foregoing reasons, Defendants' motion for summary judgment [# 56] is granted. The Clerk of the Court is respectfully requested to close this case.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 723553

## Footnotes

1    Plaintiff appears to have been released from custody on March 25, 2010. *See* N.Y. Inmate Info., http://nysdocslookup.docs.state .ny.us; (Tr. of Proceedings, dated Mar. 8, 2010, 5:22–23.)

2    In connection with Defendants' motion for summary judgment, Defendants notified Plaintiff that if he does not "respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by [Defendants], the Court may accept [D]efendants' factual assertions as true" and "[j]udgment may then be entered in [D]efendants' favor without a trial." (Not. to *Pro Se* Litigant Opposing Mot. for Summ. J., dated Aug. 30, 2010, at 2.)

3    "Although [Plaintiff] has failed to submit [his] own Rule 56.1 Statement in response as required by the Local Rules, the Court has only deemed [Defendants'] stated facts to be admitted to the extent that they are uncontroverted by evidence in admissible form submitted by [Plaintiff] with [his] opposition papers." *Shmueli v. City of New York,* No. 03 Civ. 1195, 2007 **WL** 1659210, at *1 n. 1 (S.D.N.Y. June 7, 2007).

4    "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Monachino v. Bair,* No. 09 Civ. 3939, 2011 **WL** 349392, at *4 (S.D.N.Y. Feb. 1, 2011) (quoting *Maher v. Alliance Mortg. Banking Corp.,* 650 F.Supp.2d 249, 267 (E.D.N.Y.2009)). Because Plaintiff is *pro se,* the Court has analyzed his claims on the merits.

5    There is also no indication that Plaintiff endured "unusual" keeplock conditions. *Palmer v. Richards,* 364 F.3d 60, 66 (2d Cir.2004). "[T]he allegation that [P]laintiff was placed in keeplock confinement under otherwise normal conditions for thirty days ... does not establish a claim of cruel and unusual punishment." *McDonald v. Rivera,* No. 06 Civ. 410, 2008 **WL** 268345, at *8 (N.D.N.Y. Jan. 30, 2008) (citing *Jackson v. Johnson,* 15 F.Supp.2d 341, 363 (S.D.N.Y.1998) (same for 99 days in keeplock)).

6    The record contradicts Plaintiff's claims of falsity. Plaintiff admittedly possessed the medication cited in the Misbehavior Report. (*See* Hr'g Tr. at 2, 4, 6 (Carl: "[W]hen I was in [a different prison] they ... gave me that medication.... I had them update my medication and I just looked over it, I never really, it wasn't a lot I never paid attention to it."); Lee Decl. Ex. C.) And, Rule 113.14, to which the Misbehavior Report cites, provides, in pertinent part, that "[a]n inmate shall not possess **outdated** or unauthorized types or quantities of medication." Rule 113.14 (emphasis added).

7    Two other activities alleged by Plaintiff are also not protected speech, namely a letter written by Plaintiff's "family member ... [to] the inspector general on Jan[uary] 18[,] 2008 at 1.30 pm" (Compl.§ D); and a letter written by Plaintiff, at some point during Plaintiff's time in keeplock, to the Commissioner of the New York Department of Correctional Services ("Commissioner") (Dep. Tr. at 39:17–40:4; *see* Compl. § D). (Although Plaintiff provided the Court with copies of the Commissioner's responses to these letters (*see* Pl. Opp'n, Ex. A), the letters themselves do not seem to be included in the record.) Because the cell search, urinalysis, and Misbehavior Report, which led to Plaintiff's punishment, all took place in the morning hours of January 18, 2008—*i.e.,* **before** these letters were written or received—"[P]laintiff's claim that he was retaliated against for [these letters] must be dismissed." (Defs. Mem. at 7 (citing *Gill v. Pilypchak,* 389 F.3d 379, 380 (2d Cir.2004)); *see* Compl. § D; Lee Decl. Ex C.)

8    Plaintiff appears to allege three such instances: (i) during Plaintiff's verbal exchange with Griffin, Griffin stated, "I will have something done to you"; (ii) Mill asked Plaintiff if Plaintiff got a "ticket" (infraction), presumably in relation to the events of January 18, 2008; and (iii) Cestaro said to Plaintiff at the end of the Hearing, "[W]hile you['re] in [keeplock,] think about why you curse[d] at ... Griffin." (Compl.§ D.)

9    "Because the [C]ourt finds that Plaintiff has not engaged in protected speech and did not suffer any adverse ... action, the [C]ourt does not reach the issue of causation." *Reed v. Aiken Cnty.,* No. 09 Civ. 1744, 2010 **WL** 4238848, at *5 (D.S.C. Oct. 21, 2010); *see Davis,* 320 F.3d at 352.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 22299359
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Troy GARRETT, Plaintiff,

v.

Edward REYNOLDS, Superintendent,
Mohawk Corr. Facility; James A. Mance,
Deputy Superintendent of Programs; John

O'Reilly, [1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R.
Centore, Correctional Officer, Defendants.

No. Civ.9:99CV2065NAMGLS.
|
Oct. 7, 2003.

**Attorneys and Law Firms**

Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.

### I. *Introduction* [2]

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated
his civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him
to verbal harassment, physical abuse and subsequently,
a transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment
in part and granting it in part.

### II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his
civil rights under the First, Sixth Eighth, and Fourteenth
Amendments. [3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of
his obligation to file a response and extended his time
to respond for thirty days. On April 24, 2002, this
court granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

### III. *Facts* [4]

On June 17, 1999, Garrett filed a grievance against Officer
Kelley for verbal harassment. [5] This grievance was denied
by the Central Office Review Committee (CORC) on July
21, 1999. On March 19, 2000, Garrett filed a grievance
claiming that defendant Burge used intimidation tactics.
Defendant Reynolds investigated the grievance and it was
denied based on a finding that no harassment occurred.
Garrett appealed to the CORC and they denied the
grievance on April 5, 2000. On April 10, 2000, defendant
Centore wrote a misbehavior report against Garrett for
creating a disturbance and employee harassment. On
April 12, 2000, Lieutenant Manell presided over Garrett's
Tier 2 disciplinary hearing and he was found guilty of both
charges. He was given a 21 day recreation penalty, and
loss of packages and commissary. However, his recreation
penalty was suspended and deferred. Garrett appealed the
determination and it was affirmed on April 19, 2000.

On April 17, 2000, Garrett filed a grievance against
Centore for harassment. Burge denied his grievance on
May 4, 2000, and subsequently, the CORC denied it. On
May 12, 2000, Garrett sent a letter to Burge concerning
further harassment by Centore. On May 16, 2000, Garrett
filed another grievance against Centore for harassment.
His grievance was denied on May 26, 2000. After Garrett
appealed, his grievance was again denied by the CORC.
On June 22, 2000, the Superintendent's Office received a
letter from Garrett alleging that Centore threw a piece of
paper with a picture of a plunger and the words "always
gets the job done" into his cell. He wrote a grievance
against Centore for harassment due to the paper that
he threw into his cell. Burge forwarded the grievance to

the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [6] to the Mid-State Correctional Facility.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

### IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of

material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion. [7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

## B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacity. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 **WL** 156764, at *2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

## C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred. [8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under §

1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,* [9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp 2d 113, 129 (N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants

failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU. [10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred. [11]

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*
It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged deprivation of rights. *Al-Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal;

(3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS

REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22299359

## Footnotes

1   In this case, the defendants maintain and the docket confirms that defendant John O'Reilly has never been served. Service must be made upon a defendant within 120 days of filing the complaint or any claims against that defendant will be dismissed. See Fed.R.Civ.P. 4(m). The original complaint, which named O'Reilly, was filed on November 26, 1999, and the amended complaint was filed on July 13, 2001. However, O'Reilly was never served. Since this defendant has never been served, this court lacks jurisdiction over him, and this court recommends the dismissal of this defendant.

2   This matter was referred to the undersigned for a Report-Recommendation by the Hon. Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

3   Although Garrett claims to be raising violations under the Sixth, Eighth, and Fourteenth Amendments, the only viable claim based on this court's interpretation of the complaint is under the First Amendment for retaliation.

4   The facts are taken from the defendants' statement of undisputed material facts since Garrett failed to file a response.

5   Not a party in this suit.

6   The defendants suggest that Garrett has failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

7   The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

8   This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

9   Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

10   However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

11   The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

**End of Document**     © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 600213
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Phillip JEAN–LAURENT, Plaintiff,
v.
C.O. LANE; C.O. Briggs; C.O. Tyndall; John
Doe # 1; John Doe # 2; Sgt. Beard; Sgt. Pauline;
Lt. Jones; DSS McAuliffe; Dr. Mays; Dr.
John Doe; Jane Doe; Supt. Barkley; Supt.
Hulihan; Dep. Comm. Linquist, Defendants.

No. 9:11–CV–186 (NAM/TWD).
|
Jan. 24, 2013.

**Attorneys and Law Firms**

Phillip Jean–Laurent, Ozone Park, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Gregory J. Rodriguez, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

*REPORT AND RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

**\*1** This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, was initially referred
to Magistrate Judge George H. Lowe for Report
and Recommendation to the Honorable Norman A.
Mordue, United States District Judge, pursuant to 28
U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Upon
Magistrate Judge Lowe's retirement on February 9,
2012, the case was reassigned to me. Plaintiff Phillip
Jean–Laurent ("Jean–Laurent") has brought this action
against Defendants Correctional Officers Patrick Lane
("Lane"), Allen Briggs ("Briggs"), and Seth Tyndall
("Tyndall"); Correctional Sergeants Matthew Beard
("Beard") and David Pawlin ("Pawlin") (sued incorrectly
as "Sgt. Pauline"); Correctional Lieutenant Norman
Jones ("Jones"); Deputy Superintendent Security
Brian McAuliffe ("McAuliffe"); Superintendents Warren
Barkley ("Barkley") and William Hulihan ("Hulihan");

Appeal Review Officer Norman Bezio ("Bezio"); Deputy
Commissioner Christopher Lindquist ("Lindquist") (sued
incorrectly as "Dep. Comm. Linquist"); Dr. Charles
Moehs ("Moehs") (sued incorrectly as "Dr. Mays"); John
Does # 1 and # 2; Dr. John Doe; and Jane Doe. (Dkt.
Nos. 1, ¶¶ 9–16, and 6–17. [1] )

Defendants, with the exception of the four Doe
Defendants who have not yet been identified and served,
now move to dismiss Plaintiff's Complaint for failure
to state a claim under Federal Rule of Civil Procedure
12(b)(6). [2] (Dkt. No. 23.) For the reasons set forth
below, the Court recommends that Defendants' motion be
**GRANTED** in part and **DENIED** in part.

## I. BACKGROUND [3]

### A. Facts Concerning Plaintiff's Claims Arising Out of his Storage of Draft Bags and the Destruction of His Legal Documents

Plaintiff is a former prisoner of the New York State
Department of Correctional and Community Supervision
("DOCCS"). (Dkt. No. 1, ¶ 8.) In January of 2008,
Plaintiff was transferred from Elmira Correctional
Facility ("Elmira") to Cape Vincent Correctional Facility
("Cape Vincent"). *Id.* at ¶ 17. Eight draft bags containing
Plaintiff's personal property were sent from Elmira
to Cape Vincent at the time of the transfer. *Id.* Plaintiff's
personal belongings did not all fit into the storage lockers
provided for his use at Cape Vincent, so he stored personal
legal documents and materials and books in two draft bags
placed neatly under his bunk. *Id.* at ¶ 18.

Defendant Lane, who was the steady housing unit officer
at the time, advised Plaintiff that he could not store
belongings in draft bags and would have to purchase
storage containers from the commissary for his excess
belongings. *Id.* at ¶ 19. When Plaintiff informed Lane
that he had no funds to purchase the containers because
of his transfer and assured him that he would purchase
the containers when his funds arrived from Elmira, Lane
agreed to allow him to use the draft bags until he was able
to comply with the storage policy. *Id.* at ¶ 20. The funds
transferred from Elmira were collected by Cape Vincent,
so Lane allowed Plaintiff to use the draft bags for another
two weeks. *Id* . at ¶ 21. Lane agreed to continued use of
the bags when funds Plaintiff subsequently received from
home were also collected by Cape Vincent. *Id.*

**\*2** Lane subsequently learned that Plaintiff was litigating an action against correctional officers and issued Plaintiff a misbehavior report for possessing the two draft bags in his living quarters the same day. *Id.* at ¶ 22. Defendant Pawlin, who was the hearing officer on the claimed rule violations, directed Plaintiff to discard several hundred pages of legal materials and documents essential to pending litigations. *Id.*

After the hearing, Plaintiff learned of a state-wide policy directive that he believed permitted him to retain two draft bags to store personal belongings in his cell.[4] *Id.* at ¶ 23. When he informed Defendant Lane of the directive, Lane "outburst his disregards for the policy directive." *Id.* Plaintiff sought redress through the administrative grievance procedure. When Lane learned of Plaintiff's grievance, he contacted Defendant Beard, a Corrections Sergeant at Cape Vincent, and during phone conversations with Beard, Lane repeatedly referenced departmental directives, facility policy manuals, and the inmate's misbehavior handbook. *Id.* at ¶ 24. Lane directed Plaintiff to turn over the draft bags and moments later Defendants Beard and Lane, along with other corrections officers, manacled Plaintiff and took him to the Special Housing Unit ("SITU"). *Id.* Plaintiff's Complaint does not state the length of time during which he remained in the SITU.

Defendants Briggs and Tyndall subsequently packed Plaintiff's belongings, and while doing so, deliberately emptied a container of melted ice into a bag filled with legal documents, destroying several items and a significant portion of legal materials and documents essential to Plaintiff's appeal in an unidentified case pending in the Second Circuit Court of Appeals. *Id.* at ¶ 25. According to Plaintiff, the Second Circuit had granted him an enlargement of time to file a petition for a hearing or rehearing *en banc.* Because the documents were destroyed, Plaintiff was unable to file the petition within the enlargement period. *Id.*

Plaintiff thereafter had a disciplinary hearing on possession of the two draft bags and allegedly fabricated rule violations.[5] *Id.* at ¶ 26. Defendant Jones, the hearing officer, found Plaintiff not guilty of the fabricated rule violations. However, he found Plaintiff guilty of possessing the two draft bags, despite what Plaintiff believes to have been a clear departmental directive

evidencing that no rule violation had occurred. *Id.* Plaintiff was punitively sanctioned for the draft bag violation. *Id.*

**B. Plaintiff's Claims of Cruel and Inhuman Treatment and Deliberate Indifference to his Serious Medical Needs Against Defendants Pawlin, Moehs, McAuliffe, and Bezio**
Prior to Plaintiff's SHU confinement, he had been scheduled for oral surgery and medical treatment for chronic low back pain. *Id.* at ¶ 27. Plaintiff was not allowed to keep his appointments because he was punitively confined in the SHU and was left to endure "unbearable toothaches, extreme eating and hygienical discomfort, as well as excruciating lower back pain during and after his SHU confinement." *Id.* Once Plaintiff was released from SHU confinement, he was required to start anew the lengthy and time consuming procedure of scheduling dental and medical appointments. *Id.* According to Plaintiff, Defendants McAuliffe and Barkley were cognizant of the routine practice of denying prisoners confined in the SHU reasonable and adequate dental and medical care and/or knowingly implemented or allowed the practice. *Id.*

**\*3** When Plaintiff was released from the SITU, he was required to carry his belongings, including at least eight draft bags weighing eighty or more pounds, to an assigned housing unit over four-hundred yards away in snowy frigid weather and was not allowed to use an available pushcart or have another inmate assist him, despite informing Defendant John Doe # 1 of his medical condition and level of pain. *Id.* at ¶ 28. Plaintiff strained his lower back as a result and endured tremendous pain for at least two weeks. *Id.* According to Plaintiff, Defendant Pawlin thereafter subjected Plaintiff to a pattern of harassing inter-facility movements that required Plaintiff to move his belongings to different housing units. *Id.*

Plaintiff was punitively confined in the SITU in April of 2008 as a result of sanctions imposed by Defendant Jones.[6] *Id.* at ¶ 29. Plaintiff was not permitted to keep his rescheduled dental and medical appointments because of the confinement. *Id.* at ¶ 29. When he left the SITU after serving several weeks, Plaintiff was, for a second time, required to carry all of his personal belongings without assistance or a pushcart despite informing Defendant John Doe # 2 of his medical condition and pain. *Id.* Plaintiff hurt his back transporting his belongings. *Id.*

When he reported to sick call, Defendant Jane Doe told him that she was not going to do anything for him, and she would not give him a medical excuse from carrying the rest of his personal belongings to his housing unit. *Id.*

Approximately four months later, after filing a grievance and personally seeking redress from DOCCS' Chief Medical Officer, Plaintiff was examined by Dr. Rosner and finally had one of two troubling wisdom teeth extracted and received a few physical therapy sessions, *Id.* at ¶ 30. Upon completion of the initial therapy sessions, the therapist concluded that the course of treatment had been effective and that Plaintiff was in need of further therapy. *Id.* at ¶ 31. The therapist also recommended that Plaintiff be given a TENS unit for self-administered therapy. *Id.* However, at a follow-up appointment with Defendant Moehs, who had replaced Dr. Rosner as Plaintiff's health care provider, Moehs informed Plaintiff that he would not continue with the recommended course of treatment or provide the TENS unit and told Plaintiff to live with the pain. *Id.*

### C. Plaintiff's Claim that he was Denied a Fair and Impartial Hearing by Defendant McAuliffe

In preparation for an August 2008 disciplinary hearing, Plaintiff attempted to obtain documentary evidence he believed was relevant and necessary to his defense. *Id.* at ¶ 32. Plaintiff's request was denied by Defendant McAuliffe, who presided over the disciplinary hearing and allegedly made false representations to Plaintiff to induce him to enter into an involuntary and unintelligent plea agreement. *Id.* McAuliffe is alleged to have unfairly and unilaterally penalized Plaintiff for an altercation with another prisoner and sanctioned Plaintiff to punitive segregation for six months at Mid–State Correctional Facility ("Mid–State"), with a concomitant loss of privileges and recommended loss of good time, which extended Plaintiff's term of imprisonment to the maximum. *Id.* at ¶ 33. The other prisoner was not sanctioned at all. *Id.*

**\*4** Plaintiff appealed McAuliffe's determination to Defendant Bezio on the grounds that he had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced, and that he had been denied due process and equal protection of the law as supported by documentary evidence. *Id.* at ¶ 34. Defendant Bezio affirmed McAuliffe's determination. *Id.*

### D. Alleged Indifference to Plaintiff's Serious Medical and Dental Needs While in the SHU at Mid–State

During the period of his confinement in the SHU at Mid–State, Plaintiff continued to experience excruciating back pain and toothaches. *Id.* He requested and was denied treatment by Defendant Dr. John Doe based upon Moehs' medical entry, without any physical examination. *Id.* Plaintiff received dental care to the extent of having dental x-rays taken after grieving the matter to Defendant Hulihan. *Id.* However, his painful wisdom tooth was not extracted. *Id.* Despite making articulate, detailed complaints of being deprived necessary and adequate medical and dental care to Defendants Barkley, Hulihan, and Lindquist, Plaintiff's complaint was denied as unsubstantiated and no significant steps were taken to ensure that Plaintiff received necessary and adequate medical and dental care prior to his transfer from Mid–State to Downstate Correctional Facility. *Id.*

### II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 17, 2011. (Dkt. No. 1.) Plaintiff's application to proceed *in forma pauperis* was granted by Judge Mordue in a June 1, 2011 Decision and Order (Dkt. No. 2) in which the District Court dismissed Plaintiff's claim for destruction of property against Defendants Briggs and Tyndall, with prejudice, and his equal protection claim against Defendants McAuliffe and Bezio, without prejudice, under 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). *Id.* at pp. 6–8. Judge Mordue otherwise accepted the Plaintiff's complaint for filing, specifically noting that in doing so, the District Court was expressing no opinion as to whether Plaintiff's remaining claims could withstand a properly made motion to dismiss or for summary judgment. *Id.* at p. 9. The District Court also ordered Plaintiff to take reasonable steps to ascertain the identities of the "John Doe" and "Jane Doe" defendants and cautioned him that failure to serve the unnamed defendants in a timely manner may result in the action being dismissed against them. *Id.* at pp. 8–9.

## III. ANALYSIS

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

 **\*5**  A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). The motion tests the formal legal sufficiency of a complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678. (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s] devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal, 556 U.S. at 678.*

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally,

and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (considering factual allegations in plaintiff's opposition papers) (citations and internal quotations marks omitted), *vacated and amended in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). *See also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) ("Even where a document is not incorporated by reference [in the complaint], the court may nevertheless consider it [on a Rule 12(b)(6) motion without converting the motion to one for summary judgment] where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)). [7]

 **\*6**  Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

### B. Plaintiff's Official Capacity Claims For Money Damages Against the Defendants

Defendants have moved for dismissal of Plaintiff's official capacity claims for money damages under 42 U.S.C. ¶ 1983. (Dkt. No. 1 at ¶¶ 9–10, 12–16.; Dkt. No. 23–1 at pp. 19–20.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006)) and bars

all money damages claims against state officials acting in their official capacities, including the moving Defendants herein. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (an inmate plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity.) Therefore, I recommend that the Plaintiff's § 1983 claims brought against the moving Defendants in their official capacities be dismissed without leave to amend.

### C. Claim Against Defendants Briggs and Tyndall for Denial of Access to Court on a Matter Before the Second Circuit Court of Appeals

Plaintiff claims that documents essential to an appeal he had pending in the Second Circuit Court of Appeals were destroyed when Defendants Briggs and Tyndall deliberately emptied a container of melted ice into Plaintiff's bag. As a result, Plaintiff was unable to file a petition for a hearing or rehearing *en banc* in the case before the filing deadline. (Dkt. No. 1 at ¶ 25.) Plaintiff has not identified the action, nor has he described the nature of the action or the appeal on which he was seeking an *en banc* hearing or rehearing.

The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment of the Constitution. *See Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."). In order to state a claim for denial of access to court under § 1983, Plaintiff must assert non-conclusory allegations demonstrating that Defendants Briggs and Tyndall's alleged conduct in destroying his legal documents was deliberate and malicious. *See Lewis,* 518 U.S. at 349, 351; *Gonzales v. Carpenter* No. 9:08–CV–629 (LEK/ATB), 2011 **WL** 768990, at *7, 2011 U.S. Dist. LEXIS 18806, at *26 (N.D.N.Y. Jan.3, 2011) (Baxter, M.J.). Plaintiff's Complaint, liberally construed, satisfies that requirement.

*7 However, Plaintiff must also assert non-conclusory allegations showing that the interference with his right of access to court resulted in actual injury. *Lewis,* 518 U.S. at 348–349. To do that, Plaintiff must describe the underlying claim allegedly frustrated by the interference well enough to establish that it is "nonfrivolous" and "arguable" in nature. *Christopher v. Harbury,* 536 U.S. 403, 415–16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (underlying cause of action "is an element that must be described in the complaint."); *Arar v. Ashcroft,* 532 F.3d 157, 188–89 (2d Cir.2008), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 3409, 177 L.Ed.2d 349 (2010) (following *Christopher* in requiring that the complaint include a description of the "nonfrivolous," "arguable" claim that the plaintiff has lost). Plaintiff must set forth sufficient facts to suggest that success on the underlying claim is found on "more than hope." *Christopher,* 536 U.S. at 416.

Plaintiff has provided no information whatsoever concerning the matter in the Second Circuit and has thus failed to state a claim for denial of his First Amendment right of access to court against Defendants Briggs and Tyndall. [8] For that reason, I recommend that Plaintiff's claim for denial of access to court against Defendants Briggs and Tyndall be dismissed. Inasmuch as it is possible that Plaintiff may be able to remedy the defect in his Complaint by including specific information regarding his underlying claim, I also recommend that he be granted leave to amend.

### D. Retaliation Claims Against Defendants Lane, Pawlin, Beard, Briggs, Tyndall, and Moehs

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak,* 389 F.3d at 381–83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the

pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkewicz,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1.

**\*8** To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff —namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pidlypchak,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon,* 58 F.3d at 872–73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord,* 558 F.3d 119, 129

(2d Cir.2009) (citing *Gorman–Bakos v. Cornell Co-op. Extension,* 252 F.3d 545, 555 (2d Cir.2001)).

1. *Retaliation Claim Against Defendant Lane*
According to Plaintiff, Defendant Lane, who had been allowing him to keep two draft bags of personal items under his bunk, issued a misbehavior report against Plaintiff for possessing the two bags right after learning that Plaintiff was litigating a civil action against correctional officers. (Dkt. No. 1 at ¶¶ 20–22.) When Lane learned later that Plaintiff had filed a grievance in reliance upon a state-wide directive Plaintiff believed allowed him to possess two draft bags for temporary storage of his personal belongings[9], Lane ordered Plaintiff to turn over the draft bags and had him manacled and taken to SITU. *Id.* at ¶¶ 23–24.

Plaintiff claims that he was charged with a violation for possessing the two draft bags and other fabricated rule violations. (Dkt. No. 1 at ¶ 26.) The Court has inferred that Lane was involved in Plaintiff being charged with allegedly fabricated rule violations for which he was found not guilty following a disciplinary hearing. Plaintiff was found guilty of possessing the two draft bags and punitively sanctioned. *Id.*

The filing of lawsuits and administrative grievances is constitutionally protected activity for retaliation purposes. *See Colon,* 58 F.3d at 872 ("Prisoners ... have a constitutional right of access to the courts and to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercise of that right."); *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003) (the right of prisoners to file administrative grievances is a constitutionally protected activity for retaliation purposes). Plaintiff's retaliation claim against Lane can be construed to include retaliation for his lawsuit and the grievance he filed, both constitutionally protected activity. Therefore, the Complaint satisfies the first prong of a retaliation claim for pleading purposes.

**\*9** Liberally construing Plaintiff's Complaint, it appears that Plaintiff has set forth a facially plausible claim of adverse action satisfying the second prong. Plaintiff contends that the "motivating factor" behind Lane's initial rule violation charge against him with regard to the draft bags was finding out about Plaintiff's lawsuit. (Dkt. No. 27 at p. 4.) The filing of the charge led to Plaintiff

being ordered to discard documents and legal materials by hearing officer Pawlin. *Id.* Destruction of a prisoner's legal papers and personal property has been found substantial enough to qualify as an adverse action for retaliation purposes. *See Smith v. City of New York,* No. 03 Civ. 7576(NRB), 2005 WL 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at *10 (S.D.N.Y. May 3, 2005) (Buchwald, J.) Because Plaintiff did have the two draft bags under his bunk, Lane's initial rule violation charge was arguably not a false misbehavior report. However, since Plaintiff claims that the bags were under the bunk with Lane's consent at the time he charged Plaintiff with the rule violation, the violation charge can be viewed as an adverse action for pleading purposes.

Placing Plaintiff in the SHU and filing false misbehavior claims against him after learning that he had filed a grievance based upon the directive also constitute adverse action sufficient to satisfy the second prong of a retaliation claim. *See Hamilton v. Fisher,* No. 9:10–CV1066(MAD/RFT), 2012 WL 987374, at *14, 2012 U.S. Dist. LEXIS 39116, at *41 (N.D.N.Y. Feb.29, 2012) (Treece, M.J.) (alleged transfer to SHU in retaliation for complaints could be considered adverse action); *Smith v. Hash,* No. 904–CV–0074 LEK/DRH, 2006 WL 2806464, at *6, 2006 U.S. Dist. LEXIS 70362 (N.D.N.Y. Sept.28, 2006) (Kahn D.J., Homer, M.J.) (same); *Kotler v. Daby,* No. 10–CV–136 (TJM/DRH), 2011 WL 915312, *5, 2011 U.S. Dist. LEXIS 26173, at *14 (N.D.N.Y. Feb.10, 2011) (Homer, M.J.) (both filing false misbehavior report and sending plaintiff to SHU for filing grievances and lawsuits constitute adverse actions); *Mateo v. Fischer,* 682 F.Supp.2d 423, 433 (S.D.N.Y.2010) (filing false misbehavior report against plaintiff constituted an adverse action for purposes of retaliation claim).

Plaintiff's Complaint also satisfies the third prong of the retaliation analysis—a causal connection between Plaintiff's lawsuit and grievance and the adverse actions by Lane. Although Lane was not himself the subject of Plaintiff's lawsuit, the temporal proximity between Lane's learning of the lawsuit against other correctional officers and charging Plaintiff with a rule violation makes a facially plausible showing of causation. Further, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in SITU and having an allegedly false misbehavior report filed against him supports causation for purposes of this motion. *See Baskerville,* 224 F.Supp.2d at 732. In addition, Plaintiff

was found not guilty with respect to the allegedly false misbehavior reports. *Id.*

**\*10** For the foregoing reasons, I recommend that Defendant Lane's motion to dismiss Plaintiff's retaliation claim against him be denied.

### 2. *Retaliation Claim Against Defendant Pawlin*

Plaintiff has also asserted a retaliation claim against Defendant Pawlin, the hearing officer who directed him to discard documents and legal materials. (Dkt. No. 27, at p. 4.) Plaintiff's Complaint does not adequately state a claim for retaliation against Defendant Pawlin. Plaintiff has not alleged that Pawlin was aware of the lawsuit Plaintiff had filed against correctional officers, nor is there any allegation that Pawlin was a defendant in that lawsuit. As a result, Plaintiff has failed to allege plausibly that the lawsuit was causally connected to Pawlin's allegedly adverse action. *See Wilson v. Kelly,* No. 9:11–cv–00030 (MAD/RFT), 2012 WL 3704996, at *9, 2012 U.S. Dist. LEXIS 121293, at *24 (Aug. 31, 2012) (D'Agostino, D.J., Treece, M.J.) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity). Therefore, I recommend that Plaintiff's retaliation claim against Defendant Pawlin be dismissed with leave to amend.

### 3. *Retaliation Claim Against Defendant Beard*

The Complaint does not allege that Defendant Beard was aware of the lawsuit that Plaintiff had filed against correctional officers. However, Plaintiff has alleged that when Defendant Lane learned that Plaintiff had filed a grievance with regard to storage of the draft bags in his cell, he began phoning Defendant Beard "and reporting to him the situation." (Dkt. No. 1 at ¶ 23.) The Court can reasonably infer from that allegation that Beard was aware that the grievance had been filed when he subsequently joined Lane in escorting the manacled Plaintiff out of his housing unit and taking him to SHU. *Id.* at ¶ 24. Placing Plaintiff in SHU constitutes an adverse action for purposes of the retaliation analysis. *See Hamilton,* 2012 WL 987374, at *14, 2012 U.S. Dist. LEXIS 39116, at *14 (putting Plaintiff in SHU for filing a grievance constitutes an adverse action). Furthermore, the temporal proximity between Plaintiff's grievance concerning the bags and his being placed in

SHU supports causation for purposes of this motion. *See Baskerville,* 224 F.Supp.2d at 732. Therefore, I recommend that Defendant Beard's motion to dismiss the Plaintiff's retaliation claim against him be denied.

### 4. *Retaliation Claim Against Defendants Briggs and Tyndall*

Destruction of Plaintiff's legal material and documents for his Second Circuit appeal constitutes an adverse action for purposes of the retaliation analysis. *See Smith v. City of New York,* 2005 **WL** 1026551, *3, 2005 U.S. Dist. LEXIS 7903, at *10 (destruction of prisoner's legal papers and personal property qualifies as an adverse action for retaliation purposes). However, Plaintiff has not alleged that either Briggs or Tyndall was involved in or even aware of Plaintiff's lawsuit or grievance at the time they are alleged to have emptied a container of melted ice into a bag filled with legal documents. Therefore, the Complaint does not make a facially plausible showing of causation against Briggs and Tyndall, and for that reason I recommend that Plaintiff's retaliation claim against those defendants be dismissed. Because Plaintiff may be able to correct the deficiency in an amended complaint, I recommend that he be granted leave to amend.

### 5. *Retaliation Claim Against Defendant Moehs*

**\*11** The only factual allegations in Plaintiff's Complaint regarding Defendant Moehs are that he replaced Dr. Rosner as Plaintiff's health care provider, informed Plaintiff that he would not continue with the recommended course of treatment necessary to improve Plaintiff's medical condition or provide him with the recommended TENS unit, and told Plaintiff to live with the pain. (Dkt. No. 1 at ¶ 31.) In his opposition to Defendants' motion to dismiss, Plaintiff has asked the Court to infer that Defendant Moehs substituted himself for Dr. Rosner in order to disapprove the recommended course of treatment because Plaintiff had complained to the Chief Medical Officer about not receiving adequate medical care. (Dkt. No. 27 at p. 5.)

The Court finds that the allegations in Plaintiff's Complaint do not permit the inference Plaintiff has asked it to make. *See Friedl v. City of New York,* 210 F.3d 79, 86 (2d Cir.2000) (retaliation claim must be "supported by specific and detailed factual allegations" and "not stated in wholly conclusory terms.") (citation and internal quotation marks omitted).

Plaintiff has failed to allege that Moehs had any knowledge of his complaint to the Chief Medical Officer when he denied Plaintiff the treatment recommended by the therapist, thus failing to satisfy the causal relationship prong of the retaliation analysis. *See Wilson,* 2012 **WL** 3704996, at *9, 2012 U.S. Dist. LEXIS 12193, at *24. Plaintiff filed the grievance and made complaints to the Chief Medical Officer prior to his examination by Dr. Rosner and to the initial therapy sessions. *See Id.* at ¶¶ 30–31. There are no allegations in the Complaint suggesting that Moehs was the subject of the grievance or complaints or that he would otherwise have any reason to retaliate against Plaintiff by denying him necessary medical care.

In light of Plaintiff's failure to make a facially plausible showing of causal connection, I recommend that his retaliation claim against Defendant Moehs be dismissed. However, because Plaintiff's grievance and complaints to the Chief Medical Officer constitute constitutionally protected activity, and the denial of necessary medical treatment in retaliation for the filing of a grievance or making a complaint is sufficient to satisfy the adverse action requirement of the retaliation claim analysis, I recommend that Plaintiff be granted leave to amend should he be able to plead specific facts supporting causation. [10]

### E. Claims of Cruel and Inhuman Treatment and/or Medical Indifference Against Defendants Pawlin, Moehs, McAuliffe, Barkley, Hulihan, and Lindquist

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted).

**\*12** A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement. Under the objective requirement, "the deprivation alleged must be objectively sufficiently serious [;] ... a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834 (citations and internal quotation marks omitted). Under the subjective requirement, a plaintiff must demonstrate that a prison official acted with deliberate indifference to an inmate's health or safety. *Id.* In *Farmer,* the Supreme court found it "fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding the risk." *Id.* at 837.

In fulfilling their duty to "provide humane conditions of confinement," prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care. "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). There is no bright-line test to measure the seriousness of a prisoner's medical condition. *Stevens v. Goord,* 535 F.Supp.2d 373, 383 (S.D.N.Y.2008). However, the Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case." *Smith,* 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702–03. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *See Farmer,* 511 U.S. at 825; *Ross v. Giambruno,* 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105–6.

**\*13** Prison officials can deprive inmates of medical treatment by unnecessarily delaying adequate medical treatment. *Smith,* 316 F.3d at 185. Where a plaintiff's claim is one of a temporary delay in the provision of otherwise adequate treatment, "it is appropriate to focus on the challenged delay ... in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Id.*

### 1. Claim of Cruel and Inhuman Treatment By Defendant Pawlin

Plaintiff has alleged that he suffered from lower back strain after being required to carry his personal belongings from SHU to his assigned housing unit. (Dkt. No. 1 at ¶ 28.) According to Plaintiff, Defendant Pawlin thereafter subjected him "to a pattern of harassing inter-facility movements ... which required him to move his belongings to different housing units." (Dkt. No. 1 at ¶ 28.) "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Even if requiring Plaintiff to move his personal belongings to different housing units when he was suffering from lower back strain could pass as an "unnecessary and wanton infliction of pain ... incompatible with the evolving standards of decency that mark the progress of a maturing society," *Estelle,* 429 U.S. at 102, Plaintiff has not alleged facts showing that Pawlin was aware of Plaintiff's back strain at the time he directed the moves, that Plaintiff complained to Pawlin about any impact the moves had on his back, or that Plaintiff suffered any further harm to his back as a result of the moves to different housing units. Therefore, Plaintiff has failed to plead a facially plausible claim of deliberate indifference to Plaintiff's health or safety, and the Court recommends that Plaintiff's Eighth Amendment claim against Defendant Pawlin for cruel and inhuman treatment be dismissed, and that Plaintiff be given leave to amend.

### 2. *Claim of Medical Indifference Against Defendant Moehs*

Plaintiff claims that the physical therapist who had worked with him had recommended that Plaintiff be given additional physical therapy sessions and a TENS unit for his lower back pain, and that Defendant Moehs refused to authorize both when he took over as Plaintiff's physician. (Dkt. No. 1 at ¶ 31.) An inmate's "mere disagreement over the proper treatment does not create a constitutional claim ... [s]o long as the treatment given is adequate." *Chance,* 143 F.3d at 703. Construing Plaintiff's complaint liberally, as is required in light of his *pro se* status, and accepting the allegations as true, Plaintiff claims that Moehs not only rejected the treatment recommended by the therapist, but that he declined to provide any treatment at all to address Plaintiff's excruciating back pain, telling him instead to learn to live with the pain. (Dkt. No. 1 at ¶ 31.)

**\*14** Plaintiff has described himself as having "excruciating lower back pain" over an extended period of time. (Dkt. No. 1 at ¶¶ 27, 35–36.) Severe back pain, especially if it lasts for an extended period of time, as Plaintiff claims, can constitute a "serious medical need" under the Eighth Amendment, there by satisfying the first element of a medical indifference claim.[11] *See Guarneri v. Hazzard,* No. 9:06–CV–0985, 2008 **WL** 552872, at *6,

2008 U.S. Dist. LEXIS 14809 (Feb. 27, 2008) (Mordue, C.J., Homer, M.J.) (citing *Nelson v. Rodas,* No. 01 Civ. 7887(RCC)(AJP), 2002 **WL** 31075804, at *14, 2002 U.S. Dist. LEXIS 17359, at *50 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (collecting cases)). Given Plaintiff's alleged level of back pain and the length of time over which it lasted, Moehs' refusal to allow him to follow through with the recommended therapy and allow Plaintiff a TENS unit, compounded by his alleged failure to prescribe any treatment whatsoever to address Plaintiff's back condition and pain, constitutes a facially sufficient claim of deliberate indifference for purposes of Plaintiff's 12(b)(6) motion.[12] Therefore, the Court recommends that Defendant Moehs' motion to dismiss Plaintiff's Eighth Amendment medical indifference claim against him be denied.

### 3. *Claim of Medical Indifference Against Defendants McAuliffe and Bezio Regarding Medical and Dental Care to Inmates in SHU*

Plaintiff has alleged that on two separate occasions when he in SHU he was not allowed to attend scheduled dental and medical appointments because of a routine practice denying inmates in SHU reasonable adequate dental and medical care. (Dkt. No. 1 at ¶¶ 27 and 29.) The basis for Plaintiff's Eighth Amendment medical indifference claim against Defendants McAuliffe and Bezio is that they "were cognizant of this routine practice, and/or have knowingly implemented or allowed the implementation of the practice of denying prisoners confined in the SHU reasonable adequate dental and medical care." *Id.* at ¶ 27. The dental appointment Plaintiff missed was for "troubling wisdom teeth," which were painful and one of which was ultimately extracted after Plaintiff filed a grievance. *Id.* at ¶ 30. The medical appointment was for Plaintiff's chronic lower back problem that left him with excruciating pain. *Id.* at ¶ 27.

In a § 1983 action against a defendant in his or her individual capacity, the plaintiff must establish that the defendant, acting under color of state law, caused the plaintiff to be deprived of a federal right. *Kentucky v. Graham,* 473 U.S. at 166. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). The United States Supreme Court has made it clear

that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) ("*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions; holding a position in a hierarchical chain of command is insufficient by itself to support personal involvement").

**\*15** However, the Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where the supervisor has: "(1) participated directly in the alleged constitutional violation, (2) failed to remedy a violation after learning of it through a report or appeal,[13] (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in managing subordinates who committed constitutional violations, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[14]

Under *Colon,* if McAuliffe and Bezio, acting in a supervisory capacity, either created a policy resulting in violation of an inmate's Eighth Amendment rights, or allowed the continuation of such a policy, they could be subject to liability under 42 U.S.C. § 1983. In this case, however, under even the most liberal reading of Plaintiff's Complaint, he has not alleged any facts to support such a claim. The Complaint is devoid of any factual enhancement of his conclusory assertion that McAuliffe and Bezio were aware of the allegedly routine practice, were involved in implementing it, or that they had authority to stop the practice of denying SHU prisoners "reasonable adequate dental and medical care" and allowed it to continue. *Id.* at ¶ 30. *See Iqbal,* 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement [do] not suffice" to state a claim) (internal quotation marks omitted). Therefore, the Court recommends that Defendants McAuliffe and Bezio's motion to dismiss Plaintiff's Eight Amendment medical indifference claim against them be granted with leave granted Plaintiff to amend.

### 4. *Claim of Indifference to Serious Medical Needs Against Defendants Barkley, Hulihan, and Lindquist*

Plaintiff identifies Defendants Barkley and Hulihan as superintendents of correctional facilities and Defendant Lindquist as a grievance appeal officer. (Dkt. No. 1 at ¶¶ 14 and 16.) Plaintiff has alleged that while he was in SHU at Mid–State, he continued to experience excruciating back pains and a painful wisdom tooth and requested and was denied treatment by Defendant Dr. John Doe based upon Defendant Moehs' medical notation entry. *Id.* at ¶ 35. According to Plaintiff, the only dental or medical care he received while in SHU at Mid–State was dental x-rays. *Id.* Plaintiff has alleged in conclusory fashion that he made detailed and articulate complaints to Defendants Barkley, Hulihan, and Lindquist about being deprived of necessary and adequate medical and dental care at Mid–State, that the complaints were denied as unsubstantiated, and that no significant steps were taken to ensure that care was given during the time period he was at Mid–State prior to his transfer to Downstate. (Dkt. No. 1 at ¶ 36.)

**\*16** Supervisory personnel may be held liable under § 1983 for "fail[ure] to remedy a violation after learning of it through a report or appeal." *Colon,* 58 F.3d at 873. However, mere receipt of a report or complaint or request for an investigation by a prison official is insufficient to hold the official liable for the alleged constitutional violations. *See, e.g., Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (claim that official ignored prisoner's letter of protest not enough to hold official liable); *Walker v. Pataro,* No. 99 Civ. 4607(GBD) (AJP), 2002 **WL** 664040, at \*12, 2002 U.S. Dist. LEXIS 7067, at \*43 (S.D.N.Y. Apr. 23, 2002) (Peck, M.J.) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to black-letter law that 1983 does not impose *respondeat superior* liability.").

"On the other hand, where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second *Colon* prong: the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." *Walker,* 2002 **WL** 664040, at \*13, 2002 U.S. Dist. LEXIS 7067, at \*44 (citations and internal quotation marks omitted) (in denying superintendent's motion for summary judgment the court noted that responses to

grievances or other inmate complaints "which attempt to defend or explain alleged constitutional violations have been found sufficient to sustain a plaintiff's claim of personal involvement."); *see also Johnson,* 234 F.Supp.2d at 363 ("personal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint.").

Allegations of awareness on the part of a correctional facility superintendent of an ongoing failure by prison officials to provide a plaintiff with medical treatment for injuries, coupled with failure to remedy the wrong after learning of it through a grievance procedure have been found to be sufficient to survive a Rule 12(b) (6) motion. *See Cicio v. Graham,* No. 9:08–CV–534, 2009 **WL** 537534, at *7, 2009 U.S. Dist. LEXIS 16675 (N.D.N.Y. Mar.3, 2009) (Mordue, C.J.) (Peebles, M.J.). However, the naked assertion in Plaintiff's Complaint that he complained to Defendants Barkley, Hulihan, and Lindquist that he was being deprived of reasonable and adequate dental care, and that his complaints were found unsubstantiated is simply too lacking in factual detail to show that Plaintiff is entitled to relief. *See Iqbal,* 556 U.S. at 678 (Rule 8(a)(2) "demands more than an unadorned, the defendant-harmed-me accusation.") Plaintiff's Complaint contains absolutely no factual enhancement regarding the manner in which complaints were conveyed to each of the defendants, the content of the complaints, the timing of the complaints, or the responses of each of those Defendants to those complaints. Therefore, I recommend that Defendants Barkley, Hulihan, and Lindquist's motion to dismiss Plaintiff's Eighth Amendment medical indifference claim against them be granted and that Plaintiff be granted leave to amend.

## G. Claims for Denial of Due Process Against Defendants Lane, Beard, Jones, McAuliffe, and Bezio

**\*17** To make out a Section 1983 claim for denial of Fourteenth Amendment due process rights, a plaintiff must demonstrate: "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001) (internal quotation marks omitted). As to the first prong, an inmate can show deprivation of a liberty interest under the due process clause when a prison condition imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison

life." *Sandlin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As to the second prong, the minimal due process requirements include: "(a) written notice of the claimed violations ...; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body ...; and (f) a written statement by the fact finders as to the evidence relied on ...." *Wolff v. McDonald,* 418 U.S. 539, 559, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

### 1. *Due Process Claim Arising Out of Misbehavior Reports Involving Plaintiff's Draft Bags*

Plaintiff has asserted a claim for denial of his due process rights under the Fourteenth Amendment against Defendants Lane, Beard, McAuliffe [15] and Jones arising out of the institution, execution, and enforcement of a disciplinary proceeding against him based upon fabricated allegations and in violation of the state-wide directive allowing inmates to store two draft bags of personal possessions in their cells on a temporary basis. (Dkt. No. 1 at ¶¶ 47–48.) Construing Plaintiff's Complaint liberally, Defendants Lane and Beard are accused of filing fabricated charges and a draft bag possession charge against him. Defendant Jones was the hearing officer on the charges and ruled in favor of Plaintiff on the allegedly fabricated charges but found him guilty on the draft bags possession charge in violation of the state-wide directive. *Id.* at ¶ 28.

The Court's initial inquiry is whether Plaintiff has pleaded facts supporting a facially plausible claim that a liberty interest was infringed by the false charges and hearing determination since Plaintiff had no right to due process unless a liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). In his Complaint, Plaintiff has alleged he was punitively confined to SITU by Jones. [16] (Dkt. No. 1 at ¶ 29.) Plaintiff claims that he was in SITU for a few weeks. *Id.* While he was unable to attend dental and medical appointments while he was in SITU, Plaintiff has described it as a routine practice rather than an atypical occurrence. *Id.* at ¶ 27. *See Palmer,* 364 F.3d at 64 (both duration and conditions are considered in determining whether SHU confinement rises to the level of "atypical and severe hardship"). The alleged violation

of the state-wide DOCCS storage directive by Defendants Lane, Beard, and Jones help Plaintiff because failure to follow a DOCCS directive does not give rise to a Section 1983 claim. *See Cabassa v. Gummerson,* No. 9:01–CV–1039, 2008 WL 4416411, *6, n. 24, 2008 U.S. Dist. LEXIS 72975, at *6, n. 24 (N.D.N.Y. Sept.24, 2008) (Hurd, D.J.) (violation of a DOCCS directive does not give plaintiff a claim under 42 U.S.C. ¶ 1983).

**\*18** Because the Plaintiff has failed to allege a liberty interest, it is not necessary to reach the issue of whether he was provided sufficient process in the hearing on the allegedly fabricated charges. [17] Therefore, the Court recommends that Defendants Lane, Beard, and Jones' motion to dismiss Plaintiff's Fourteenth Amendment due process claim be granted with leave to Plaintiff to amend.

### 2. Due Process Claim Against McAuliffe and Bezio Arising Out of Plaintiff's Alleged Denial of a Fair and Impartial Hearing

Plaintiff has also asserted a due process claim against Defendants McAuliffe and Bezio in connection with his disciplinary hearing in front of McAuliffe. Plaintiff's due process claim against McAuliffe arises out of his denial of Plaintiff's request for access to documentary evidence needed to defend himself in a disciplinary hearing, his deliberate and purposeful misrepresentation to Plaintiff, and his denial of a fair and impartial disciplinary hearing. His claim against Bezio arises out of Bezio's affirmance of McAuliffe's determination of guilt. (Dkt. No. 1 *at* ¶ 49.) Plaintiff was placed in SHU for six months, with a concomitant loss of all privileges and good time credit, which extended his sentence to the maximum, as a result of the guilty finding. *Id.* at ¶ 33.

The Supreme Court ruled in *Sandlin* that the Constitution did not require that restrictive confinement be preceded by a hearing providing procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. The Second Circuit considers the duration of SHU confinement as well as the severity of the conditions. *See Palmer,* 364 F.3d at 65. Although no bright-line rule establishes a period of SHU confinement beyond which a due process right is implicated, *id.* at 64, the Second Circuit has held that a 101 day confinement does not alone meet the *Sandlin* standard of atypicality. *Ortiz v. McBride,* 380

F.3d 649, 654 (2d Cir.2004), *cert. denied,* 543 U.S. 1187, 125 S.Ct. 1398, 161 L.Ed.2d 190 (2005) (citing *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999)). A liberty interest has, on the other hand, been found to be infringed by a confinement of 305 days. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000).

SHU confinement of less than 101 days can constitute atypical and significant hardships if the conditions were more severe than normal SHU conditions or "a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65 (citing *Ortiz,* 323 F.3d at 195 & n. 1 and *Colon,* 215 F.3d at 232 & n. 1) In *Palmer,* the Second Circuit explained "[w]here the plaintiff was confined [in SHU] for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required [to determine whether a prisoner's liberty interest has been infringed]." 364 F.3d at 64–65.

**\*19** Plaintiff's allegations of a 180 day confinement in SITU with no medical care for an excruciatingly painful back and painful wisdom tooth is sufficient to satisfy the atypical conditions requirement for a liberty interest for pleading purposes. Plaintiff has also asserted facts adequate to satisfy the pleading requirements for a denial of due process in his disciplinary hearing. "Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real,* 471 U.S. 491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Plaintiff has alleged that McAuliffe twice denied his request for documents relevant to his defense.

Prisoners also have a constitutional right to a fair and impartial hearing officer. *See, e.g., Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). Plaintiff claims that McAuliffe made false representations to him to induce him to enter into an involuntary plea. While Plaintiff's due process claim against McAuliffe may not survive a motion for summary judgment, the allegations in the Complaint are adequate to assert a facially plausible claim of denial of due process.

Plaintiff has also alleged facts adequate to state a claim against Defendant Bezio for denial of due process in affirming the hearing determination. According to

Plaintiff, in his appeal, he informed Bezio that he had been denied a fair and impartial hearing, that his guilty plea was unconstitutionally induced, and that he was denied due process and equal protection. (Dkt. No. 1 at ¶ 34.) It appears from the Complaint that Bezio affirmed the hearing determination while Plaintiff was still in SHU, and that as a result of the affirmance, Plaintiff ended up serving the full 180 day SITU confinement and the maximum of his original sentence. *Id.* Personal involvement of a supervisory official may be shown by evidence that after learning of the violation of a prisoner's rights through an appeal, he failed to remedy the wrong. *Colon,* 58 F.3d at 873.

The consequences of McAuliffe's alleged violation of Plaintiff's due process rights—Plaintiff's confinement in SHU and loss of good time—were ongoing at the time Bezio affirmed the hearing determination. *Id.* at 34. Bezio therefore had the opportunity to remedy the violation at least to some degree and failed to do so, thereby leaving him potentially subject to personal liability. *See Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (finding personal involvement where superintendent denied appeal from hearing that allegedly violated plaintiff's rights); *Delgado v. Bezio,* No. 09 Civ. 6899(LTS), 2011 WL 1842294, at *8, 2011 U.S. Dist. LEXIS 51917, at *25–26 (S.D.N.Y. May 9, 2011) (Swain, D.J .) (denying motion to dismiss claim against official who heard appeal from disciplinary hearing); *Johnson v. Coombe,* 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (denying appeal officer's motion to dismiss because prisoner alleged he had been denied the opportunity to call a witness at disciplinary hearing); *Moore v. Scully,* No. 90 Civ 3817(MEL), 1993 WL 22129, at *3, 1993 U.S. Dist. LEXIS 841, at *10–11 (S.D.N.Y. Jan. 26, 1993) Laker, D.J.) (denying summary judgment where superintendent denied affirmed disciplinary hearing result where plaintiff alleged that hearing denied due process).

**\*20** Based upon the foregoing, the Court recommends that Defendant Bezio's motion to dismiss Plaintiff's Fourteenth Amendment due process claim be denied.

### H. Plaintiff's Pendent State Claims

Plaintiff has asserted three distinct claims for relief under New York State law against Defendants for acts or omissions within the scope of their employment. (Dkt. No. 1 at ¶¶ 51–55.) They are: (1) *respondeat superior* claims against Defendants Lindquist, Barkley, and Hulihan for

negligence in performing their administrative duty to supervise their subordinates' work performance as it related to Plaintiff's care and treatment, *Id.* at ¶ 51; (2) claims against Defendants Lane, Beard, Jones, McAuliffe, and Bezio for wrongful confinement and deprivation of Plaintiff's liberty interest by denying him the right to offer relevant documentary evidence for the preparation and presentation of his defense in a disciplinary proceeding in violation of New York State Rules and Regulations and DOCCS policy directives, *Id.* at ¶¶ 52–53; and (3) negligence and malfeasance in providing Plaintiff medical and dental care. Defendants argue that Plaintiff's state law claims should be dismissed pursuant to New York Correction Law § 24. (Dkt. No. 23–1 at pp. 20–22.) Defendants are correct. Section 24 provides as follows:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

This statute precludes inmates from suing DOCCS employees in their personal capacity in New York State courts. *See Arteaga v. State,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 62, 527 N.E.2d 1194 (1988). The statutory bar is intended to permit correction officers to perform the task of maintaining safety and security in correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function." *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997). The bar also applies to pendent state law claims in federal court because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* at 15.

**\*21** In 2009, the United States Supreme Court held Correction Law § 24 unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown,* 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Correction Law § 24. *See O'Diah v. Fischer,* No. 08–CV–941 (TJM/DRH), 2012 WL 987726, at *21, 2012 U.S. Dist. LEXIS 39232, at *60 (N.D.N.Y. Feb.28, 2012) (Homer, M.J.); *Joy v. New York,* No. 5:09–CV–841 (FJS/ATB), 2010 WL 3909694, at *4–5, 2010 U.S. Dist. LEXIS 104641, at *15–16 (N.D.N.Y. Sept.30, 2010) (Scullin, S.D.J.); *Gillard v. Rovelli,* No. 9:09–CV–0860 (NAM/GHL), 2010 WL 4905240, at *16, 2010 U.S. Dist. LEXIS 124737, at *47–48 (N.D.N.Y. Sept.29, 2010) (Lowe, M.J.); *Crump v. Ekpe,* No. 9:07–CV–1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *61 (N.D.N.Y. Feb.8, 2010) (Kahn, D.J., Peebles, M.J.). For the reasons set forth in those decisions, I recommend that Defendants' motion to dismiss Plaintiff's pendent state law claims in this case be granted, without leave to amend.

**ACCORDINGLY,** it is hereby

**RECOMMENDED,** that Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 23) be ***GRANTED IN PART AND DENIED IN PART.*** Specifically, the Court recommends that Defendants' motion be ***GRANTED*** as follows:

1. Dismissal on Eleventh Amendment grounds of all claims seeking money damages against the moving Defendants in their official capacities, without leave to amend;

2. Dismissal of all of Plaintiff's state law claims against Defendants Lindquist, Barkley, Hulihan, Lane, Beard, Jones, Moehs, McAuliffe, and Bezio (Dkt. No. 1, Counts XV–XIX), without leave to amend; and

3. Dismissal of the following claims, with leave to amend: (a) First Amendment claim against Defendants Briggs and Tyndall for denial of access to courts; (b) First Amendment retaliation claims against Defendants Pawlin, Briggs, Tyndall, and Moehs; (c) Eighth Amendment claim of cruel and inhuman treatment against Defendant Pawlin; (d) Eighth Amendment claim for indifference to serious medical needs against McAuliffe, Bezio, Barkley, Hulihan, and Lindquist; and (e) Fourteenth Amendment denial of due process claims against Defendants Lane, Beard, and Jones; and it is further

**RECOMMENDED** that Defendants' motion be ***DENIED*** as to the following: (a) Plaintiff's claim for retaliation against Defendants Lane and Beard; (b) Plaintiff's Eighth Amendment medical indifference claim against Defendant Moehs; and (c) Plaintiff's Fourteenth Amendment violation of due process claim against Defendants McAuliffe and Bezio; and it is further

**RECOMMENDED** that Defendants be directed to answer those allegations in the Plaintiff's Complaint that relate to the claims on which dismissal is denied and those which relate to the Doe Defendants.

**\*22** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 600213

Footnotes

1   Page numbers in citations to filed documents refer to the page numbers assigned by the Court's electronic filing system rather than to the page number in the original document.

2   Because the Doe Defendants have been excluded from the motion, this Report and Recommendation does not address the legal sufficiency of the claims asserted against them in the Complaint.

3    The background facts set forth herein are taken from Plaintiff's Complaint.

4    Plaintiff is presumably referring to Section III of DOCCS Directive # 4917 which provides in part:

Personal property possessed by an inmate assigned to double cell housing shall be limited to the amount of property that will fit in three standard draft bags (including legal materials). Inmates will be responsible for proper storage of property and the neat and orderly appearance of their cells.

A. *Storage of Property.* An inmate assigned to double occupancy cell housing will be allowed to possess in his or her cell two draft bags provided by the Department for storage of property. Any property beyond what can be stored in the individual locker may be stored in these bags.

5    Plaintiff has not identified the nature of the allegedly fabricated rule violations in his Complaint. (*See* Dkt. No. 1.) Although Plaintiff's Complaint does not specifically identify the person(s) responsible for filing the misbehavior report that led to the hearing, it can be inferred from other allegations that Defendants Lane and Beard were behind the report.

6    It is not entirely clear from the Complaint whether Plaintiff was confined in the SITU by Defendant Jones as a result of Jones' finding that Plaintiff was guilty of possessing two draft bags or for some other reason. *See* Dkt. No. 1 at ¶ 26.

7    Defendants have submitted DOCS Directive # 4913, entitled "Inmate Personal Property Limits" in support of their motion to dismiss. (Dkt. No. 23–2 at pp. 2–9.) Plaintiff has also relied upon the Directive in his opposition papers as support for his argument that state-wide policy allowed him to store his excess personal belongings in the two draft bags under his bunk. (Dkt. No. 27 at p. 12.) Since the Directive is integral to the Plaintiff's Complaint, the Court can consider it on Defendants' Rule 12(b)(6) motion without converting the motion to one for summary judgment. However, because the Directive, on its face, can be construed to offer some support for both Plaintiff and Defendants' position, it is of little value in determining the motion before the Court.

The Declaration of Sandra Prusak, also submitted in support of Defendants' motion to dismiss, references a disciplinary packet that was supposed to be attached to the Declaration. (Dkt. No. 23–3 at p. 2.) Inasmuch as the Disciplinary Packet is not attached to the Declaration as filed, the Court need not consider whether it, or Prusak's reference to its contents, can be considered on a Rule 12(b)(6) motion.

8    The fact that Plaintiff was seeking a hearing or rehearing *en banc* raises the inference that he had been unsuccessful on an appeal to the Second Circuit.

9    *See* Dkt. No. 23–2 at p. 7.

10   *See Williams v. Fisher,* No. 02 Civ. 4558(LMM), 2003 **WL** 22170610, at *10–11, 2003 U.S. Dist. LEXIS 16442, at ——33–34 (S.D.N.Y. Sept.18, 2003) (McKenna, J) (allegation that prison doctor revoked plaintiff's necessary medical treatment because he filed a grievance is sufficient for second prong of retaliation claim analysis).

11   Dental conditions left untreated for a significant period of time can also constitute a serious medical need under the Eighth Amendment. *See, e.g., Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (tooth cavity which will degenerate with increasingly serious implications if neglected over sufficient time presents a serious medical need); *Chance,* 143 F.3d at 702 (untreated dental problems resulting in chronic tooth pain for six months resulting in tooth degeneration constitute serious medical needs); *see also Fields v. Gander,* 734 F.2d 1313, 1314–15 (8th Cir.1984) (claim based on plaintiff's inability to eat properly due to dental problems).

12   If it turns out that Defendant Moehs did provide Plaintiff with some course of treatment for his back, albeit not the treatment recommended by the therapist or the treatment Plaintiff would have chosen for himself, and did not merely tell Plaintiff to live with the pain as alleged, Plaintiff's medical indifference claim is unlikely to survive a motion for summary judgment.

13   There are no allegations in the Complaint that McAuliffe and Bezio had direct knowledge that Plaintiff had a serious medical need while he was in SHU and nonetheless refused to allow him to keep his dentist and medical appointments. *See Farmer,* 511 U.S. at 825, 837 (deliberate indifference requires defendant's awareness of facts from which he or she could draw an inference that plaintiff had a serious medical need, that inference was actually made, and that defendant consciously and intentionally disregarded or ignored the need).

14   The Supreme Court's decision in *Ashcroft,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 has arguably nullified some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of these motions that *Colon* remains good law.

15   Although Plaintiff has asserted a due process claim against Defendant McAuliffe in connection with the misbehavior report filed by Lane and Beard that resulted in the imposition of punitive sanctions by Defendant Jones, there are no factual allegations in the Complaint connecting Defendant McAuliffe to that claim.

16   The Court has inferred that the SHU sanction was imposed by Jones as a result of the guilty determination on the draft bag possession charge.

17    The Court has recommended that Defendants Lane and Beard's motion to dismiss Plaintiff's retaliation claim arising out of the allegedly false misbehavior report be denied. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997) (filing of a false misbehavior report may be actionable when made in retaliation for the exercise of constitutional rights).

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works.    17

2013 WL 599893
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Phillip JEAN–LAURENT, Plaintiff,

v.

C.O. LANE; C.O. Briggs; C.O. Tyndall; John
Doe # 1; John Doe # 2; Sgt. Beard; Sgt. Pauline;
Lt. Jones; DSS McAuliffe; Dr. Mays; Dr.
John Doe; Jane Doe; Supt. Barkley; Supt.
Hulihan; Dep. Comm. Linquist, Defendants.

No. 9:11–CV–186 (NAM/TWD).
|
Feb. 15, 2013.

**Attorneys and Law Firms**

Phillip Jean–Laurent, Ozone Park, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the
State of New York, Gregory J. Rodriguez, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

*ORDER*

NORMAN A. MORDUE, District Judge.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Therese Wiley
Dancks, duly filed on the 24th day of January 2013.
Following fourteen (14) days from the service thereof, the
Clerk has sent me the file, including any and all objections
filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's ReportRecommendation, and no
objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its
entirety.

2. The Clerk of the Court shall serve a copy of this Order
upon all parties and the Magistrate Judge assigned to this
case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 599893

**End of Document**　　　　© 2016 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

**Distinguished by** JBCHoldings NY, LLC v. Pakter, S.D.N.Y., March 20, 2013

2008 WL 2461934
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Peter W. LINDNER, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
Robert Vanderheyden, Heather Christo Higgins,
John Doe # 1, and John Doe # 2, Defendants.

No. 06 Civ. 4751(RJS).
|
June 18, 2008.

**Attorneys and Law Firms**

Kenneth Warren Richardson, Esq., New York, NY, for Plaintiff.

Kevin G. Lauri, Esq., and Dana Glick Weisbrod, Esq., Jackson Lewis LLP, New York, NY, for Defendants.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff Peter W. Lindner brings this action alleging retaliation by his former employer, International Business Machines ("IBM"), and four IBM employees, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) *et seq.,* and state and city law. Specifically, plaintiff alleges that, after complaining of age discrimination by IBM, defendants retaliated against plaintiff by spreading defamatory information about plaintiff to prospective employers. Plaintiff also asserts claims under state law for breach of contract, defamation, and tortious interference with business relations.

Defendant IBM now moves to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion is granted in part and denied in part.

I. BACKGROUND

A. The Facts

The following facts are taken from the amended complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding defendants' motion and construes them in the light most favorable to plaintiff, the non-moving party. *See* Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006). The Court recites only those facts necessary to resolve the instant motion.

1. The Parties

Plaintiff worked as a computer programmer for defendant IBM from 1999 until his termination on August 1, 2003. (Am. Compl. ¶ 10; Lauri Aff. Ex. D.) [1] Defendant Heather Christo Higgins was Lindner's supervisor at IBM; defendant Robert Vanderheyden was a co-worker of plaintiff's and a "team leader" at IBM. (*Id.* ¶ 11.)

2. Plaintiff's Complaints of Discrimination

Plaintiff asserts that, following his firing from IBM in August 2003, he discussed his belief that his termination was "age based" with Higgins and Vanderheyden, and "presented a statistical analysis to back this up." [2] (*Id.* ¶ 13.) Subsequently, on January 27, 2004, plaintiff attempted to file an anonymous complaint with the EEOC, wherein plaintiff alleged that IBM unlawfully terminated him on the basis of his age. (*See* Lauri Aff. Ex. B.) However, by letter dated April 7, 2004, the EEOC informed plaintiff that he was not permitted to file a charge with the EEOC anonymously, and, therefore, indicated that plaintiff "can choose either to file a non-anonymous charge that will preserve [his] rights" to file suit in court at a later date "or an anonymous complaint that does not." [3] (*See id.* Ex. C.) Subsequently, on April 26, 2004, plaintiff filed a signed complaint with the EEOC, asserting that his termination was the product of age discrimination. (*See id.* Ex. D.) In regard to all of the above-referenced conduct, plaintiff asserts

that Higgins and Vanderheyden "were aware" of this purported "protected activity" by plaintiff. (*Id.* ¶ 21.)

On April 27, 2004, the EEOC sent a "Notice of Charge of Discrimination" to IBM. (*Id.* Ex. E.) Ultimately, on January 30, 2006, the EEOC issued a "right to sue" letter to plaintiff, indicating that the "EEOC is unable to conclude that the information obtained establishes violations of the statutes" prohibiting age discrimination and informing plaintiff of his right to commence a lawsuit. (Richardson Decl. Ex. C.)

### 3. Plaintiff's Attempts to Obtain Employment

 **\*2** In February 2004, Lindner applied for a job with Genalytics, which was allegedly one of IBM's "vendors." (Am.Compl.¶ 14.) Genalytics scheduled an interview with plaintiff and then, shortly thereafter, cancelled the interview. (*Id.*) Plaintiff asserts "on information and belief" that Higgins and/or Vanderheyden told Genalytics that plaintiff "was not suitable" for working on a project involving Genalytics and "IBM's Marketing Intelligence Group." (*Id.*) Plaintiff also asserts that the alleged statements were "defamatory, slanderous and libelous" (*id.* ¶ 22), and that defendants knew such statements were false (*id.* ¶ 23).

Subsequently, "[i]n February or March 2004," plaintiff called IBM and spoke to an individual identified in the Amended Complaint as "John Doe # 1" (hereinafter, "Doe"). (*Id.* ¶ 15.) According to plaintiff, he complained to Doe that Higgins or Vanderheyden "had interceded with Lindner's potential employer, in retaliation against Lindner for filing a suit against IBM .... " (*Id.*) Next, Doe allegedly "assured Lindner, for good and valuable consideration, that Doe would speak" to Higgins and Vanderheyden and "that this would not happen again." (*Id.*) Plaintiff asserts that this exchange "constituted an oral contract between IBM and Lindner for which there was valuable consideration. Lindner relied on Doe's statement and did not pursue an action against IBM at that time." (*Id.*)

Approximately one year later, in February or March 2005, plaintiff alleges that he was not hired for a job with the "Wunderman Agency" because "on information and belief Vanderheyden and/or Higgins" told the Agency that plaintiff was "too quirky" and "doesn't have enough

knowledge of the subject." (*Id.* ¶ 18.) Plaintiff also asserts that the alleged statements were "defamatory, slanderous and libelous" (*id.* ¶ 22), and that defendants knew such statements were false (*id.* ¶ 23).

### 4. Plaintiff's Claims in this Action

Plaintiff now asserts (1) that defendants retaliated against plaintiff by spreading false information to two prospective employers, in violation of Title VII, and its state and city analogues; and (2) that the alleged statements made by Higgins and Vanderheyden to Genalytics and the Wunderman Agency "constituted a breach of contract"-presumably, the oral contract allegedly entered into by plaintiff and Doe # 1 (*id.* ¶ 19). Moreover, plaintiff asserts that defendants "act[ed] in breach of contract by tortuously interfering with Lindner's business relationship[s]" (*id.* ¶ 37) and that defendants "act[ed] in breach of contract by continuing to state defamatory, injurious and/or negative information about Lindner after assurance that these acts would not continue" (*id.* ¶ 40). Defendants asserts that these allegations should be construed as alleging contract claims and *not* claims for tortious interference with business relations and/or defamation. The Court addresses defendants' argument below.

### B. Procedural History

 **\*3** On May 1, 2006, plaintiff, appearing *pro se,* commenced this action by filing a complaint in the Supreme Court of the State of New York, New York County. On June 20, 2006, IBM removed the action to this Court. Subsequently, the parties engaged in discovery proceedings for nearly one and one-half years under the supervision of the Honorable Douglas F. Eaton, Magistrate Judge.

On November 30, 2007, IBM submitted a letter indicating its intention to file a motion to dismiss the complaint. [4] Thereafter, plaintiff retained counsel, who filed a notice of appearance on behalf of plaintiff on December 10, 2007. On March 13, 2008, plaintiff filed the amended complaint. On March 14, 2008, IBM filed its motion to dismiss the amended complaint. On May 28, 2008, the Court heard oral argument regarding IBM's motion.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations set forth in the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). To state a legally sufficient claim, the plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* (holding that the "[f]actual allegations" contained in the complaint "must be enough to raise a right to relief above the speculative level").

## III. DISCUSSION

### A. Claims Against the Individual Defendants

As an initial matter, the Court dismisses plaintiff's claims against the individual defendants, Higgins and Vanderheyden. Plaintiff has never served these defendants with a copy of the original or the amended complaint. Rule 4(m) of the Federal Rules of Civil Procedure provides that, "if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for an appropriate period." Fed.R.Civ.P. 4(m); *see, e.g., Astarita v. Urgo Butts & Co.,* No. 96-CV-6991 (PKL), 1997 U.S. Dist. LEXIS 8112, at *14, 1997 WL 317028, (S.D.N.Y. June 10, 1997) (dismissing complaint where plaintiff failed to serve defendants within 120 days of filing complaint

and offered no explanation). Here, plaintiff has neither presented any explanation for his failure to serve the individual defendants nor sought an extension of time to complete effect such service. Therefore, the Court, on its own initiative after notice to plaintiff, dismisses plaintiff's claims against Higgins and Vanderheyden without prejudice due to plaintiff's failure to comply with Rule 4(m). [5]

### B. Defendant IBM's Motion to Dismiss

**\*4** Defendant seeks to dismiss each of plaintiff's claims. In regard to plaintiff's retaliation claims, defendant argues that plaintiff has failed to sufficiently allege a causal connection between the alleged protected activities and the alleged retaliatory conduct. In regard to plaintiff's contract claims, defendant argues that plaintiff's contract claim is barred by New York's Statute of Frauds and, in the alternative, that plaintiff has failed to allege that there was legally valid consideration for the oral contract underlying his claims. Defendant also asserts that the amended complaint cannot be reasonably construed as asserting claims for tortious interference with business relations or defamation. Alternatively, in the event that the Court construes the amended complaint as asserting such claims, defendant argues that plaintiff's defamation claim is barred by the applicable statute of limitations, and that plaintiff's tortious interference claim must be dismissed for failure to state a claim or construed as a time-barred defamation claim.

For the following reasons, the Court construes the amended complaint as alleging retaliation, contract, tortious interference and defamation claims, grants defendant's motion against plaintiff's contract and defamation claims, and denies defendant's motion against plaintiff's retaliation and tortious interference claims.

### 1. Retaliation Claim

#### a. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VTI]." 42 U.S.C.

§ 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." [6] *Gregory v. Daly,* 243 F.3d 687, 700 (2d Cir.2001) (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996)).

### b. Analysis

Here, plaintiff asserts that defendant engaged in two discrete acts of retaliation, each of which must be construed as a separate actionable claim. [7] The first claim concerns statements allegedly made by defendant to Genalytics in February 2004 (the "2004 Claim"). According to the amended complaint, the alleged retaliatory conduct underlying the 2004 Claim was preceded by two protected activities: the August 2003 internal complaint and plaintiff's attempt to file an anonymous EEOC complaint in January 2004. The second claim concerns statements allegedly made by defendants to the Wunderman Agency in February or March 2005 (the "2005 Claim"). Plaintiff asserts that the conduct underlying the 2005 Claim was allegedly preceded by plaintiff's two prior protected activities as well as his filing of a second EEOC complaint in April 2004.

**\*5** In regard to both the 2004 Claim and the 2005 Claim, defendant argues that plaintiff's allegations made upon "information and belief" cannot support a plausible retaliation claim. In addition, as to the 2004 Claim, defendant argues that (1) plaintiff's attempt to file an anonymous complaint with the EEOC did not constitute a "protected activity" under Title VII, and, therefore, (2) the time period-or "temporal proximity"-between the sole protected activity at issue, namely, the August 2003 internal complaint, and the alleged retaliatory conduct in February 2004 precludes, as a matter of law, an inference of a causal connection between the events that is sufficient to support a plausible retaliation claim. Similarly, as to the 2005 Claim, defendant argues that the time period between the protected activity at issue-namely, the April 2004 EEOC complaint-and the alleged retaliatory conduct in February or March 2005 precludes, as a matter of law, any inference of a causal connection between the two events.

For the following reasons, the Court rejects defendant's arguments, and finds that plaintiff has sufficiently stated retaliation claims that are plausible on their face.

### i. Allegations Made Upon "Information and Belief"

The Court rejects defendant's argument that, because plaintiff's allegations of retaliatory conduct are made solely on "information and belief," plaintiff has failed to sufficiently allege retaliatory conduct in support of such claims. The Second Circuit has recently affirmed the validity, at least in certain contexts, of allegations made "upon information and belief":

[T]he district court improperly faulted [the plaintiff] for pleading facts alleged "upon information and belief," ... [where the allegations at issue concerned] information particularly within [the defendant's] knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff ...."). Indeed, even in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading "special matters" [such as fraud claims], we have held that "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (internal quotation marks omitted).

*Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir.2008). [8]

Thus, where, as here, plaintiff alleges facts that are peculiarly within the opposing party's knowledge-namely, the statements allegedly made by defendants to third-parties in private conversations-plaintiff cannot be faulted, at this stage of the case, for asserting such facts on the basis of "information and belief." Therefore, because the Court cannot conclude as a matter of law that plaintiff's allegations of retaliatory conduct upon "information and belief" are defective, the Court denies defendant's motion on this basis; defendant's arguments regarding the merits of plaintiff's allegations made upon

"information and belief" are better made in a motion for summary judgment following discovery in this case. *See Boykin,* 521 F.3d at 215-16 ("Boykin's allegations, taken as true, indicate the possibility of discrimination and thus present a plausible claim of disparate treatment. The complaint gives KeyBank notice of Boykin's claim and the grounds upon which it rests that is sufficient to satisfy Rule 8(a). We emphasize that we are expressing no opinion regarding the merits of Boykin's claim. And that is precisely the point ....").

### ii. Protected Activity

**\*6** The Court also rejects defendant's argument that plaintiff's attempt to file an anonymous EEOC complaint in January 2004 did not constitute a "protected activity" under Title VII. As the Second Circuit has observed:

> In addition to protecting the filing of formal charges of discrimination, [Title VII] protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.

*Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990); *accord Matima v. Celli,* 228 F.3d 68, 78 (2d Cir.2000) ("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination ...."). As such, "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection ...." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000); *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 65 (2d Cir.1992) ("[The plaintiff] had not filed a formal agency complaint before she was fired, but she did make an internal complaint to company management, protesting the sexually harassing actions of her supervisor. Surely this opposition to the unlawful practice of sexual harassment is protected activity within the policies of Title VTI."); *Bailey-Lynch v. Potter,* No. 03 Civ. 0145E(F), 2005 **WL** 1241900, at \*6 (W.D.N.Y. May 25, 2005) (finding that the plaintiff's request for

an appointment with an EEOC counselor constituted "protected activity").

Here, plaintiff alleges that Higgins and Vanderheyden were "aware" of his purportedly "protected activity," which, drawing all reasonable inferences in plaintiff's favor, includes both his informal complaint of age discrimination in August 2003 and his attempt to file the anonymous age-discrimination complaint with the EEOC in January 2004. (*See* Am. Compl. ¶ 21.) In response, defendant asserts that, in fact, it was not aware of the attempted anonymous filing, and, therefore, it could not have responded by retaliating against plaintiff. (*See* Def.'s Mem. at 7 n. 6 ("On January 27, 2004, Plaintiff filed an anonymous federal charge of discrimination .... This charge is not relevant to Plaintiff's retaliation claim and will not be analyzed to determine if a causal connection exists because IBM had no knowledge of the charge filing.").)

The Court rejects defendant's argument as a basis to dismiss plaintiff's retaliation claims at this stage of the case. Although this Court takes judicial notice of the fact that the EEOC did not accept plaintiff's anonymous complaint for filing, and thus did not provide *formal* notice to IBM of the complaint, there is no basis, at this stage of the case, for the Court to decline to credit plaintiff's allegation that IBM employees were nevertheless "aware" of the attempted filing in January 2004. Am. Compl. ¶ 21; *see McCalla v. SUNY Downstate Med. Ctr.,* No. 03 Civ. 2633(JFB), 2006 **WL** 1662635, at \*8 (E.D.N.Y. June 8, 2006) ("Although the amended complaint does not describe facts alleging what specific protected activity plaintiff engaged in [or] how defendants were aware of the activity ..., plaintiff need only plead a " 'short and plain statement' " that " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' ") (quoting *Swierkiewicz,* 534 U.S. at 512 (2002)) (additional internal citations omitted).

### iii. Temporal Proximity

**\*7** In regard to the 2004 Claim, defendant further argues that the time between the August 2003 internal complaint and the alleged retaliatory conduct in February 2004 is sufficiently long so as to preclude, as a matter of law, any inference of a causal connection between the alleged protected activities and the alleged retaliatory conduct. [9]

Similarly, in regard to the 2005 claim, defendant asserts that the time between the April 2004 EEOC filing and the alleged retaliatory conduct in February or March 2005 cannot support an inference of a causal connection. The Court rejects defendant's arguments, and declines, at this stage of the case, to conclude that the six month and ten to eleven month periods at issue here cannot, as a matter of law, satisfy the causal connection element of a retaliation claim.

First, the Court notes that, based on its review of relevant case law, retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct. *See, e.g., Ludwiczak v. Hitachi Cap. Am. Corp.,* 528 F.Supp.2d 48, 60 (D.Conn.2007) ("In the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish this temporal relationship."); *Deravin v. Kerik,* No. 00 Civ. 7487(KMW), 2007 WL 1029895, at *11 (S.D.N.Y. April 2, 2007) (noting, at the summary judgment stage, that "periods greater than one year have generally been rejected when offered to indirectly establish a causal connection between an act and its purported consequences"). Indeed, defendant has failed to cite *any* Second Circuit case wherein the court has affirmed such a holding, and presents only a single district court case from this Circuit wherein the court granted a motion to dismiss while relying on a finding that the time period at issue could not, as a matter of law, support an inference of retaliation. [10] (*See* Defs.' Mem. at 7-8 (citing cases).)

In that single district court case, *Sloan v. Mazzuca,* the court noted that it would "dismiss a section 1983 complaint [alleging retaliation] if it fails to set forth specific factual allegations indicating a deprivation of constitutional rights." [11] No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *10 (S.D.N.Y. Oct. 31, 2006) (citing *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987)). The court then proceeded to find that the four-month period between the alleged protected activity and alleged retaliatory conduct "only met the temporal proximity factor in the most rudimentary sense, because [the protected activity] pre-dates the alleged retaliation, but that alone is not enough to meet" the causal connection element of a Title VII retaliation claim. *Id.* at *15.

However, in this case, the Court declines, at this early juncture, to engage in a similarly searching inquiry regarding whether plaintiff's allegations of causation are sufficient to permit an inference of retaliation. Rather, because "[t]his Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001), the Court is unable to conclude as a matter of law that the time periods at issue here are too long to support a plausible retaliation claim. Instead, this Court abides by binding authority regarding the liberal pleading requirements that control this Court's resolution of a Rule 12(b)(6) motion against a retaliation claim. The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 918, 166 L.Ed.2d 798 (2007); *see, e.g., Twombly,* 127 S.Ct. at 1974; *Iqbal,* 490 F.3d at 158. No such heightened pleading requirement for retaliation claims exists in Title VII, state, or city law. Therefore, the controlling standard for survival of a motion to dismiss lies in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that complaints in Title VII discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

**\*8** The Second Circuit has similarly emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir.2006). Such pleading "enable[s] the adverse party to answer and prepare for trial, allow the application of *res judicata,* and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (internal quotation marks omitted). A clear statement from the plaintiff alleging retaliation by the defendant is sufficient to achieve these goals. *See Boykin,* 521 F.3d at 215.

In this case, plaintiff has made a sufficiently clear statement in the complaint to satisfy Rule 8(a) and, therefore, to withstand defendant's motion to dismiss under Rule 12(b)(6). Specifically, plaintiff asserts that, following his internal complaint in August 2003 and his filing or attempted filing of age-discrimination complaints in January and April 2004, defendant's employees-namely, Higgins and/or Vanderheyden-spread false and disparaging information about plaintiff to two of his prospective employers. Plaintiff alleges that these acts were taken in retaliation for plaintiff having engaged in a protected activity, and that they resulted in plaintiff being denied positions with the prospective employers. Based upon these allegations and drawing all reasonable inferences in plaintiff's favor, the amended complaint alleges a retaliation claim that is sufficient to satisfy Rule 8 and to survive a motion to dismiss. Put simply, the Court cannot conclude that no "plausible" retaliation claim exists under Title VII, state, or city law. *See Boykin, 521 F.3d at 216.*

## 2. Contract Claim

Defendant argues that plaintiff's contract claims must fail because (1) the Statute of Frauds bars plaintiff from seeking to enforce the oral contract, and (2) plaintiff has not sufficiently pled consideration in support of the purported oral contract.[12] For the following reasons, the Court finds that the Statute of Frauds bars plaintiff's contract claims, and, therefore, declines to address defendant's arguments regarding the sufficiency of the alleged consideration underlying the oral contract.

### a. Legal Standard

Under the Statute of Frauds, an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing. N.Y. Gen. Oblig. Law § 5-701(a)(1).[13] As the Second Circuit has observed:

This provision of the Statute of Frauds encompasses "only those contracts which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year.' " *Cron v. Hargro Fabrics, Inc.,* 91 N.Y.2d 362, 670 N.Y.S.2d 973, 694 N.E.2d 56, 58 (N.Y.1998) (quoting *D & N Boening v. Kirsch*

*Beverages,* 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992, 993 (N.Y.1984) .... Thus, "full performance by all parties must be possible within a year to satisfy the Statute of Frauds." *Id.* [at 59, 483 N.Y.S.2d 164, 472 N.E.2d 992.]

**\*9** *Guilbert v. Gardner,* 480 F.3d 140, 151 (2d Cir.2007); *see also Weisse v. Engelhard Minerals & Chem. Corp.,* 571 F.2d 117, 119 (2d Cir.1978) ("The practice of the New York courts has been to construe this one-year provision of the statute narrowly to give effect to oral contracts which are capable of being performed within one year"). In determining "whether a contract is capable of performance within a year for Statute of Frauds purposes, [t]he endurance of defendant's liability is the deciding factor.' " *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.,* No. 07 Civ. 0400(KMK), 2008 WL 852787, at \*8 (S.D.N.Y. March 31, 2008) (quoting *Levine v. Zadro Prods., Inc.,* No. 02 Civ. 2838, 2003 WL 21344550, at \*4 (S.D.N.Y. June 9, 2003) (internal quotation marks omitted) (alteration in original) and citing *City of Yonkers v. Otis Elevator Co.,* 649 F.Supp. 716, 727 (S.D.N.Y.1986) ("The crucial question is the endurance of the defendant's liability") (internal quotation marks omitted)).

### b. Analysis

Here, the Court finds that there is "absolutely no possibility" of full performance of the alleged oral contract within one year. *Guilbert,* 480 F.3d at 151. According to the amended complaint, Doe promised that the disparaging telephone calls to plaintiff's prospective employers "would not happen again." (Am.Compl.¶ 15.) The only reasonable interpretation of this alleged contract term is that defendants would avoid interfering "with Lindner's potential employer" in perpetuity. (*Id.*) As such, the alleged contract, by its own terms, plainly "required that it should not be performed within the year ...." *D & N Boening,* 483 N.Y.S.2d 164, 472 N.E.2d at 993.

Moreover, even construing the alleged terms of the alleged oral contract in plaintiff's favor, it is clear that the alleged contract does not provide for any contingencies or conditions by which either party could terminate the contract within one year. *See Burke v. Bevona,* 866 F.2d 532, 538 (2d Cir.1989) ("[A] termination provision must be express ... in order to excuse a contract from the writing requirement of the Statute of Frauds ....") (internal

quotation marks and citation omitted). Indeed, it appears that the only way to terminate the alleged contract within one year of its formation was through a breach by either party. However, "a contract is not 'performed' if it is breached.... [I]f defendant's only right to terminate an oral contract within a year is triggered by plaintiff's breach, the contract is void under the statute of frauds.' " *Volmar Distrib., Inc. v. New York Post Co., Inc.,* 825 F.Supp. 1153, 1168 (S.D.N.Y.1993) (citing *D & N Boening, Inc.,* 483 N.Y.S.2d 164, 472 N.E.2d at 995-96 ("[T]ermination of an agreement as a result of its breach is not performance thereof within the meaning of the Statute of Frauds ....").

At oral argument, plaintiff's counsel asserted that the alleged contract included some "implied" contingency that permitted the contract to "be performed within one year" of its making, and that this unidentified implicit term "needs to be fleshed out in discovery." (*See* Argument Tr. at 27-28.) However, taking plaintiff's allegations in the amended complaint as true and drawing all reasonable inferences in plaintiff's favor, there is absolutely no basis to conclude that the alleged oral contract included an implicit term that provided for the termination or full performance of the contract within one year of its making. Rather, by its alleged terms, "[t]his was not an agreement where, at any time, one or both parties could discontinue their activities, or reject any or all particular transactions, or sell the properties essential to the contractual relationship thereby rendering performance impossible, or determine for any just or sufficient reason that termination was necessary for the good of the business" and thereby void the parties' agreement. *D & N Boening, Inc.,* 483 N.Y.S.2d 164, 472 N.E.2d at 995-96 (internal citations omitted).

**\*10** Accordingly, because the alleged contract, by its own terms, has absolutely no possibility of full performance within one year, and because there is no reasonable interpretation of the alleged contract whereby it was possible to terminate the agreement within one year, the Statute of Frauds bars plaintiff from seeking to enforce the oral contract. Thus, defendant's motion against plaintiff's contract claims is granted, and those claims are dismissed with prejudice.

### 3. Additional Claims Asserted in the Amended Complaint

Plaintiff asserts that he has also alleged claims for tortious interference with business relations and defamation in, respectively, the fourth and fifth claims for relief in the amended complaint. In response, defendant argues that these claims are "unpled." (Def.'s Reply Mem. at 5.) Specifically, defendant asserts that the fourth and fifth claims for relief cannot be reasonably construed as asserting anything other than claims for breach of contract, and that the references therein to "tortious interference" and "defamatory" statements are mere surplusage. (*See* Argument Tr. at 45.)

The Court disagrees. Viewing the pleading in the light most favorable to plaintiff, the amended complaint may be reasonably construed as asserting breach of contract claims *as well as* claims for tortious interference with business relations and defamation. In the first paragraph of the amended complaint, plaintiff asserts that "[t]his is an action for ... defamation and tortious interference with Plaintiff's business relations" (Am.Compl.¶ 1); in the fourth claim for relief, plaintiff alleges that "[d]efendants did act in breach of contract by tort[i]ously interfering with Lindner's business relationship by preventing or attempting to prevent Lindner from gaining employment ..." (*id.* ¶ 37, 483 N.Y.S.2d 164, 472 N.E.2d 992); and in the fifth claim for relief, plaintiff alleges that "[d]efendants did act in breach of contract by continuing to state defamatory, injurious and/or negative information about Lindner after assurance that these acts would not continue" (*id.* ¶ 40, 483 N.Y.S.2d 164, 472 N.E.2d 992). Thus, the plain language of the amended complaint clearly indicates that plaintiff alleges such claims *in addition to* breach of contract claims. *See Burford v. McDonald's Corp.,* 321 F.Supp.2d 358, 365 (D.Conn.2004) (finding that, although "Plaintiff's complaint does not plead retaliation as a separate count, ... she does explicitly allege retaliation" and, therefore, "it is clear from the face of the complaint that Plaintiff was alleging that she had been retaliated against ..."); *see also Chan v. N.Y.C. Transit Auth.,* No. 03 Civ. 6239(ARR), 2004 WL 1812818, at \*7 n. 5 (E.D.N.Y. July 19, 2004) ("Although plaintiff's complaint does not explicitly identify retaliation as a cause of action under Title VII, ... the complaint does allege, without elaboration, that plaintiff was retaliated against .... The court will therefore consider the viability of the claim."); *cf. Davis v. Garcia,* No. 07 Civ. 9897(CLB), 2008 WL 2229811, at \*3 (S.D.N.Y. May 27, 2008) (finding that, although "plaintiffs do not specifically allege violations of

the Federal Torts Claim Act," they allege the existence of the elements of such a claim and, therefore, the court would "treat[ ] the pleadings as tendering all available theories," including the FTCA). [14]

**\*11** Indeed, Rule 8(d) of the Federal Rules of Civil Procedure provides that "[n]o technical form is required" to state a claim, and specifically permits the pleading of "alternative[ ]" claims "in a single count ...." As the Second Circuit has observed, pursuant to Rule 8(d)(2), "a plaintiff may plead two or more statements of a claim, *even within the same count,* regardless of consistency. The inconsistency may lie either in the statement of the facts or in the legal theories adopted ...." *See, e.g., Henry v. Daytop Village, Inc.,* 42 F.3d 89, 95 (2d Cir.1994) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 343 (2d Cir.1994)) (additional internal quotation marks and citation omitted) (emphasis added). Therefore, it is clearly permissible for plaintiff to assert, "within the same count," *id .,* distinct legal theories arising from precisely the same conduct-namely, the alleged communications by Higgins and Vanderheyden with plaintiff's prospective employers.

Accordingly, at this early juncture of the case, the Court finds that the amended complaint may be reasonably construed as asserting claims for defamation and tortious interference, in addition to claims for breach of contract. Below, the Court addresses the separate issue of whether plaintiff has alleged plausible claims for relief under these legal theories.

### a. Defamation

To the extent that plaintiff's fifth claim for relief may be construed as asserting a breach of contract claim, it is dismissed for the reason stated *supra* in Part III.B.2. Moreover, to the extent that this claim may be construed as asserting a defamation claim under New York law, that claim is barred by the one-year statute of limitations that applies to intentional torts in New York. N.Y. CPLR § 215(3); *see, e.g., Hargett v. Metrop. Transit Auth.,* ---F.Supp.2d ----, 2008 WL 1700143, at \*6 (S.D.N.Y. April 08, 2008). Plaintiff's defamation claim arose, at the latest, in March 2005-the approximate date of the most recent alleged conversation between defendants and a propsective employer-but plaintiff did not commence this action until May 2006, over one year later. [15] Indeed,

at oral argument, plaintiff's counsel conceded that "there is a statute of limitation[s] problem with the defamation claim," and did not offer any basis for avoiding the statute of limitations bar. (Argument Tr. at 18.) Accordingly, plaintiff's defamation claim is untimely and, therefore, the Court dismisses the claim with prejudice.

### b. Tortious Interference with Business Relations

To the extent that plaintiff's fourth claim for relief may be construed as asserting a breach of contract claim, it is also dismissed for the reason stated *supra* in Part III.B.2. However, to the extent that the fourth claim for relief may be construed as asserting a claim for tortious interference with business relations, or, as the tort is sometimes referred to, "tortious interference with prospective economic advantage," *see Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir.1994), the Court finds that the amended complaint sufficiently states such a claim to withstand defendant's motion.

**\*12** "To prevail on a claim for 'tortious interference with business relations' under New York law, a party 'must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.' " *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 171 (2d Cir.2004) (quoting *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003). In *Purgess v. Sharrock,* the Second Circuit affirmed a jury's verdict in favor of the plaintiff on his business relations claims where plaintiff, a doctor, alleged that, following his termination, his former employers "sent several communications to other hospitals and state medical examiners" that frustrated the plaintiff's attempts to find a new job. 33 F.3d at 136-38. The court found "sufficient evidence in the record" to support each of the four elements, to wit: (1) the plaintiff's "attempts to obtain employment" constituted "business relations" between the plaintiff and the prospective employers; (2) the defendants knew of the plaintiff's attempts to obtain employment with the prospective employers; (3) the defendants' false statements to the employers and failures to respond to inquiries from the prospective employers established that the defendants acted with "malice" and "unfairly or improperly"; and (4) evidence

that the prospective employers "had serious reservations about hiring [the plaintiff] after communicating with" the defendants established that the defendants' conduct caused "injury" to the plaintiff's relationships with the prospective employers. *Id.* at 142.

The holding in *Purgess* demonstrates that the facts alleged by plaintiff in the amended complaint, taken as true, establish a plausible claim for tortious interference with plaintiff's business relationship. Specifically, under *Purgess,* plaintiff has sufficiently alleged each of the elements of the tort by asserting: (1) plaintiff's alleged attempts to obtain employment constituted "business relations" with the prospective employers, Genalytics and the Wunderman Agency (*see* Am. Compl. ¶¶ 14, 16-18); (2) defendant allegedly knew of those relationships (*see id.* ¶¶ 14, 18); (3) the alleged false statements made by defendant's employees to Genalytics and the Wunderman Agency regarding plaintiff's shortcomings were "dishonest" and intended to frustrate plaintiff's attempts to obtain employment (*see id.* ¶¶ 14, 18); and (4) defendant's alleged interference caused injury to plaintiff by "preventing ... [him] from gaining employment and earning a living" (*see* Am. Compl. ¶ 35). Therefore, the Court finds that plaintiff has sufficiently stated a plausible business relations claim and, therefore, denies defendant's motion against this claim.

**\*13** Defendants also argue, in the alternative, that plaintiff's tortious interference claim must fail because "it is merely a restatement of the defamation claim to avoid the one year statute of limitations." (Def.'s Reply Mem. at 5-6.) In support, defendant cites authority from New York State courts providing that, where "the claims in a complaint are in essence claims for defamation, a plaintiff may not circumvent the one-year limitation applicable to defamation by redescribing the tort" as, *inter alia,* one for tortious interference with business relations. *Ramsay v. Mary Imogene Bassett Hosp.,* 113 A.D.2d 149, 495 N.Y.S.2d 282, 284 (N.Y.App.Div.1985) (cited in Def.'s Reply Mem. at 6). The Court rejects this argument.

In *Ramsay,* the court determined the "essence" of plaintiff's claims by looking to the "terms of the injury." *Id.* Specifically, the court observed that a defamation claim was "defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished." *Id.* Thus, because "each cause of action [in the complaint at issue] define[d] the damage to

plaintiff in terms of damage to his reputation," the court determined that each of plaintiff's claims was, in essence, a defamation claim and, therefore, subject to the one-year statute of limitations applicable to such a claim. *See id.* at 284-85; *see also Gallagher v. Metro North Commuter R Co.,* 846 F.Supp. 291, 293 (S.D.N.Y.1994) (dismissing a claim for "mental distress" arising from defendant's allegedly false statements as time-barred under the statute of limitations for a defamation claim where the court found it "difficult to conceive what harm plaintiff could have experienced from [the defendant's] allegedly false statements except harm to his reputation") (Mukasey, J.).

However, this rule relied on by the court in *Ramsay* is narrowly confined. Indeed, where the alleged harm suffered by the plaintiff is not *"precisely* the same as that caused by defamation"-namely, harm to the plaintiff's reputation-the Court should decline to construe a claim as one for defamation. *Morrison v. Nat'l Broadcasting Co.,* 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572, 574 (N.Y.1967) (emphasis added); *see, e.g., Eisenberg v. Yes Clothing Co.,* No. 90 Civ. 8280(JFK), 1991 WL 107432, at \*3 (S.D.N.Y. June 7, 1991) (declining to construe the plaintiff's claim as one for defamation where "[a]lthough part of plaintiff's claim in Count I is that defendants' actions injured her reputation, plaintiff also claims that her economic interests ... were injured by defendants' intentional acts); *Horstein v. General Motors Corp.,* 391 F.Supp. 1274, 1278 (S.D.N.Y.1975) (declining to construe plaintiff's tort claim as one for defamation where plaintiff was "not seeking recovery for damages to his reputation exclusively"); *Mannix Industries, Inc. v. Antonucci,* 191 A.D.2d 482, 594 N.Y.S.2d 327, 329 (N.Y.App.Div.1993) (finding that the trial court "erroneously found that the second and third causes of action were barred by a one-year Statute of Limitations, because they alleged false words and statements on the part of the defendants.... [T]he third cause of action alleges injury to economic interests, rather than reputation, and thus it is ... governed by" a longer statute of limitations applicable to claims for tortious interference with contractual relations) (internal citations omitted); *Singer v. Jefferies & Co., Inc.,* 160 A.D.2d 216, 553 N.Y.S.2d 346, 348 (N.Y.App.Div.1990); *Classic Appraisals Corp. v. DeSantis,* 159 A.D.2d 537, 552 N.Y.S.2d 402, 403 (N.Y.App.Div.1990).

**\*14** Similarly, in this case, the amended complaint "defines the damage to plaintiff," *Ramsay,* 495 N.Y.S.2d at 284, as more than merely "harm to

his reputation," *Gallagher,* 846 F.Supp. at 293. Specifically, plaintiff alleges that defendant's alleged communications with plaintiff's prospective employers "preven[ted] [plaintiff] from gaining employment and earning a living," (Am.Compl.¶ 37), thereby allegedly causing plaintiff to suffer "monetary damages ... *as well as* ... humiliation ...." (*id.* ¶ 38 (emphasis added). Thus, because the "harm assertedly sustained by the plaintiff" is, at least in part, economic, and, therefore, not "precisely the same as that caused by defamation," the Court declines to construe plaintiff's tortious interference claim as a time-barred defamation claim. *Morrison,* 280 N.Y.S.2d 641, 227 N.E.2d at 574; *see Eisenberg,* 1991 WL 107432, at \*3; *Classic Appraisals Corp.,* 552 N.Y.S.2d at 403.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' claims against defendants Higgins and Vanderheyden are DISMISSED without prejudice pursuant to Rule 4(m).

In addition, defendant's motion to dismiss is granted in part and denied in part. Defendant's motion is GRANTED as to plaintiff's contract and defamation claims, and those claims are DISMISSED with prejudice. However, defendant's motion is DENIED as to plaintiff's retaliation and tortious interference with business relations claims.

Plaintiff shall file a second amended complaint within thirty (30) days of the date of this decision. In the second amended complaint, plaintiff is hereby directed to omit his defective contract and defamation claims and, to the fullest extent possible, to clarify and separately identify the factual allegations underlying, respectively, his retaliation claims and his claim for tortious interference with business relations.

The Clerk of the Court is respectfully requested to terminate the motion docketed as document number 51.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2461934

### Footnotes

1  The Court takes judicial notice of plaintiff's filings with the Equal Employment and Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"), as attached to the parties' respective moving papers. (*See* Richardson Decl. Exs. B-C; Lauri Aff. Exs. B-E.) In considering a motion to dismiss, the Court may take judicial notice of documents integral to or referred to in the complaint. *See, e.g., Subaru Distribs. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir.2005). In addition, the Court may take judicial notice of EEOC filings relating to plaintiff's claims. *See, e.g., Roberti v. Schroder Inv. Mgmt. North Amer., Inc.,* No. 04 Civ. 2404(LTS), 2006 WL 647718, at \*3 (S.D.N.Y. Mar.14, 2006); *Muhammad v. New York City Transit Auth.,* 450 F.Supp.2d 198, 204-5 (E.D.N.Y.2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice."); *Evans v. New York Botanical Garden,* No. 02 Civ. 3591(RWS), 2002 WL 31002814, at \*5 (S.D.N.Y. Sept.4, 2002); *Nickens v. New York State Dep't of Corr. Servs.,* No. 94 Civ. 5425(FB), 1996 WL 148479, at \*1 (E.D.N.Y.1996).

2  In the amended complaint, plaintiff actually indicates that he discussed age discrimination at IBM with Higgins and Vanderheyden in "August 2004" (*See* Am. Compl. ¶ 13.) However, it appears that the date included in ¶ 13 is a typographical error, and that plaintiff intended to assert that this discussion occurred in August 2003. Indeed, in its opposition brief and at oral argument, defendant conceded that plaintiff likely made a "scrivener's error" in the amended complaint by indicating that the alleged discussion occurred in 2004 rather than 2003, and defendant construes the allegation accordingly. (Def.'s Mem. at 6 n. 5; Argument Tr. at 6-7.) Thus, drawing all reasonable inferences in plaintiff's favor, the Court similarly construes the amended complaint as alleging that the discussion occurred in August 2003.

3  The Court takes judicial notice of the fact that the EEOC sent the April 7, 2004 letter to plaintiff. The Court does not, however, rely on the letter in resolving defendants' motion but includes it in the narrative facts section merely as background information.

4  This case was originally assigned to the Honorable Kenneth M. Karas, District Judge. On September 4, 2007, the case was reassigned to the undersigned.

5    Notice was provided to plaintiff by means of defendant IBM's discussion of this issue in their moving papers (*see* Def.'s Mem. at 1) and through the Court raising this issue at oral argument (*see* Argument Tr. at 34-35). Indeed, at oral argument, plaintiff's counsel acknowledged that the individual defendants had never been served with a copy of any of plaintiff's pleadings in this action. (*See id.* at 35.)

6    The Court notes that, because retaliation claims under New York State law and New York City Human Rights Law are subject to the same analysis as claims under Title VII, *see Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000), the following discussion applies to plaintiff's retaliation claims under all three bodies of law.

7    In *Nat'l R.R. Passenger Corp. v. Morgan,* the Supreme Court observed that the term "unlawful employment practice" as used in Title VII "app[lies] to a discrete act or single 'occurrence,' even when it has a connection to other acts." 536 U.S. 101, 111, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, the Court observed that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a *separate* actionable 'unlawful employment practice.' " *Id.* at 114 (emphasis added). Therefore, in resolving the timeliness of plaintiff's claims, the Court found that, "[w]hile [the plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired," each alleged incident had to be treated as a "discrete discriminatory act" under Title VII. *Id.* 114-15. As such, courts in this Circuit evaluate retaliation claims involving multiple retaliatory acts by separately examining the "causal nexus" between the protected activity or activities at issue and *each* "discrete" act of retaliation. *Silva v. Peninsula Hotel,* 509 F.Supp.2d 364, 384 (S.D.N.Y.2007) (examining separately the "temporal proximity of Plaintiff's EEOC activity" to each of five alleged adverse actions, consisting of four suspensions and the plaintiff's termination); *see, e.g., Hines v. City of Bristol,* No. 3:05 Civ. 1251(VLB), 2008 **WL** 697300, at *5 (D.Conn. March 13, 2008) (same); *Joiner v. Chartwells and Compass Group N. Am.,* 500 F.Supp.2d 75, 85 (D.Conn.2007); *Martinson v. Menifee,* No. 02 Civ. 9977(LTS)(HBP) (same), 2007 **WL** 2106516, at *8 (S.D.N.Y. July 18, 2007) (same). Accordingly, in this case, the Court examines, on the basis of the facts alleged in the amended complaint, the causal nexus between the protected activities at issue and each of the two retaliatory acts allegedly taken by defendants.

8    The Court notes that the plaintiff in *Boykin* appeared *pro se* in that action. However, the court's holding was not limited to pro se pleadings. *See* 521 F.3d at 215 (noting that the Supreme Court has "explicitly disavow[ed] that Rule 8(a) requires any plaintiff-let alone a *pro se* plaintiff-to plead 'specific facts' ") (internal citations omitted). Moreover, district courts have applied the holding in *Boykin* in upholding pleadings by represented plaintiffs. *See, e.g., Carmichael v. City of New York,* No. 06 Civ.1913(NG), 2008 **WL** 905227, at *3 (E.D.N.Y. Mar 31, 2008).

9    The Court notes that, in regard to the 2004 Claim, plaintiff has sufficiently alleged the existence of two protected activities-namely, the internal complaint in August 2003 and the attempted EEOC filing in January 2004, discussed *supra*-that closely preceded the alleged retaliatory conduct taken by defendants in February 2004. Thus, the following discussion relating to the 2004 Claim is presented as an alternative basis for rejecting defendant's motion against that claim and is predicated on the *arguendo* assumption that the attempted anonymous filing in January 2004 did not constitute a "protected activity" under Title VII.

10    Each of the remaining cases cited by defendant in its moving papers concerns a motion for summary judgment.

11    The court in *Mazzuca* also indicated that, "[b]ecause prisoners' claims of retaliation [pursuant to 42 U.S.C. § 1983] are prone to abuse," it "approach[ed] Plaintiff's claims with justifiable caution and some skepticism." 2006 **WL** 3096031, at *13.

12    The parties agree that New York law governs plaintiff's breach of contract claim.

13    The statute provides, in relevant part, that "[every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, ... if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime ...." N.Y. Gen. Oblig. Law ¶ 5-701(a)(1).

14    The Court notes that the respective plaintiff's in *Burford, Chan,* and *Davis* were represented by counsel and, therefore, the decisions in those cases did not rely on the more liberal standards applied to pleadings prepared by *pro se* litigants.

15    The Court presumes, for the purposes of the statute of limitations issue, that the alleged conversation occurred in March 2005 rather than February 2005.

---

**End of Document**          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 859543
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Felix ORIAKHI, Plaintiff,
v.
Timothy P. WOOD, et al., Defendants.

No. 3:CV-05-0053.
|
March 31, 2006.

**Attorneys and Law Firms**

Felix Oriakhi, Fort Dix, NJ, pro se.

Jennifer Clark, U.S. Attorney's Office, Scranton, PA, for
Defendants.

MEMORANDUM

VANASKIE, Chief J.

**I. Introduction**

 **\*1** Plaintiff, Felix Oriakhi, an inmate currently confined
at FCI-Fort Dix, Fort Dix, New Jersey, initiated this
combined Federal Tort Claims Act ("FTCA") and
*Bivens*-type [1] civil rights action on January 10, 2005.
Oriakhi complains of an allegedly retaliatory "search and
confiscation" of his legal materials at FCI-Schuylkill, his
former place of incarceration. Oriakhi has been granted
leave to proceed *in forma pauperis.* Oriakhi names as
Defendants the United States of America along with
FCI-Schuylkill staff members Timothy Wood and Linda
Edwards. Plaintiff seeks compensatory and punitive
damages.

Following service of the Complaint, Defendants filed a
Motion to Dismiss, or in the alternative, for Summary
Judgment. (Dkt. Entry 25.) The motion has been briefed
and is ripe for consideration. For the reasons discussed in
this memorandum, the motion for summary judgment will
be granted.

**II. Procedural History**

Defendants' motion is based on: (1) the doctrine of
sovereign immunity; (2) failure to state a viable *Bivens*
claim; (3) failure to state a suitable FTCA claim; and
(4) the unavailability of monetary damages under either
*Bivens* or the FTCA due to the absence of physical injury.
In support, defendants have submitted a statement of
facts, brief, reply brief and exhibits, including the unsworn
declaration of defendant Wood.

Oriakhi filed an opposition brief, a surreply brief, and
exhibits. In addition to his own declaration, Oriakhi has
submitted a statement from another inmate who was in
FCI-Schuylkill's law library on February 4, 2004, when
defendant Wood searched Oriakhi and confiscated the
legal materials in his possession. Oriakhi did not file a
separate response to Defendants' Statement of Material
Facts.

**III. Statement of Relevant Facts**

On February 4, 2004, between the hours of 5:30 p.m.
and 8:30 p.m., Oriakhi was conducting legal research in
FCI-Schuylkill's law library. At approximately 6:00 p.m.,
Oriakhi approached defendant Wood, the staff member in
charge of the law library at the time, to complain that a
particular book he needed had been missing for a period
of time and requested information as to when it would
be replaced. (Dkt. Entry 1, Complaint.) Dissatisfied with
defendant Wood's answer, Oriakhi requested a "cop out,"
or institutional grievance form, from defendant Wood. At
this point defendant Wood ordered Plaintiff out of his
office. (*Id.*)

At approximately 7:45 p.m. defendant Wood conducted a
search of Oriakhi and the legal materials in his possession
for contraband. (Wood Aff. at ¶ 3.) Wood found the
following unauthorized items in Oriakhi's pockets: cooked
collard greens and an unknown rubber substance. (*Id.*
at ¶ 4.) Wood also found in Oriakhi's possession legal
materials that belonged to inmates Riddick, Okafor,
and Mendez. (*Id.*) The perishable items were confiscated
and discarded. (*Id.* at ¶ 5.) Because the law library
was scheduled to close soon, Wood collected the legal
materials of the other inmates from Oriahki and retained
them in anticipation of the owners retrieving them prior
to the library closing. (*Id.* at ¶ 6.) Riddick, Okafor and
Mendez did not retrieve their legal documents prior to the
library closing that night at 8:30 p.m. (*Id.* at ¶ 7.) Wood
took the confiscated legal materials to the Lieutenant's
Office for retention and security purposes. (*Id.*) Wood

issued Oriakhi an incident report due to his possession of contraband. (*Id.* at ¶ 8.)

**\*2** The incident report was heard by Oriakhi's Unit Discipline Committee ("UDC"). (Dkt. Entries 1, Complaint and 34, Plaintiff's Opposition Brief, Exhibit V, February 4, 2004-Incident Report.) Defendant Edwards, Oriakhi's Unit Manager, was a member of the UDC. The UDC determined that Plaintiff had committed the prohibited act charged and directed that he perform 10 hours of extra duty.

The parties dispute whether any of Oriakhi's personal legal materials were confiscated by Wood on February 4, 2004. Wood contends that he did not confiscate or seize any of Oriakhi's personal legal materials during the search. (Wood Aff. at ¶ 9.) Oriakhi claims that, in addition to the legal papers of the three identified inmates (Riddick, Okafor, Mendez), his legal materials and those of inmate Scantlebury were also confiscated. Oriakhi submits that his legal materials for "two federal pending cases" and a "family case" were confiscated and never returned to him. (Dkt. Entry 34, Plaintiff's Opposition Brief, Exhibit III, Plaintiff's Declaration.) Oriakhi asserts that "the legal materials contained in the confiscated envelopes was vital and important in [his] defense on the pending federal cases which resulted in [his] inability to produce certain material documents to support my claims in the actions." (Id. at ¶ 21.)

IV. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. The substantive law determines which facts are material and which facts are irrelevant. *Id.* at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 250. If the court determines that "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). All inferences, however, " 'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true'." *Pastore v. Bell Tel. Co. of Pennsylvania,* 24 F.3d 508, 512 (3d Cir.1994) (citing *Big Apple BMW, Inc. v. BMW of N. America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992); *Wicker v. Consol. Rail Corp.,* 142 F.3d 690, 696 (3d Cir.1998). The Court however is not required to credit "mulled allegations" or "legal conclusions." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 905 (3d Cir.1997).

**\*3** The moving party bears the initial responsibility of stating the basis for its motion, identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As a general rule, unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton,* 984 F.2d 1359, 1370 (3d Cir.1993). The moving party must present competent evidence to support their version of events. Likewise, the nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))(emphasis in *Williams* ). The nonmoving party cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams,* 891 F.2d at 460 (citing *Celotex,* 477 U.S. at 325). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the nonmoving party ... 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file'." *Pastore,* 24 F.3d at 511 (citing *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992)). If the evidence in favor of the nonmoving party is merely colorable or not significantly probative, summary judgment should be granted. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998) (citing *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## V. Discussion

### A. Sovereign Immunity Bars Oriakhi's Claims for Monetary Damages against the Individual Defendants in their Official Capacities.

Oriakhi's suit seeking monetary damages for alleged constitutional violations by defendants Wood and Edwards in their official capacities as employees of the Federal Bureau of Prisons is barred by the doctrine of sovereign immunity. Claims asserted against agencies of the United States government, such as the BOP, or federal officers in their official capacities are considered to be maintained against the United States and are barred under the doctrine of sovereign immunity. *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Terrell v. Hawk,* 154 Fed. Appx. 280 (3d Cir.2005). While the government can waive that immunity, such a waiver "must be unequivocally expressed in statutory text ... and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *Cudjoe v. Department of Veteran Affairs,* 426 F.3d 241, 246 (3d Cir.2005). Oriakhi's assertion that BOP non-defendants, who denied various steps of his administrative remedy process, can waive sovereign immunity is wholly unsupported by fact or law. Oriakhi may not recover monetary damages from Wood or Edwards for actions committed in their official capacities.

### B. Wood's Search of Oriakhi and his Personal Effects did not Violate the Fourth Amendment.

**\*4** The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend IV. However, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527-28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Within the prison environment, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." *Wilkinson v. Austin,* --- U.S. ----, ----, 125 S.Ct. 2384, 2396, 162 L.Ed.2d 174 (2005). Clearly the legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy. *Bell v. Wolfish,* 441 U.S. 520, 539-41, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Pursuant to BOP Program Statement 5521.05, *Searches of Housing Units, Inmates, and Inmate Work Areas,* (June 30, 1997), staff members are encouraged to conduct searches of inmates and their personal effects "on routine or random basis to control contraband." (Dkt. Entry 29-2, Exhibits in Support of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, Exhibit 2, Program Statement 5521.05, *Searches of Housing Units, Inmates, and Inmate Work Areas,* (June 30, 1997).) Such searches may be conducted without notice or approval of the inmate and may include the inmate's legal materials. *See* 28 C.F.R. § 552.11(a), *Body Searches of Inmates;* 28 C.F.R. § 552.14, *Search of Inmate Housing and Work Areas;* and 28 C.F.R. § 543.11(d)(1), *Legal Research and Preparation of Legal Documents.* Inmates may assist another inmate with legal research and the preparation of legal documents, and may possess the legal materials of another inmate. However, the assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library. *See* 28 C.F.R. § 543.11(f)(2)(b).

Based on the above, Wood, as a BOP employee, was authorized to conduct a search of Oriakhi and his property for contraband. Oriakhi was found to be in the possession of contraband as a result of the search: collard greens and an unidentified rubbery substance. As such, Oriakhi fails to state a claim for the violation of his Fourth Amendment rights premised exclusively on the search of his person and legal property in his possession. *Hudson, supra.* Moreover, Oriakhi's claim that Wood neglected to follow BOP policy with respect to his search does not afford a basis for relief as a violation of prison regulations in itself is not a constitutional violation. *Gibson v. Federal Bureau of Prisons,* 121 Fed. Appx. 549, 551 (5th Cir.2004).

### C. Plaintiff's Retaliation Claim is Unsupported.

Actions undertaken in retaliation for the exercise of a constitutional right can form the basis of a § 1983 complaint, even when the act, taken for a different reason, might have been legitimate. *See White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir.1990). A plaintiff alleging retaliation bears the initial burden of showing that: (1) he was engaged in a constitutionally protected activity; (2) that he suffered an "adverse action" at the hands of prison officials; and (3) that his constitutionally protected activity was the substantial or motivating factor in the prison officials' decision to discipline the plaintiff. *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003) (citing *Allah v.*

*Seiverling,* 229 F.3d 220, 225 (3d Cir.2000). The burden then shifts to the defendant to show by a preponderance of the evidence that the plaintiff would have received the same punishment, or alternatively stated, that defendant would have taken the same action, absent the retaliatory motive for reasons reasonably related to a legitimate penological interest. *Rauser v. Horn,* 241 F.3d 330, 333-34 (3d Cir.2001).

**\*5** In this case, Oriakhi argues that the search of his person and legal materials, while constitutionally permissible within the context of a prison setting, was conducted in retaliation for his questioning Wood about the replacement of a lost library book earlier that evening. (*See* Dkt. Entry 1, Complaint at ¶ 20; Dkt. Entry 34, Plaintiff's Opposition Brief; *see also* Exhibit III, Plaintiff's Declaration at ¶ 22.) Oriakhi alleges that defendant Wood's search and confiscation of his legal materials violated his First Amendment right to freedom of expression. (Dkt. Entry 1, Complaint at ¶ 16.)

Although a prisoner's rights are limited within the prison setting, First Amendment rights are retained if they are not inconsistent with the person's status as a prisoner or the legitimate penological objectives of the corrections system. *Pell v. Procunier,* 417 U.S. 817, 822 (1974). The Third Circuit has held that the filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. *Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir.1997); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir.1981). Courts have also held that the filing of grievances is protected under the First Amendment right to petition the government for a redress of grievances. *See, Allah v. Al-Hafeez,* 208 F.Supp.2d 520 (E.D.Pa.2002).

Oriakhi identifies as the protected activity at issue here the verbal encounter with Wood regarding the replacement of a lost law library book, which ultimately led to Wood "snapping" at him and ordering him to leave his office. This brief and isolated verbal inquiry does not constitute protected First Amendment speech. To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment. In order to receive First Amendment protection, an inmate's speech must relate to a matter of public concern. *McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir.2005)(inmate's inquiry about pay for lost job was not a matter of public concern.) "To presume that

all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case." *Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Nonetheless, even if the Court were to consider for the sake of resolving this motion only, that Plaintiff met his burden with respect to demonstrating that he was engaged in a constitutionally protected activity, he does not satisfy the requisite second prong of a retaliation claim-some "adverse action" as a result of Wood's retaliatory search. Oriakhi asserts that he suffered two forms of adverse action as a result of Wood's retaliatory search: (1) the confiscation of his legal materials which resulted in loss of non-frivolous legal actions; and (2) his receipt of 10 hours of "extra duty."

**\*6** While there is a dispute of fact as to whether Wood confiscated any of Oriakhi's personal legal materials on February 4, 2004, and then disposed of them, this dispute is not material and does not prevent the Court from resolving Oriakhi's retaliation claim. Assuming that Wood did confiscate Oriakhi's legal materials, Oriakhi has failed to demonstrate that he suffered any harm as result of the loss of these materials. An access-to-the-courts claim requires an actual injury imposing some concrete negative effect on a prisoner's attempt to seek judicial redress, either in pursuing an existing non-frivolous lawsuit or in the loss of the opportunity to pursue one at all. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). "Actual injury" includes the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Id.* at 351-54. Prisoners asserting denial of access to the courts claims must demonstrate their "actual injury" with specificity. *See Gordon v. Morton,* 131 Fed. Appx. 797, 798 (3d Cir.2005) (holding that inmate's claim against corrections officers for alleged deprivation of access to the courts failed where he did not demonstrate actual injury). Oriakhi has not this burden.

Oriakhi claims that he "suffered a dismissal and denial" of two then-pending federal cases due to the loss of legal materials confiscated by Wood. (*See* Dkt. Entry 34, Plaintiff's Opposition Brief, p. 10.) This Court is familiar with both cases referenced by Oriakhi.

The first is *Oriakhi v. United States,* No. 3:CV-01-0850 (M.D.Pa.) (C.J.Vanaskie), which was pending nearly three years as of February 4, 2004, and was nearing trial on a tort claim related to the disputed confiscation of Plaintiff's pornographic magazine collection and two microwave bowls. On February 25, 2004, the Court held a telephonic status conference in the case to discuss the parties' readiness for trial. *See Oriakhi v. United States,* No. 3:CV-01-0850 (M.D.Pa.), Dkt. Entry 69. There is no indication on the docket that Oriakhi raised at that time, or any other, his inability to proceed to trial based the February 4, 2004, confiscation of legal materials. On April 28, 2004, a bench trial was held in that matter and judgment was entered in favor of defendants. (*Id.*) The Third Circuit Court of Appeals recently affirmed that order. *See Oriakhi v. United States,* CA No. 04-2786, 2006 WL 314462 (3d Cir. February 10, 2006).

The second federal action pursued by Oriakhi, also filed in this Court, was a habeas matter filed pursuant to 28 U.S.C. § 2241 challenging the validity of a 1990 District of Maryland conviction on the basis that he was denied effective assistance of trial counsel. That action, filed January 8, 2004, was summarily dismissed on June 25, 2004, on the grounds that a challenge to his underlying conviction could not be pursued under § 2241 in the district of confinement. The petition was dismissed without prejudice to any right Oriakhi may have to request the Fourth Circuit Court of Appeals for an order authorizing the District Court of Maryland to consider a successive § 2255 motion pursuant to 28 U.S.C. § 2244(b)(3)(A). *See Oriakhi v. United States,* No. 3:04-CV-0036 (M.D.Pa.)(C.J.Vanaskie), Dkt. Entry 9. On April 21, 2005, the Third Circuit Court of Appeals summarily affirmed the dismissal of the petition. *See Oriakhi v. United States,* CA No. 05-1811 (3d Cir.2005) (unpublished opinion).

**\*7** Finally, Oriakhi claims to have lost his "initial legal draft writings and report for plaintiff's family's civil case," *Leroy Oriakhi v. Nassau County Jail,* # 04-CV-4201(SJF) (ETB), but notes that it is "still pending." (*See* Dkt. Entry 34, Plaintiff's Opposition Brief, p. 10.) The fact that the action is "still pending" negates Oriakhi's claim of "actual harm" in that matter due to the loss of his initial legal draft writings in that case.

In summary, Oriakhi has failed to meet his burden of demonstrating that he suffered actual harm or was otherwise adversely affected in his legal proceedings by Wood's purported seizure of his legal materials. The tort case went to trial, and Oriakhi does not specify how the purported confiscation of legal materials a few months before trial hampered the presentation of his case. His other federal action was indisputable frivolous. And his family action is still pending without any showing of prejudice from the events of February 4, 2004.

Oriakhi also claims that the unwarranted imposition of ten hours of extra duty, which took valuable time away from his legal research time, constitutes an adverse action stemming from Edwards' retaliation against him for assisting other inmates with their legal work. (Dkt. Entry 34, Plaintiff's Opposition Brief.) It is undisputed, however, that Oriakhi possessed contraband. Thus, there was ample basis for imposing discipline. Nor can it be said that such a sanction rises to the level of adverse action sufficient to support a retaliation claim.

Furthermore, Oriakhi cannot dispute that he was subject to some form of discipline for his possession of contraband. Given the broad range of sanctions available to the UDC, ten hours of extra duty was not excessive. Thus, there is no basis for inferring a causal relationship between the exercise of a protected right and the punishment imposed for possession of contraband.

As the record before this Court does not establish that Oriakhi's questioning of Wood about the missing legal research material was protected speech, or that it served as the motivating factor for issuance of a misconduct for the possession of contraband and the resulting discipline, and because Plaintiff can prove no adverse harm as a result of the search or alleged deprivation of personal legal materials, Defendants are entitled to judgment as a matter of law on this claim.

### D. Oriakhi's Lack of Physical Injury Precludes an Award of Damages for Emotional Distress.

Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of accompanying physical injury. Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a

prior showing of physical injury." The "physical injury" requirement of § 1997e(e) may be satisfied by a "less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury." *Mitchell,* 318 F.3d at 534.

**\*8** Defendants allege that Oriakhi's failure to show that he suffered any physical injury precludes the award of damages for emotional distress under *Bivens* and the FTCA. In his opposition materials Oriakhi confirms that "the only physical part of this action has transcended into an emotional injury." (Dkt. Entry 39, Plaintiff's Sur Reply, p. 10.) Thus, Oriakhi has failed to present any evidence on the record which could reasonably be construed as proof of an actual physical injury in this matter. Consequently, his damage claim is barred by § 1997e(e) and is subject to dismissal.

E. Oriakhi's FTCA Claim for the Loss of his Legal Materials is Subject to Dismissal Pursuant to 28 U.S.C. § 1915(d) as Frivolous.

The FTCA is a limited waiver of sovereign immunity permitting litigation against the United States "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Liability under the FTCA is controlled by state law. 28 U.S.C. § 1346(b); *Berman v. United States,* 205 F.Supp.2d 362, 364 (M.D.Pa.2002). Thus, Pennsylvania law controls in this case.

In his Complaint, Oriakhi identifies his FTCA claim as one of conversion. *See* Dkt. Entry 1, p. 4, ¶ 17. In Pennsylvania, to succeed in a civil action for conversion, a plaintiff must establish that the defendant intentionally or knowingly "deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Ride the Ducks of Philadelphia v. Duck Boat Tours,* 138 Fed. Appx. 431, 433 fn. 1 (3d Cir.2005)(quoting *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581 (Pa.Super.2003)).

It is undisputed that Oriakhi filed an administrative FTCA claim with the BOP regarding the loss of his legal materials and it was denied. *See* Dkt. Entry 34, Plaintiff's Opposition Brief, Exhibit II; 28 U.S.C. §§ 2401(b), 2675(a). Plaintiff avers that he suffered both personal injury (emotional distress, loss of legal actions) and loss of personal property as a result of the search. His claim for property damage is identified as $5.20, while his claim for personal injury is set at $ 2,000,000. *See* Dkt. Entry 34, Plaintiff's Opposition Brief, Exhibit II.

Defendants contend Oriakhi cannot assert a viable FTCA claim because Wood confiscated and destroyed only "nuisance contraband and seized legal documents that Oriakhi could not remove from the library without violating prison rules." (Dkt. Entry 28, Defendants' Brief in Support of Motion for Summary Judgment, p. 14.) In other words, Defendants suggest Oriakhi does not assert a sustainable FTCA claim because Wood did not confiscate any of Oriakhi's personal legal materials. As previously noted, there is a dispute of fact as to this issue as Oriakhi has submitted a sworn declaration stating his personal legal materials were confiscated as well as those of the inmates' he was assisting.

**\*9** Assuming that his legal materials were lost and destroyed by Wood, he would be permitted to obtain reasonable compensation for these materials. Any claim for emotional distress, however, is, as noted above, precluded by his lack of physical injury. As there has been no finding of a constitutional violation in this case, the only judicable interest at stake now is Plaintiff's FTCA claim for the loss of property valued, by him, to be $5.20. This amount of damages in controversy is considered trivial. *Deutsch v. United States,* 67 F.3d 1080, 1088-92 (3d Cir.1995)("We hold that § 1915(d) authorizes a court to dismiss an *in forma pauperis* claim if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial.); *see also Nagy v. Butner,* 376 F.3d 252, 257 (4th Cir.2004)( "Nothing in the *in forma pauperis* statute, and nothing in 28 U.S.C. § 1915(e)(2)(B)(I) in particular, suggests that the de minimis value of a claim cannot be taken into account.") Therefore, given the small value of the remaining claim, which cannot be resolved due to a dispute of fact which would necessitate a trial over a matter worth $ 5.20, the Court, in the interest of conserving scarce judicial resources and assuring that resources are used in the most effective manner possible, will dismiss this remaining claim as frivolous.

VI. Conclusion

For the reasons set forth above, Defendants will be granted summary judgment. An appropriate Order follows. [2]

### ORDER

NOW, this 31st DAY OF MARCH, 2006, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion to Submit Additional Witness Statements (Dkt. Entry 35) and his Motion for Mandamus to compel authorization to correspond with inmate witnesses (Dkt. Entry 41) are DENIED.

2. Defendants' motion for summary judgment (Dkt. Entry 25) is GRANTED.

3. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff, and to mark this matter CLOSED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 859543

Footnotes

1   In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights.

2   Oriakhi had moved for leave to submit additional sworn witness statements (Dkt. Entry 35), and to compel BOP officials to allow him to correspond with inmate witnesses (Dkt. Entry 41). As the matters to which the witness statements relate-the confiscation of his legal materials-are not material to the disposition of the summary judgment motion, both motions will be denied.

   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   7

2015 WL 1179339
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Deandre WILLIAM, Plaintiff,

v.

N. SMITH, et al., Defendants.

No. 9:11–CV–0601 (LEK/TWD).

|

Filed Jan. 26, 2015.

|

Signed March 13, 2015.

**Attorneys and Law Firms**

Deandre Williams, of Counsel, Romulus, NY, pro se.

Hon. Eric T. Schneiderman, Justin L. Engel, Esq. Attorney General for the State of New York, of Counsel, Albany, NY, for Defendants.

## ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on January 26, 2015, by the Honorable Thérèse Wiley Dancks, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 114 ("Report–Recommendation"). Plaintiff Deandre Williams ("Plaintiff") timely filed Objections.[1] Dkt. No. 118 ("Objections"). Additionally before the Court is Plaintiff's Motion for a preliminary injunction. Dkt. No. 113 ("Motion").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. *Chylinski v. Bank of Am., N.A.,* 434 F. App'x 47, 48 (2d Cir.2011); *Barnes v. Prack,* No. 11–CV–0857, 2013 WL 1121353, at \*1

(N.D.N.Y. Mar. 18, 2013); *Farid v. Bouey,* 554 F.Supp.2d 301, 306–07 & n. 2 (N.D.N.Y.2008); *see also Machicote v. Ercole,* No. 06 Civ. 13320, 2011 WL 3809920, at \*2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.").

In his Objections, Plaintiff generally asserts that this action is not frivolous and that he suffers from a number of medical issues. See generally Objs. Because Plaintiff's Objections consist of general or irrelevant statements, the Court reviews the Report–Recommendation for clear error and finds none. Furthermore, because the Court grants Defendants summary judgment on all remaining claims against them, Plaintiff's Motion for a preliminary injunction is therefore moot.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 114) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Defendants' Motion (Dkt. No. 107) for summary judgment is **GRANTED;** and it is further;

**ORDERED,** that Plaintiff's Motion (Dkt. No. 113) for a preliminary injunction is **DENIED as moot;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## *REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff DeAndre Williams, an inmate in the custody of the New York Department of Corrections ("DOCS"), [1] alleges that Defendants violated his constitutional rights during his confinement at Upstate Correctional Facility ("Upstate"). (Dkt. No. 1.) The complaint, which is 315 pages long including exhibits, describes myriad incidents occurring over a six-year period. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 107.) For the reasons discussed below, I recommend that the Court grant Defendants' motion.

## I. FACTUAL AND PROCEDURAL SUMMARY

**\*2** At his deposition, Plaintiff testified that a specialist from outside the Upstate facility saw him regarding his torn right meniscus in 2004. (Dkt. No. 107–9 at 70:21–25, 71:1–3, 72:3–10.) Plaintiff testified that the specialist "also said there was a problem with the left knee." *Id.* at 71:3–4. However, a letter from the specialist attached to the complaint makes no mention of Plaintiff's left knee. (Dkt. No. 1–2 at 75.) Plaintiff testified that he told the specialist that his left knee was worse than his right knee. (Dkt. No. 107–9 at 70:22–23.) The specialist recommended arthroscopy, but Plaintiff declined. (Dkt. No. 1–2 at 75.)

Thereafter, a surgeon came to Upstate to see Plaintiff. (Dkt. No. 107–9 at 71:4–5.) Plaintiff was transported to that appointment in a wheelchair. *Id.* at 71:15–16. The surgeon informed Plaintiff that he was going to operate on Plaintiff's right knee. *Id.* at 71:5–7. Plaintiff told the surgeon that he did not "want an operation because this is the problem that I have; I don't have a torn meniscus, I have jumper's knee" and that his left knee was worse than his right knee. *Id.* at 71:8–11. Plaintiff testified that the surgeon did not pay attention to him and was "determined to operate on the wrong knee." *Id.* at 71:11–13. Plaintiff testified that Defendant Nurse Administrator Nancy Smith called the surgeon out of the room to talk. *Id.* at 71:14–15, 72:11–14. Plaintiff testified that he was not present for that conversation, but that "it's obvious" that Defendant Smith told the surgeon to operate on Plaintiffs right leg rather than his left leg. *Id.* at 72:23–73:10. No surgery took place that day. *Id.* at 74:10–20. Plaintiff further testified at his deposition that Defendant Smith "directed the surgeon to write in his report that I

don't need the wheelchair and I don't need crutches to get around." *Id.* at 72:17–19.

Defendant Smith declares that she "never at any time advised any doctor at Upstate or any outside specialist that plaintiff have the incorrect knee or leg operated on or that plaintiff have any operation on either knee or leg, whatsoever." (Dkt. No. 107–4 ¶ 38.) She further declares that she "never advised or recommended to any doctor at Upstate or any outside specialist that plaintiff did not need ambulatory aides such as a wheelchair and/or crutches." *Id.* ¶ 39. She declares that, as Nurse Administrator, she does "not make determinations regarding permits for ambulatory aides. Permits of this nature can only be prescribed by a provider and permits of this nature can only be discontinued by a provider." *Id.* ¶ 41.

The complaint alleges that on January 25, 2007, a neurologist from outside the Upstate facility determined that Plaintiff needed to use an elevator due to his physical condition. (Dkt. No. 1–2 at 71; Dkt. No. 107–4 ¶¶ 13–14.) Plaintiff did not receive an elevator pass. *See, e.g.,* Dkt. No. 1–2 at 90. Plaintiff testified at his deposition that he saw doctors at Upstate once or twice a week from January 2007 through August 2008 and discussed his need for an elevator pass "all the time." (Dkt. No. 107–9 at 30:5–14.) He testified that the doctors told him that he did not need an elevator pass. *Id.* at 30:21–25. However, there is no indication in Plaintiff's medical records that he requested an elevator permit from Upstate after receiving the neurologist's recommendation. (Dkt. No. 107–4 ¶ 16.)

**\*3** On March 28, 2008, Plaintiff received a right leg brace to treat foot drop. (Dkt. No. 108 at 11. [2]) On April 8, 2008, Plaintiff was seen at sick call and the nurse noted that he appeared "steady on [his] feet." *Id.* at 13. On June 27, 2008, Plaintiff was seen by orthotics with orders to follow up at the next clinic to receive an adjusted leg brace. *Id.* at 34. Plaintiff received a new leg brace on July 25, 2008. *Id.* at 41.

Plaintiff fell on a stairway on August 13, 2008, and was carried on a stretcher to the infirmary for evaluation. (Dkt. No. 1–2 at 61; Dkt. No. 108 at 139.) Plaintiff experienced back and neck pain. (Dkt. No. 1–2 at 61.) A medical staff member documented the incident and Plaintiff's injuries in a progress note and in a call to the central office. *Id.*

As mentioned above, Defendant Smith was the Nurse Administrator at Upstate during the relevant time period. (Dkt. No. 107–4 ¶ 2.) As Nurse Administrator, Defendant Smith is not a primary care provider. *Id.* ¶ 6. She does not generally treat inmates and cannot prescribe medication or medical devices. *Id.* ¶¶ 8–9. She does not have authority to issue medical permits, including elevator permits, without direction from a provider. *Id.* ¶ 10.

Plaintiff filed a grievance on or about August 28, 2008, complaining that he had not been issued an elevator permit. (Dkt. No. 1–2 at 90.) Defendant Smith was assigned to investigate the grievance. (Dkt. No. 107–4 ¶ 28.) She reviewed Plaintiff's chart. (Dkt. No. 1–2 at 90.) It is not clear precisely what the first level review of the grievance said, but Plaintiff's grievance was denied at the Superintendent's level in a decision that cited Defendant Smith's investigation. *Id.*

The denial stated that:

1. Grievant is currently housed in lower gallery which requires minimal stair usage. NP Parmer deemed elevator order not indicated. Grievant has cane permit for use when he is ambulating out of his cell for any reason. He also has leg braces for use out of cell for stability....

3. Grievant was seen by Dr. Weissman, FHSD, on 9/8/08. No change in elevator order written or indicated.

4. Outside providers can recommend only. It is up to the facility provider to determine what, if any, of the recommendations are ordered.

Grievant has braces and a cane to assist with his ambulation. There is no medical indication at this time for an elevator only order.

*Id.*

Plaintiff appealed the Superintendent's decision. (Dkt. No. 1–2 at 90.) He stated that he needed the elevator pass because he had "just [fallen] on the stairs and cannot ambulate on them." *Id.*

On November 2, 2008, Plaintiff was seen at sick call and requested an elevator permit. (Dkt. No. 108–1 at 11.) This was the first time that Plaintiffs medical record documented any request for an elevator permit. (Dkt. No. 107–4 ¶ 31.)

On November 3, 2008, Upstate granted Plaintiff an elevator pass, noting that Plaintiff was "unable to walk up [and] down stairs." (Dkt. No. 1–2 at 86.) Two days later, the Central Office Review Committee affirmed the Superintendent's decision and denied Plaintiff's grievance. *Id.* at 91. In part, the report stated there was "no medical reason why [Plaintiff] cannot negotiate a flight of stairs" because Plaintiff was seen walking with his cane and brace. *Id.*

**\*4** Plaintiff filed a series of grievances against non-defendant Nurse Atkinson. *See, e.g.,* Dkt. No. 107–9 at 46:23–47:6. Sometime after October 25, 2007, Defendant Doctor Richard Adams began providing services at Upstate one day per week. (Dkt. No. 107–5 ¶¶ 2–3.) At his deposition, Plaintiff testified that he saw Defendant Adams three or four times. (Dkt. No. 107–9 at 49:11–50:5, 64:7–65:20.) Plaintiff testified at his deposition that his first interaction with Defendant Adams occurred when Defendant Adams "[c]all [ed] me in the office and tell me I got to stop writing grievances on Nurse Atkinson." (Dkt. No. 107–9 at 48:12–15.) At that time, Defendant Adams prescribed steroids for Plaintiff. *Id.* at 49:13–21.

Plaintiff's medical records show that Plaintiff was issued a medium sized knee sleeve on February 22, 2010. (Dkt. No. 108–1 at 32.) The same progress note indicates that the sleeve was the wrong size and was returned to the pharmacy in exchange for a large sized knee sleeve. *Id.* Plaintiff received the large knee sleeve sometime before May 4, 2010, when a pharmacy tech called Plaintiff's cell block to confirm that Plaintiff had received it. *Id.* at 39.

Defendant Adams declares that he saw Plaintiff on April 30, 2010, after Plaintiff asked to see a doctor regarding chronic neck pain. (Dkt. No. 107–5 ¶ 10.) Plaintiff arrived at the clinic wearing elastic neoprene knee braces. *Id.* Plaintiff indicated that he had metal braces, which he was not wearing at the visit. *Id.* Plaintiff complained that the braces fit poorly but did not complain of weakness, giving away, or increased motor difficulty. *Id.* Regarding Plaintiff's neck pain, Defendant Adams noted that Plaintiff "may benefit better from Baclofen rather than Flexiril for neurogenic spasms." *Id.* Regarding the braces, Defendant Adams declares that:

I noted that plaintiff walked with ataxic gait without support gear, i.e., cane, crutch, walker. I noted that plaintiff had no indications of arthritic pain and my assessment was that he had some muscular defect. I indicated plaintiff should gain support with regular strengthening and that plaintiff should be observed for further need of increased bracing. As I did not feel that the elastic knee braces plaintiff was wearing at the visit were providing any support to plaintiff, I discontinued use of that particular type of brace.... I discontinued plaintiff's use of the elastic neoprene knee braces because it was my professional medical opinion that they were not providing him support and therefore not indicated to treat his complaints. I did not, however, take any action to discontinue use of any type of metal knee brace plaintiff may have had, as I am not an orthopedic doctor and I do not prescribe metal knee braces or know how they are fitted.

(Dkt. No. 107–5 ¶¶ 10–11.) Plaintiff testified at his deposition that two or three weeks after this meeting, Defendant Adams took away one of his braces. (Dkt. No. 107–9 at 53:18–22.) Plaintiff further alleges that Defendant Adams called him a "nigger." *Id.* at 53:8.

 **\*5** Plaintiff filed a grievance on April 30, 2010, alleging that Defendant Adams threatened three times to take away all of Plaintiff's braces if he "keep [s] complaining" and "keep[s] making trouble about the braces." (Dkt. No. 1–2 at 7, 8.) Defendant Adams declares that "at no time did I threaten [P]laintiff that I would take away his knee or leg braces if he continued to file grievances and complaints. In fact, I am not aware of any grievances or complaints [P]laintiff may have filed prior to his April 30, 2010 appointment with me." (Dkt. No. 107–5 ¶ 8.)

In the grievance, Plaintiff also alleged that Defendant Smith informed Defendant Adams that Plaintiff did not need braces and that Plaintiff was a problem. (Dkt.

No. 1–2 at 7.) Plaintiff alleges that Defendant Adams never physically examined him regarding the problems Plaintiff had with his braces being too short and tight. *Id.* Additionally, Plaintiff claimed that Defendant Adams told him to leave when he asked to be examined for neck and spine pain. *Id.* at 8. At his deposition, Plaintiff testified that Defendant Adams told him in that conversation that "he ha[d] a problem with me filing grievances on Nurse Atkinson." (Dkt. No. 107–9 at 63:15–21.)

In June 2010, Plaintiff filed a grievance with the New York State Department of Health. (Dkt. No. 1–2 at 2–3.) Plaintiff claimed that unnamed individuals refused to give him a new brace or allow him to see another doctor for his neck and spinal pain. *Id.* at 2. He also accused Defendant Smith of telling an unnamed doctor to operate on Plaintiffs wrong leg and to take away Plaintiff's wheelchair and crutches. *Id.*

On November 16, 2010, Plaintiff complained of sexual abuse and harassment by Defendant Corrections Officer Facteau.[3] (Dkt. No. 1–2 at 92.) Plaintiff claimed that Defendant Facteau searched him inappropriately by hitting him "between my legs[,] smashing my nutts[,] prost[ ]ate[, and] my ass." *Id.* Plaintiff said Defendant Facteau used such force that it caused injuries, including swollen genitalia, a swollen prostate, and bloody stool and urine. *Id.* at 98, 103, 105. Plaintiff also claimed that when he attempted to discuss the issue with Defendant Facteau, Defendant Facteau refused to listen. *Id.* at 92. At his deposition, Plaintiff testified that Defendant Facteau struck him "on my groin area. Then, he fondled me from the front to the back, I mean, really fondling me." (Dkt. No. 107–9 at 87:11–12.) Plaintiff testified that this caused him "a little pain." *Id.* at 87: 13–14. He further testified that "the only thing Defendant Facteau said to him was, "This is a proper search." *Id.* at 84:21–23.

Defendant Facteau declares that he was directed to conduct a pat frisk of Plaintiff on November 16, 2010. (Dkt. No. 107–6 ¶ 9.) He declares that the "standards for inspection of an inmate's person allow for contact through the clothing with the genitalia, groin, breast, inner thigh, and buttocks." *Id.* ¶ 11. He declares that "such contact is deemed a necessary component of a thorough pat frisk and ... would have been expected for a pat frisk conducted in 2010." *Id.* Defendant Facteau declares that he "may have made contact with plaintiffs genitalia and buttocks, as is common procedure. However, I did not

'hit' or 'smash' plaintiff as he alleges or use any force against his genitalia and buttocks or otherwise that would cause any injury." *Id.* ¶ 12.

**\*6** Plaintiff filed this action on May 31, 2011. (Dkt. No. 1.) Defendants moved to dismiss the complaint. (Dkt. No. 36.) On March 29, 2013, the Court granted the motion in part and denied it in part. (Dkt. No. 62.) The Court dismissed twenty-three claims with leave to amend and eight claims without leave to amend. *Id.* at 54–55. The Court granted Plaintiff sixty days to file an amended complaint. *Id.* at 55. The Court directed Defendants to respond to several remaining claims. *Id.* at 56.

Plaintiff did not file an amended complaint. Accordingly, only five claims remain pending in this action: (1) an Eighth Amendment claim against Defendant Smith regarding the elevator pass; (2) a retaliation claim against Defendant Adams regarding Plaintiffs leg braces; (3) an Eighth Amendment medical care claim against Defendant Adams regarding Plaintiff's leg braces; (4) an Eighth Amendment medical care claim against Defendant Smith involving orders to operate on Plaintiff's incorrect leg and to take away his wheelchair and crutches; (5) an Eighth Amendment excessive force claim against Defendant Facteau. (Dkt. No. 62 at 56.)

Defendants now move for summary judgment of the five remaining claims. (Dkt. No. 107.) Plaintiff has opposed the motion. (Dkt. No. 110.) Defendants have filed a reply. (Dkt. No. 111.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading"

or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 & n. 41 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material [4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008).

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968); *accord Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

**\*7** A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b) (6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### III. ANALYSIS

#### A. Eighth Amendment Claim Against Defendant Smith Regarding Elevator Pass

Construed broadly, the complaint asserts an Eighth Amendment claim against Defendant Smith for investigating Plaintiff's grievance regarding Upstate's failure to issue him an elevator pass. (Dkt. No. 1–2 at 90–91.) Defendants argue that they are entitled to summary judgment of this claim because Plaintiff has not raised a triable issue of fact that (1) Defendant Smith was personally involved in denying the elevator permit; and (2) Defendant Smith acted with deliberate indifference. (Dkt. No. 107–2 at 13–20. [5] ) Defendants are correct.

#### 1. *Personal Involvement*

Defendants argue that Defendant Smith was not personally involved in the decision to deny Plaintiff an elevator permit because she merely investigated Plaintiff's grievance regarding the denial of the permit. (Dkt. No. 107–2 at 14–16.) Defendants are correct.

Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (per curiam); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted). [6]

**\*8** District courts in this circuit have routinely held that a nurse administrator who investigates a grievance does not become personally involved in the alleged underlying constitutional violation. *DeJesus v. Albright,* No. 08 Civ. 5804(DLC), 2011 U.S. Dist. LEXIS 23710, at \*18–21, 2011 **WL** 814838, at \*5–6 (S.D.N.Y. Mar. 9, 2011); [7] *Gates v. Goord,* No. 99 Civ. 1378(PKC), 2004 U.S. Dist. LEXIS 12299, at \*32–35, 2004 **WL** 1488405, at \*10–11 (S.D.N .Y. July 1, 2004); [8] *Patterson v. Lilley,* No. 02 Civ. 6056(NRB), 2003 U.S. Dist. LEXIS 11097, at \*19–22, 2003 **WL** 21507345, at \*6–7 (S.D.N.Y. June 20, 2003); [9] *Rosales v. Coughlin,* 10 F.Supp.2d 261, 267 (W.D.N.Y.1998). Here, Defendant Smith simply investigated Plaintiff s grievance. (Dkt. No. 107–4 ¶ 28.) Thus, Defendant Smith was not personally involved in the alleged constitutional violation. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

#### 2. *Deliberate Indifference*

Defendants argue that even if Defendant Smith was personally involved in the alleged constitutional violation, she did not act with deliberate indifference. (Dkt. No. 107– 2 at 16–20.) Defendants are correct.

In fulfilling their duty to "provide humane conditions of confinement," prison officials must ensure, among other things, that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003) (citation omitted).

Defendants concede for the purposes of the pending motion that Plaintiff's medical conditions were serious. (Dkt. No. 107–2 at 13 n. 6.) The issue, then, is whether there is a triable issue of fact that Defendant Smith acted with deliberate indifference. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F .3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. at 835. "Inmates do not have a right to choose a specific type of treatment." *Veloz v. New York,* 339 F.Supp.2d 505, 525 (S.D.N.Y.2004). More specifically, "[d]ifferences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese,* 694 F.Supp.2d 137, 160 (N.D.N.Y.2010) (punctuation omitted).

**\*9** As Defendants correctly note (Dkt. No. 107–2 at 16–19), the pending case is indistinguishable from *Miller v. Rao,* No. 11–CV–0617 (Sr), 2013 U.S. Dist. LEXIS 170412, 2013 WL 6240672 (W.D.N.Y. Dec. 3, 2013). [10] There, an inmate requested orthotic footwear, which he had received during previous prison terms. *Miller,* 2013 U.S. Dist. LEXIS 170412, at \*2. The request was denied at several levels and the inmate was instead provided with arch supporting insoles. *Id.* at \*3. The inmate then requested a knee brace and pain medication. *Id.* at \*3–4. He was referred to physical therapy and received anti-inflammatory pain medication. *Id.* at \*4. Thereafter, the inmate filed a grievance regarding the denial of orthotic footwear. *Id.* at \*5. The grievance was forwarded to the nurse administrator for investigation. *Id.* Based on her review of the inmate's medical records, she found that there was "no medical indication for orthotics." *Id.* The nurse administrator reiterated that opinion in her investigation of a later grievance regarding the same issue. *Id.* at \*8–9. The inmate filed suit and the district court granted the nurse administrator's motion for summary judgment. *Id.* at \*1–2. The court noted that the nurse administrator had played a "limited" role in the inmate's care and that the inmate had received regular medical attention at the facility. *Id.* at \*20–21. In light of those facts, the court found that the inmate's "claims of deliberate indifference to his medical needs can only be viewed as mere disagreement with prison officials about what constitutes appropriate medical care." *Id.* at \*21 (punctuation omitted).

Here, as in *Miller,* there is no evidence that Defendant Smith acted with deliberate indifference. Her role was limited to investigating Plaintiffs grievance by reviewing his medical records. (Dkt. No. 107–4 ¶¶ 6–10, 28.) Plaintiff received regular medical attention at Upstate, including seeing doctors once or twice per week from January 2007 through August 2008 (Dkt. No. 107–9 at 30:5–14) and receiving a knee brace (Dkt. No. 108 at 11, 41.) Plaintiff merely disagreed with the facility doctors' decision not to issue him an elevator permit. Therefore, I recommend that the Court grant Defendant Smith's motion for summary judgment and dismiss the Eighth Amendment claim regarding the elevator pass.

**B. Retaliation Claim Against Defendant Adams Regarding Plaintiff's Leg Braces**

Plaintiff alleges that Defendant Adams retaliated against him by threatening to take away his braces if he "keep[s] complaining" and "keep[s] making trouble about the braces." (Dkt. No. 1–2 at 7–8.) Defendants argue that they are entitled to summary judgment of this claim because, *inter alia*, (1) Plaintiffs verbal complaints about medical issues are not protected speech; and (2) even if Plaintiff was engaged in protected conduct, there was no causal connection between Plaintiff's speech and the alleged adverse action by Defendant Adams. (Dkt. No. 107–2 at 25–29.) Because I find that Plaintiff has not raised a triable issue of fact regarding any causal connection between his conduct and Defendant Adams' alleged actions, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the retaliation claim against Defendant Adams.

**\*10** Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff —namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d. Cir.2001)).

Plaintiff alleges that Defendant Adams retaliated against him both for verbally complaining about problems with his braces and for filing grievances against Nurse Atkinson. (Dkt. No. 1–2 at 7–8; Dkt. No. 107–9 at 48:9–49:10.) Defendants argue that, to the extent that Plaintiff claims that the alleged retaliation was based on Plaintiff's verbal complaints, Plaintiff was not engaged in protected conduct. (Dkt. No. 107–2 at 26.) Defendants are correct. *See Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y.1989) (stating that inmate was not engaged in protected conduct when he had "verbal confrontation" with correctional officer). However, the filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin,* 344 F.3d 282, 288 (2d Cir.2003); *Graham v. Hen derson,* 89 F.3d 75, 80 (2d Cir.1996). Thus, by alleging that Defendant Adams retaliated against him for filing grievances against Nurse Atkinson, Plaintiff has raised a triable issue of fact that he was engaged in protected conduct.

**\*11** Defendants next argue that there was no causal connection between Plaintiff's protected conduct and the alleged adverse action by Defendant Adams. (Dkt. No. 107–2 at 26–28.) Defendants are correct. Several grievances in which Plaintiff mentions Nurse Atkinson are attached to the complaint in this action, but all of them post-date the time period in which Plaintiff claims that Defendant Adams made comments to him about such grievances. (Dkt. No. 1–2 at 10, 13–14, 32–33, 35–37, 39–41, 117–18; Dkt. No. 1–3 at 40, 42–43, 88–89, 97–99 .) Plaintiff has not submitted any evidence in opposition to the motion for summary judgment showing that his grievances against Nurse Atkinson preceded his

interactions with Defendant Adams. Adverse actions that predate protected conduct cannot form the basis of a retaliation claim. *See Roseboro v. Gillespie,* 791 F.Supp.2d 353, 368 (S.D.N.Y.2011) (granting summary judgment for defendant on the basis that his conduct "cannot be retaliatory since it predated the protected speech"); *Verri v. Nanna,* 972 F.Supp. 773, 788 (S.D.N.Y.1997) ("[C]learly a plaintiff cannot base a claim of retaliation upon complained-of-acts that predated the speech.") (punctuation omitted). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the retaliation claim against Defendant Adams.

### C. Eighth Amendment Medical Care Claim Against Defendant Adams

Plaintiff alleges that Defendant Adams violated his Eighth Amendment right to adequate medical care by failing to physically examine him regarding the problems he was having with his braces and by asking him to leave when he asked to be examined for neck and spine pain. (Dkt. No. 1–2 at 7– 8.) Defendants argue that this claim should be dismissed because Plaintiff has not raised a triable issue of fact that Defendant Adams was deliberately indifferent to Plaintiff's serious medical needs. (Dkt. No. 107–2 at 22– 25.) Defendants are correct.

In cases where a "prisoner has actually received medical treatment, deliberate indifference will not be found unless the 'medical attention rendered was so woefully inadequate as to amount to no treatment at all.' " *Gay v. Terrell,* No. 12–CV–2925 (CBA)(VMS), 2013 U.S. Dist. LEXIS 139654, at *45, 2013 **WL** 5437045, at *19 (E.D.N.Y. Aug. 19, 2013 [11] ) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976)). [12] *See, e.g., Perez v. Hawk,* 302 F.Supp.2d 9, 21 (E.D.N.Y.2004) (granting defendants' motion to dismiss where documents attached to the complaint showed that prisoner was seen by medical staff approximately thirty times over an eighteen-month period, given medication, and tested for various maladies). Here, Plaintiff was seen by medical staff at Upstate more than 350 times between February 12, 2008, and November 3, 2010. (Dkt. No. 108.) Defendant Adams saw Plaintiff, observed him, suggested changes in medication, and recommended observation to evaluate further need for bracing. (Dkt. No. 107–5 ¶ 10–11.) Although this may not have been the precise treatment Plaintiff wanted, nothing in the record indicates that the treatment was "so woefully inadequate as to amount to no treatment at all." Thus, Plaintiff has not raised a triable issue of fact that Defendant Adams was deliberately indifferent to his serious medical needs. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

### D. Eighth Amendment Medical Care Claim Against Defendant Smith

In addressing Defendants' motion to dismiss, the Court construed Plaintiff's inclusion of his June 2010 grievance with the New York State Department of Health as asserting an Eighth Amendment medical care claim against Defendant Smith for advising the surgeon to take away Plaintiff's wheelchair and crutches and to operate on Plaintiff's right leg rather than his left. (Dkt. No. 62 at 22–23.) The Court denied Defendants' motion to dismiss that claim. *Id.* at 24–25. Defendants now move for summary judgment of the claim, arguing that it is barred by the statute of limitations and that, even if the claim is not barred, they are entitled to judgment as a matter of law. (Dkt. No. 107–2 at 20–22.)

**\*12** The complaint, filed on May 31, 2011, did not specify when Defendant Smith allegedly advised the surgeon to take away Plaintiff's crutches and wheelchair and to operate on the "incorrect" leg. (Dkt. No. 1–2 at 2.) Defendants did not assert a statute of limitations affirmative defense in their answer, filed on July 29, 2013. (Dkt. No. 70.) At Plaintiff's deposition, conducted on February 28, 2014, Defendants learned that the events allegedly occurred in 2004–2005. (Dkt. No. 107–9 at 1, 72:8–10.) However, Defendants did not move to amend their answer to include a statute of limitations defense. Rather, Defendants asserted that defense for the first time in the pending motion for summary judgment, filed on July 25, 2014. (Dkt. No. 107–2 at 20–21.) As Defendants correctly note, "[w]aiver of affirmative defenses not raised in a defendant's answer is not automatic, and 'as a practical matter there are numerous exceptions.' " *Gilmore v. Gilmore,* 503 F. App'x 97, 99 (2d Cir.2012) (quoting *Am. Fed. Grp. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir.1998)). Here, however, the Court declines to decide whether or not one of those exceptions is applicable because Defendants are entitled to judgment on the merits regardless of whether or not they waived their statute of limitations affirmative defense. As discussed above, a prisoner who alleges that a defendant violated his Eighth Amendment right to adequate medical care must prove, *inter alia,* that the defendant acted with deliberate indifference. *Caiozzo,* 581 F.3d at 72. There is simply no evidence that Defendant

Smith consciously and intentionally disregarded Plaintiffs serious medical need. There is no evidence in the record that Defendant Smith instructed the surgeon to operate on the "incorrect" leg or to take away Plaintiff's wheelchair and crutches. Defendant Smith affirmatively declares that she gave no such instructions. (Dkt. No. 107–4 ¶¶ 38–39.) The only "evidence" that the incident occurred as alleged in the complaint is Plaintiff's deposition testimony about what he believes Defendant Smith discussed with the surgeon when he called him out of the room. (Dkt. No. 107–9 at 71:14–73:10.) Speculative testimony with no basis of personal knowledge does not constitute evidence. *See Patterson v. Cnty. of Oneida,* 375 F.3d 206, 219 (2d Cir.2004); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988); *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993). Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

**E. Excessive Force Claim Against Defendant Facteau**
Plaintiff alleges that Defendant Facteau violated his Eighth Amendment rights by using excessive force. (Dkt. No. 1–2 at 92.) Defendants move for summary judgment of this claim, arguing that there is no evidence that the force was applied maliciously and sadistically to cause harm. (Dkt. No. 107–2 at 29–32.) Defendants are correct.

**\*13** When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992). "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (citation and quotation marks omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

repugnant to the conscience of mankind ." *Id.* at 9 (citations and internal quotation marks omitted).

Sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. For example, "severe or repetitive sexual abuse of an inmate by a prison officer" may be actionable under the Eighth Amendment, as may situations where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct." However, the Second Circuit and its district courts require allegations of very extreme and severe conduct with no imaginable penological purpose before finding that an inmate has stated an Eighth Amendment sexual abuse claim. Courts considering complaints with allegations more severe than Plaintiff's have routinely found them insufficient. *Bod die v. Schnieder,* 105 F.3d 857, 860–61 (2d Cir.1997) (holding that allegation that correctional officer touched inmate's penis on one occasion and pressed against him sexually on another occasion, while "despicable," was insufficient to state Eighth Amendment claim); *Garcia v. Watts,* No. 08 Civ. 7778, 2009 U.S. Dist. LEXIS 84697, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) (allegation that guard subjected prisoner to an "ongoing and continuous pattern of harassment" that extended "over a year" and, on separate occasions, grabbed prisoner's buttocks and rubbed his penis against prisoner's buttocks insufficient to state Eighth Amendment claim); *Excell v. Fischer,* No. 9:08–CV–945, 2009 U.S. Dist. LEXIS 88506, 2009 WL 3111711 (N.D.N.Y. Sept. 24, 2009) (allegation that guard grabbed and squeezed prisoner's penis during pat frisk insufficient to state Eighth Amendment claim); *Sharpe v. Taylor,* No. 9:05–CV–1003, 2009 U.S. Dist. LEXIS 125251, 2009 WL 1743987 (N.D.N.Y. Mar. 26, 2009) (allegation that guard sexually harassed prisoner and fondled his anus insufficient to state Eighth Amendment claim); *Eng v. Therrien,* No. 9:04–CV–1146, 2008 U.S. Dist. LEXIS 99246, 2008 WL 141794 (N.D.N.Y. Jan. 11, 2008) (allegation that guards touched prisoner's penis, testicles, and rectal cavity during several pat frisks insufficient to state Eighth Amendment claim); *Morrison v. Cortright,* 397 F.Supp.2d 424 (W.D.N.Y.2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise to constitutional claim); *Davis v. Castleberry,* 364 F.Supp.2d 319, 321

(W.D.N.Y.2005) (allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state constitutional claim); *Montero v. Crusie,* 153 F.Supp.2d 368 (S.D.N.Y.2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); *Moncrieffe v. Witbeck,* No. 97–CV–253, 2000 U.S. Dist. LEXIS 9425, 2000 WL 949457 (N.D.N.Y. June 29, 2000) (allegation that two guards each sexually touched prisoner once during pat frisks insufficient to state an Eighth Amendment claim); *Holton v. Moore,* No. CIV. A.96CV0077, 1997 U.S. Dist. LEXIS 16178, 1997 WL 642530 (N.D.N.Y. Oct. 15, 1997) (prisoner's allegations that guard touched his bare chest; put his hands down his pants, parted his buttocks, and touched his anus; and unzipped his pants and touched his penis insufficient to state Eighth Amendment claim); *Williams v. Keane,* No. 95 Civ. 0379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during pat frisk failed to state constitutional claim). [13]

**\*14** There is no evidence here that Defendant Facteau subjected Plaintiff to excessive force of either a sexual or nonsexual nature. Plaintiff has not produced any evidence that what occurred was anything other than a standard pat-frisk. Therefore, I recommend that the Court grant Defendants' motion for summary judgment.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 107) be *GRANTED.*

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b) (1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

Filed Jan. 26, 2015.

**All Citations**

Slip Copy, 2015 WL 1179339

---

Footnotes

1    Although Plaintiff's Objections were not received until March 6, 2015, they are dated February 18, 2015. *See* Objs. Under the prison mailbox rule, the Court considers Plaintiff's Objections timely filed. *See Tracy v. Freshwater,* No. 01–CV–0500, 2008 WL 850594, at *1 (N.D.N.Y. Mar. 28, 2008).

1    On April 1, 2011, DOCS merged with the Division of Parole to form the Department of Corrections and Community Supervision. The events giving rise to Plaintiff's complaint occurred before the merger and the Court will therefore refer to the agency by its former name.

2    Citations to page numbers in Plaintiff's medical records refer to the page numbers assigned by the Court's electronic filing system.

3    This Defendant's name is spelled "Facto" in much of the record. The Court has used the spelling supplied by the Defendant in his declaration filed in support of the motion for summary judgment. (Dkt. No. 107–6.)

4    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

5    Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

6    In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal* 's effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon.*" *Reynolds v. Barrett,* 685 F.3d 193, 205 n. 14 (2d Cir.2012). The Second

Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

7  Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107–3 at 1–12.)

8  Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107–3 at 24–34.)

9  Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107–3 at 47–52.)

10  Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107–3 at 53–61.)

11  LEXIS and Westlaw list different dates for this decision. The Court has used the date used by LEXIS, which represents the date on which the Report–Recommendation containing the quoted language was issued.

12  Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107–3 at 86–105.)

13  The Court provided Plaintiff with copies of these unpublished decisions in conjunction with its order on Defendants' motion to dismiss. (Dkt. No. 62 at 57.)

---

                         © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                         12